ORIGINAL

FILED
JAN 1 1 2008
U.S. COURT OF FEDERAL CLAIMS

**IN THE**
**UNITED STATES COURT OF FEDERAL CLAIMS**

**RAMAH NAVAJO SCHOOL BOARD, INC.**

PLAINTIFF,

vs.

**UNITED STATES OF AMERICA,**

DEFENDANT.

No.: 08-19 C

**COMPLAINT**

Plaintiff alleges and complains as follows:

1. This is a suit for breach of contract under the Contract Disputes Act, 41 U.S.C. §§ 601 *et seq.* Plaintiff Ramah Navajo School Board, Inc. (RNSB) seeks to recover contract support costs mandated by law to be included in its contract with the United States that were not paid by Defendant.

2. This controversy arises under a continuing mature contract by and between the United States and RNSB for operation of public health programs and facilities. The contract was entered into pursuant to, and is governed by, the Indian Self-Determination and Education Assistance Act, Public Law 93-638, as amended, 25 U.S.C. §§ 450 *et seq*. (ISDA).

3. The provisions of Title 1 of the ISDA are incorporated into each ISDA contract. 25 U.S.C. § 450*l*(c), *Model Agreement* sec. 1(a)(1). The contract price for an ISDA contract includes two elements. The "Secretarial amount" is the money the United States would have spent to run the program itself, in the absence of a contract. Added to the Secretarial amount are contract support costs, including indirect contract support costs. Indirect contract support costs

are the administrative costs and overhead that must be paid so that the contractor can operate the program at the same level at which the United States would have run it. 25 U.S.C. § 450j-1(a). Defendant breached its contract with RNSB by failing to pay the indirect contract support costs to which RNSB was entitled under ISDA and RNSB's contract and annual funding agreements for 1993-2003.

**JURISDICTION**

4. This Court has subject matter jurisdiction under 25 U.S.C. § 450m-1(a) and (d) and 41 U.S.C. § 609.

**PARTIES**

5. RNSB is a New Mexico non-profit corporation established by and for the Ramah Navajo Chapter of the Navajo Nation. RNSB is located on the Ramah Navajo Reservation in western New Mexico. Since the late 1970s, RNSB has contracted with the United States under ISDA to operate the Pine Hill Health Center. During all years at issue, RNSB performed its contractual obligations to provide health care services to Navajo Indians and other eligible beneficiaries.

6. Defendant United States is the contracting party to every ISDA contract. 25 U.S.C. § 450*l*(c), *Model Agreement* sec. 1(a)(1). The Secretary of Health and Human Services (the Secretary), through the Indian Health Service (IHS), is charged by law with responsibility for implementing ISDA and other health laws benefiting Indians on behalf of the United States. Each ISDA contract is signed by the Secretary "for and on behalf of the United States." 25 U.S.C. § 450*l*(c), *Model Agreement* sec. 1(a)(1).

## FACTS

**The Statutory Scheme**

7. Under ISDA, the Secretary "is directed, upon the request of any Indian tribe, to enter into a self-determination contract or contracts with a tribal organization to plan, conduct, and administer programs, or portions thereof . . . ." 25 U.S.C. § 450f(a)(1).

8. Amendments to ISDA in 1988, Public Law 100-472, added a new contract price and funding section to the existing entitlement for direct program monies. The amendments entitled tribal contractors to indirect contract support costs. The 1988 amendments also allowed contractors to pursue remedies under the Contract Disputes Act.

9. Whenever Congress chooses to fund Indian health programs, Public Law 100-472 requires that indirect contract support costs be added to the contract price as a function of the Secretarial amount. 25 U.S.C. § 450j-1(a)(2), added by Public Law 100-472, mandates that indirect contract support costs "shall be added to the contract in the amount required by paragraph (1). . . which shall consist of an amount for the reasonable costs for activities which must be carried on . . . to ensure compliance with the terms of the contract and prudent management, but which (A) normally are not carried on by the . . . Secretary in his direct operation of the program, or (B) are provided by the Secretary in support of the contracted program from resources other than those under contract."

10. 25 U.S.C. § 450j-1(g) requires: "Upon the approval of a self-determination contract, the Secretary shall add to the contract the full amount of funds to which the contractor is entitled under subsection (a) of this section . . ."

11. Under paragraph (c)(2) of the Model Agreement, "the total amount of funds to be paid under this Contract pursuant to section 106(a) [25 U.S.C. § 450j-1(a)] shall be determined in an annual funding agreement entered into between the Secretary and the Contractor, which shall be incorporated into this Contract."

12. The purpose of these provisions is to ensure that contractors have the resources necessary to operate contracted programs at the same level as the United States, through the Secretary, would have operated or did operate them. 25 U.S.C. §§ 450f(a)(1), 450j-1(a), and 450j-1(g) provide contract authority under which the Secretary is obliged on behalf of the United States as the contracting party to enter into a binding contractual agreement on an annual basis for the full amount of the contract support costs, including indirect costs, reasonably necessary to operate the contracted program or programs. Under the statutory and contractual scheme of ISDA, the Secretary, as contrasted with the absolute obligation of the United States, is only under the obligation to "provide" (*i.e.*, pay) the contract price if appropriations for that purpose have been enacted. 25 U.S.C. § 450j-1(b).

13. In each year in which the Secretary did not pay the full amount of indirect contract support costs due under RNSB's contract, sufficient appropriations were legally available to the Secretary to pay all amounts due and owing to RNSB under the rule of *Cherokee Nation v. Leavitt*, 543 U.S.631, 125 S. Ct. 1172 (2005), and *Ferris v. United States*, 27 Ct.Cl. 542, 546 (1892).

**The Calculation of Rates**

14. For RNSB and most ISDA contractors and compactors, indirect cost rates were obtained from the Office of the Inspector General in the U.S. Department of the Interior. On or about January 3, 2003, the National Business Center in that Department assumed the rate-setting functions from the Office of the Inspector General. The procedure produces a ratio between the so-called indirect cost pool, the amount considered necessary to run the contractor's entire program, and the direct program revenues of the contractor. For ISDA funding purposes, once set, the ratio or percentage is then applied by the Secretary to the IHS portion of the direct cost base, the denominator, and the resulting figure is then recognized by IHS as the Indian tribal contractor's indirect contract support costs need for the current year.

15. RNSB has a mature contract under which annual funding agreements are negotiated pursuant to the Model Agreement set forth in ISDA, 25 U.S.C. § 450*l*(c). Under the Model Agreement and the governing statute, 25 U.S.C. §§450j-1(a)(2), (3), (5) and 1(g), the contract price in each annual funding agreement must include contract support costs, including indirect contract support costs. The indirect contract support costs component of the contract price is determined by the applying an indirect cost rate awarded by the Department of the Interior's Office of the Inspector General or its successor, the National Business Center, the cognizant agency under OMB Circular No. A-87.

16. Defendant has breached its contract with RNSB by underpaying indirect costs in two distinct ways. First, the methods used by the Office of the Inspector General and its successor, the National Business Center, have systematically undercalculated indirect cost rates, thereby denying contractors the funds necessary to pay for administrative and overhead expenses so that they can operate programs at the same level the Secretary would have done. The claim that indirect cost rates are systematically miscalculated is commonly referred to as "the miscalculation claim." RNSB is a plaintiff in a separate putative class action, *Tunica-Biloxi Tribe of Louisiana, et al., v. United States, et al.*, Civil No. 1:02CV02413 (RBW) in the United States District Court for the District of Columbia, that presents the miscalculation claim. Miscalculation claims are not at issue in the instant lawsuit.

17. This lawsuit concerns only the second way in which Defendant has underpaid indirect costs to RNSB: Defendant has failed to pay RNSB even the full indirect costs computed by applying the incorrectly-calculated indirect cost rate to RNSB's program base. This is commonly referred to as "the shortfall claim."

18. RNSB's shortfall claims are directly supported by the Federal Circuit's ruling in *Thompson v. Cherokee Nation*, 334 F.3d 1075 (2003), which was affirmed by a unanimous Supreme Court in *Cherokee Nation v. Leavitt*, 543 U.S.631, 125 S. Ct. 1172 (2005).

**Defendant's Breaches**

19. For the period 1997 through 2003, Defendant underpaid RNSB's indirect contract support costs, as determined by multiplying its indirect cost rate by its program base, by at least $400,000.

## EXHAUSTION OF REMEDIES

20. Pursuant to the Contract Disputes Act, 41 U.S.C. § 605, RNSB has timely exhausted its administrative remedies.

21. The contracting officer denied RNSB's claims for 1993-1996 and has not acted on any of RNSB's claims for subsequent years.

## CLAIM FOR RELIEF

22. All prior allegations are adopted by reference.

23. Defendant breached its statutory and contractual obligations to pay RNSB its full indirect costs for the years 1993-2003 in a total amount to be established by proof.

## PRAYER

Plaintiff RNSB therefore prays that the Court order and adjudge as follows:

A. That money damages be awarded against Defendant United States for underpayment of indirect costs in the amount to be established by the evidence;

B. That pre- and post-judgment interest on the award and reasonable attorney fees and costs be awarded to the extent provided by law; and

C. That such other and further relief as the Court may deem just and proper be granted.

Respectfully submitted this 11th day of January, 2008.

Daniel H. MacMeekin
(Counsel of record)
1776 Massachusetts Avenue, NW, Suite 801
Washington, DC 20036

Telephone: (202) 223-1717
Fax: (202) 223-1459
E-mail: dan@macmeekin.com
D.C. Bar No. 393035

Michael P. Gross
(Of counsel)
M.P. GROSS & ASSOCIATES, P.C.
460 St. Michael's Drive, Suite 401
Santa Fe, New Mexico 87505
Telephone: (505) 995-8066
Fax: (505) 989-1096
E-mail: mpgross@cnsp.com
New Mexico Bar No. 1027