**No. 08-19C**
**(Judge Bush)**

---

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

RAMAH NAVAJO SCHOOL BOARD, INC.,

Plaintiff,

v.

THE UNITED STATES,

Defendant.

---

# DEFENDANT'S MOTION TO DISMISS

---

JEFFREY S. BUCHOLTZ
Acting Assistant Attorney General

JEANNE E. DAVIDSON
Director

STEVEN J. GILLINGHAM
Assistant Director

JOHN S. GROAT
Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
Attn: Classification Unit
1100 L Street, N.W., 8th Floor
Washington, D.C. 20530
Telephone: (202) 616-8260
Facsimile: (202) 514-7965
jack.groat@usdoj.gov
Attorneys for Defendant

OF COUNSEL:

Melissa A. Jamison, Esq.
Senior Attorney
Department of Health and
Human Services

March 13, 2008

TABLE OF CONTENTS

PAGE

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ii

DEFENDANT'S MOTION TO DISMISS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

DEFENDANT'S BRIEF . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

Statement of the Case . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

I. Overview of Contracting Under The Indian Self-Determination And Education Assistance Act (ISDA . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

II. RNSB Seeks To Recover Additional CSC For FY 1995-2003 In The Related Case Of Tunica-Biloxi Tribe of Louisiana, et al., v. United States, No. 02-2413 (RBW) (D.D.C.) . . . . . . . . . . 7

III. In This Action, RNSB Seeks To Recover Additional Indirect Costs For FY 1993-2003 That Its Alleges It Is Entitled To Receive . . . . . . . . . . . . . . . . . . 11

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

I. 28 U.S.C. § 1500 Bars RNSB's Pursuit In This Court Of Its FY 1995, 1996, 1997 1998, 1999, 2000, 2001, 2002, and 2003 CDA Claims That RNSB Has Asserted In The District Court . . . . . . . . . 13

II. RNSB's Failure To Submit A Claim For Its FY 1997 Indirect Costs To The Contracting Officer As Required By 41 U.S.C. § 605 Deprives This Court Of Jurisdiction To Entertain Any Such Claim For FY 1997 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

III. The Statute Of Limitations, 41 U.S.C. § 609(a)(3), Bars RNSB's Appeal Of The Contracting Officer's December 18, 2001 Denial Of Its FY 1993, 1994, 1995, and 1996 Claims . . . . . . . . . . . . . . . . . . . . . . . . . 19

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

## TABLE OF AUTHORITIES

**CASES** **PAGE(S)**

Borough of Alpine v. United States,
923 F.2d 170 (Fed. Cir. 1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

Cherokee Nation v. Leavitt,
543 U.S. 631 (2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **passim**

England v. The Swanson Group, Inc.,
353 F.3d 1375 (Fed. Cir. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

Guernsey & Co. v. United States,
65 Fed. Cl. 582 (2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

James M. Ellett Const. Co., Inc. v. United States,
93 F.3d 1537 (Fed. Cir. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

Keene Corp. v. United States,
508 U.S. 200 (1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

Loveladies Harbor, Inc. v. United States,
27 F.3d 1545 (Fed. Cir. 1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

Reflectone, Inc. v. Dalton,
60 F.3d 1572 (Fed. Cir. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

Seaboard Lumber Co. v. United States,
903 F.2d 1560 (Fed. Cir. 1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

Sharman v. United States,
2 F.3d 1564 (Fed. Cir. 1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

Taylor v. United States,
303 F.3d 1357 (Fed. Cir. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

Texas Health Choice, L.C. v. Office of Personnel Management,
400 F.3d 895 (Fed. Cir. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

The Tohono O'odham Nation v. United States,
79 Fed. Cl. 645 (2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

**STATUTES, RULES, AND REGULATIONS**

Pub. L. No. 93-638, 88 Stat. 2203 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

Pub. L. No. 100-472, § 209, 102 Stat. 2296 (25 U.S.C. § 450f note (1994)) . . . . . . . . . . 4

Pub. L. No. 102-573, Tit. VIII, § 814, 106 Stat. 4590 . . . . . . . . . . . . . . . . . . . . . . . . . . 4

Pub. L. No. 106-260, § 4, 114 Stat. 712 (2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

25 U.S.C. §§ 450 et seq . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

25 U.S.C. § 450a(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

25 U.S.C. § 450f(a)(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 4

25 U.S.C. § 450j-1(a)(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 6, 17

25 U.S.C. §§ 450j-1(b), 450j(c) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

25 U.S.C. § 450l(c) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

25 U.S.C. § 450m-1 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

25 U.S.C. § 450m-1(d) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

25 U.S.C. §§ 458aaa . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

25 U.S.C. § 458aaa-7(c) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

25 U.S.C. §§ 1601-1683 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

25 U.S.C. § 1603(d) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

25 U.S.C. § 1621(a)(4) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

25 U.S.C. § 1661(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

25 U.S.C. § 1680(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

28 U.S.C. § 1500 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **passim**

41 U.S.C. §§ 601 et seq . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

41 U.S.C. § 602 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

41 U.S.C. § 605 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **passim**

41 U.S.C. § 605 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17, 18

41 U.S.C. § 605 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

41 U.S.C. § 609(a)(3) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 18

41 U.S.C. § 609(a)(3) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

41 U.S.C. § 609(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

Rule 12(b)(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 19

71 Fed. Reg. 65825 (Nov. 9, 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

**APPENDIX**

1. Second Amended Class Action Complaint (March 12, 2003),
Tunica-Biloxi Tribe of Louisiana, et al., v. United States,
No. 02-2413 (RBW) (D. D.C.) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

2. Amended Memorandum Opinion (January 20, 2004) . . . . . . . . . . . . . . . . . . . . . . . . 18

3. Contacting officer's decision (December 18, 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . 59

4. Plaintiffs' Response to Defendants' Statement of Material Facts (undated ) . . . . . . . 70

5. August 31, 2001 claim . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 77

6. December 30, 2003 claim . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 83

7. September 21, 2005 claim . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 89

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| RAMAH NAVAJO SCHOOL BOARD, INC., | ) | |
| Plaintiff, | ) | |
| v. | ) | No. 08-19C |
| | ) | (Judge Bush) |
| THE UNITED STATES, | ) | |
| Defendant. | ) | |

DEFENDANT'S MOTION TO DISMISS

Pursuant to Rule 12(b)(1) of the Rules of the United States Court of Federal Claims (RCFC), the United States respectfully requests that the Court dismiss the complaint of plaintiff Ramah Navajo School Board, Inc. (RNSB) for lack of subject matter jurisdiction upon the bases that: (1) 28 U.S.C. § 1500 bars RNSB's pursuit in this Court of its Fiscal Year (FY) 1995, 1996, 1997, 1998, 1999, 2000, 2001, 2002, and 2003 claims, when RNSB had pending at the time this action was filed, a district court action appealing those same claims; (2) RNSB's failure to submit a claim for its FY 1997 indirect costs to the contracting officer, as required by 41 U.S.C. § 605 of the Contract Dispute Act (CDA), deprives this court of jurisdiction to entertain any such claim for its FY 1997 indirect costs; and (3) the applicable statute of limitations, 41 U.S.C. § 609(a)(3), bars RNSB's appeal in this action of the contracting officer's December 18, 2001 denial of its FY 1993, 1994, 1995, and 1996 CDA claims. In support of this motion,

the Government relies upon RNSB's complaint and the following brief, with appendix (Axxx).

## DEFENDANT'S BRIEF

### Statement of the Case

### I. Overview of Contracting Under The Indian Self-Determination And Education Assistance Act (ISDA)

Congress enacted the Indian Self-Determination and Education Assistance Act (ISDA), Pub. L. No. 93-638, 88 Stat. 2203, to allow Indian tribes and Alaska Native Villages to contract with the Federal Government to operate many of the programs that the Government previously operated for the benefit of their members, through what is termed a self-determination contract. The ISDA provides a framework for the orderly transfer of the administration and operation of traditionally Government-run programs to the Indian and Alaska Native people. A primary means for achieving this transfer is the self-determination contract.

The Indian Health Service (IHS), an agency within the Department of Health and Human Services (HHS), was established to carry out the responsibilities, authorities, and functions of the United States in providing health care services to Indians and Indian tribes, including Alaska Native Villages. 25 U.S.C. § 1661(a). See 25 U.S.C. § 1603(d) (defining "Indian tribe" to include Alaska Native villages). Under the Indian Health Care Improvement Act, 25 U.S.C. §§ 1601-1683, IHS is authorized to provide a wide range of health care programs, including clinical programs and public health programs. 25 U.S.C.

§ 1621(a)(4). IHS provides these programs either directly or through contracts with tribes or tribal organizations under the ISDA. 25 U.S.C. § 1680(a).

Section 450f(a)(1) of the ISDA directs the Secretary of Health and Human Services (the Secretary or HHS), "upon the request of any Indian tribe by tribal resolution, to enter into a self-determination contract or contracts with a tribal organization to plan, conduct, and administer programs or portions thereof[.]" 25 U.S.C. § 450f(a)(1).[1] If the parties are unable to agree upon the appropriate funding level, the Secretary may decline the tribe's proposal in part or in full. However, the Secretary must do so within 90 days and must demonstrate that the proposal is deficient according to certain declination criteria specified in the statute. 25 U.S.C. § 450f(a)(2). Thus, "[s]elf-determination contracts with Indian tribes are not discretionary. The Act contains only limited reasons for declination to contract by [the] Secretary." S. Rep. No. 274, 100th Cong., 1st Sess. 3 (1987). The tribe has the right either to seek review of a declination through the administrative appeals process or by a direct Federal court action. See 25 U.S.C. § 450f(b). Furthermore, the Act "uniquely requires the Secretary . . . to continue providing direct services until such time as a tribe freely chooses to contract to operate those services." S. Rep. No. 274, supra, at 6.

[1] The statute also applies to certain (non-healthcare) services provided to Native Americans by the Department of the Interior and the Secretary of the Interior by Interior's Bureau of Indian Affairs ("BIA"). However, BIA contracts are not at issue in this case.

There are two types of funding for each ISDA contract or compact. First, the ISDA contractor receives the amount the Secretary "would have otherwise provided for the operation of the programs" (Secretarial amount), which "shall not be less than the appropriate Secretary would have otherwise provided for the operation of the programs." 25 U.S.C. § 450j-1(a)(1). Second, the tribe or tribal organization receives contract support costs (CSC), id. § 450j-1(a)(2), which are the subject of this action.

CSC have three elements: (1) direct CSC, which are administrative costs specific to the contracted-for program, such as unemployment taxes or workers' compensation insurance, see id. § 450j-1(a)(3)(A)(i) and § 450b(c); (2) startup costs for the initial year of the contract "consisting of the reasonable costs that have been incurred or will be incurred on a one-time basis," id. § 450j-1(a)(5); and (3) indirect CSC, which are administrative costs that are shared by the IHS program with other programs or services. See id. § 450j-1(a)(3)(A)(ii); id. § 450b(f). RNSB seeks additional indirect CSC in this action. See Compl. ¶¶ 17, 19.

The ISDA permits payment of only those CSC that are reasonable in light of the activities to be conducted. 25 U.S.C. § 450j-1(a)(2). Moreover, appropriations for IHS "may be expended only for costs directly attributable to [ISDA contracts or grants] and no funds . . . shall be available for any [CSC] associated with [any non-IHS contracts or grants]." Id. § 450j-2. Finally, IHS's payment of CSC, like all funding under the ISDA,

is specifically subject to the availability of appropriations. See 25 U.S.C. §§ 450j-1(b), 450j(c).

Pursuant to section 450m-1(d) of the ISDA, the Contract Disputes Act ("CDA"), 41 U.S.C. § 602, is applicable to self-determination contracts, "except that all administrative appeals relating to such contracts shall be heard by the [Civilian] Board of Contract Appeals . . . ." 25 U.S.C. § 450m-1(d); 71 Fed. Reg. 65825 (Nov. 9, 2006). The United States District Courts and this Court have concurrent jurisdiction to entertain RNSB's CDA claims. 25 U.S.C. § 450m-1. The Supreme Court has interpreted the nature of ISDA contracts and has held that ISDA contracts are to be interpreted like any other contract, holding the parties to the explicit terms of the contract. Cherokee Nation v. Leavitt, 543 U.S. 631, 639 (2005).

II. RNSB Seeks To Recover Additional CSC For FY 1995-2003 Contracts In The Related Case Of Tunica-Biloxi Tribe of Louisiana, et al., v. United States, No. 02-2413 (RBW) (D.D.C.)

As RNSB acknowledges in its complaint, Compl., ¶ 16, RNSB is a named plaintiff in a related case pending in the United States District Court of the District of Columbia, Tunica-Biloxi Tribe of Louisiana, et al., v. United States, No. 02-2413 (RBW) (D. D.C.) (Second Amended Class Action Complaint (March 12, 2003) (RNSB ACompl.) (A1). Because the specific allegations in that case directly relate to the Government's argument that 28 U.S.C. § 1500 bars this action, we set forth those allegations in some detail.

In its district court complaint, RNSB alleges that "[e]ach member of this [putative] class is experiencing shortfalls in reimbursement of Indirect Contract Support Costs in the same manner as Plaintiffs." RNSB ACompl., ¶ 29. Accordingly, Tunica-Biloxi and RNSB, on behalf of themselves and putative Tribes, are seeking "[t]hat money damages be awarded against the Defendant United States for underpayment of Indirect Contract Support Costs in such amount as established by the evidence." RNSB ACompl., WHEREFOR clause.

In the district court, RNSB contends that its action is bifurcated between what it characterizes as "lump sum" and "capped" years, as follows:

> 5. As to the money damages claim, the suit is divided between the so-called 'lump sum years" and the "capped" years. Lump sum years were years prior to FY1998 in which the appropriation for operation of Indian health programs was unrestricted and funds were therefore legally available to the Secretary to pay the Plaintiffs' Indirect Contract Support Costs. "Capped" years were years in which Congress' appropriations Acts earmarked or limited to specific dollar amounts funds available for Indirect Contract Support Costs.

RNSB ACompl., ¶ 5.

RNSB identifies, as common questions of law and fact justifying the certification of a class, the availability of funds to pay indirect costs and the effect of Congressional limitations on the use of appropriations.

> Common questions of law and fact predominate. . . . More specifically, the questions are:
>
> * * *

> (3) whether prior to FY 1998 the defendant Secretary had available appropriations sufficient to pay full contract support costs to the plaintiffs and class;
>
> (4) whether in the years FY 1998 forward the appropriations cap placed by Congress on contract support costs impacted only the Secretary's duty to fund contract support costs or reduced the legal obligation of the United States to pay the full contract amount as well; and
>
> (5) whether the defendants requested sufficient appropriations from Congress to pay full contract support costs during all material years.

RNSB ACompl., ¶ 29

RNSB alleges that it has not received indirect costs computed as required by 25 U.S.C. § 450l(c).

> In particular, the representative Plaintiffs have been damaged in the same way or manner as the other members of the class, although the exact amounts of unreimbursed Indirect Contract Support Costs to which each member of the class is entitled vary. The defendant United States' obligation to each member of the class regarding calculation of indirect cost rates are identical, as they must conform to the Model Contract required by the ISDA, as amended, 25 U.S.C. §450l(c).

RNSB ACompl., ¶ 30

For the fiscal years prior to FY 1998, RNSB contends that the provisions of annual appropriations acts did not limit the amount of appropriations that could be utilized to pay indirect costs of Indian health care contracts.

> 35. For years prior to FY 1998, appropriations for operation of Indian health programs were in a lump sum form which did not distinguish between, or restrict, contract support costs

> from direct program operations. The entire appropriation for each of those years was thus legally available to reimburse contract costs entered pursuant to the mandate of ISDA by the Secretary on behalf of the United States.

RNSB ACompl., ¶ 36

For the fiscal years after FY 1997, RNSB contends that annual appropriations acts incorporated limitations or caps on the amount which could be sued to pay indirect costs.

> Breach of Contract – Capped Years
>
> 38. All prior allegations are adopted by reference.
>
> 39. In years after fiscal year 1997, the annual appropriation Acts for Indian health programs contained limitations or caps under which "not to exceed" a stated amount of the appropriation could be used to pay Indirect Contract Support Costs of ISDA contracts.
>
> 40. The effect of these caps was to limit the amount the Secretary has paid to each contractor based on a pro rata apportionment of the appropriated "not to exceed" amount. But these limitations did not limit or reduce the United States' obligation to pay the full contracted and legally required amount of Indirect Contract Support Costs after services were performed. Nor did it fulfill or extinguish the Defendants' duty to request Congress for sufficient appropriations to meet the United States' contractual obligations.
>
> 41. The defendants have breached their statutory and contractual duties and the unpaid amounts are due and owing in an amount to be established by the proof.

RNSB ACompl., ¶ 38-40.

In its claim for relief in the district court, RNSB seeks a judgment for alleged underpayment of indirect support costs.

> WHEREFORE Plaintiffs pray the orders and judgment of the court as follows:
>
> * * *
>
> B. That money damages be awarded against the Defendant United States for underpayment of Indirect Contract Support Costs in such amount as established by the evidence.

RNSB ACompl., WHEREFORE clause.

III. In This Action, RNSB Seeks To Recover Indirect Costs For FY 1993-2003 That It Alleges It Is Entitled To Receive

In this action, RNSB seeks "indirect contract support costs," which it alleges are "mandated by law to be included in its contract with the United States."

> 1. This is a suit for breach of contract under the Contract Disputes Act, 41 U.S.C. §§ 601 et seq. Plaintiff Ramah Navajo School Board, Inc. (RNSB) seeks to recover contract support costs mandated by law to be included in its contract with the United States that were not paid by Defendant.
>
> 2. This controversy arises under a continuing mature contract by and between the United States and RNSB for operation of public health programs and facilities. The contract was entered into pursuant to, and is governed by, the Indian Self-Determination and Education Assistance Act, Public Law 93-638, as amended, 25 U.S.C. §§ 450 et seq. (ISDA).

Compl., ¶ 1.

RNSB alleges that the United States breached its contract with RNSB by failing to pay indirect contract support costs to which RNSB was entitled in two ways:

> Defendant breached its contract with RNSB by failing to pay the indirect contract support costs to which RNSB was entitled under ISDA and RNSB's contract and annual funding agreements for 1993-2003.
>
> 16. Defendant has breached its contract with RNSB by underpaying indirect costs in two distinct ways. First, the methods used by the Office of the Inspector General and its successor, the National Business Center, have systematically undercalculated indirect cost rates, thereby denying contractors the funds necessary to pay for administrative and overhead expenses so that they can operate programs at the same level the Secretary would have done. The claim that indirect cost rates are systematically miscalulated is commonly referred to as "the miscalculation claim." RNSB is a plaintiff in a separate putative class action, Tunica-Biloxi Tribe of Louisiana, et al., v. United States, et al., Civil No. 1:02CV02413 (RBW) in the United States District Court for the District of Columbia, that presents the miscalculation claim. Miscalculation claims are not at issue in the instant lawsuit.

Compl., ¶ ¶ 15-16.

RNSB contends that this action solely concerns the second alleged breach, which RNSB refers to as a “shortfall claim.”

> 17. This lawsuit concerns only the second way in which Defendant has Underpaid indirect costs to RNSB: Defendant has failed to pay RNSB even the full indirect costs computed by applying the incorrectly-calculated indirect cost rate to RNSB's program base. This is commonly referred to as "the shortfall claim."
>
> 18. RNSB's shortfall claims are directly supported by the Federal Circuit's ruling in Thompson v. Cherokee Nation, 334 F.3d 1075 (2003), which was affirmed by a unanimous Supreme Court in Cherokee Nation v. Leavitt, 543 U.S.631, 125 S. Ct. 1172 (2005).

> Defendant's Breaches
> 19. For the period 1997 through 2003, Defendant underpaid RNSB's indirect contract support costs, as determined by multiplying its indirect cost rate by its program base, by at least $400,000.

Compl., ¶ ¶ 17-19. The decision in Thompson v. Cherokee Nation, 334 F.3d 1075 (2003), aff'd, Cherokee Nation v. Leavitt, 543 U.S.631 (2005), held that IHS could not defend against a breach of an ISDA contract claim by arguing that it had insufficient appropriations, where the Government did not contest the breach, but for this defense.

As a claim for relief in this action, RNSB seeks what it characterizes as its "full indirect costs for the years 1993-2003."

> CLAIM FOR RELIEF
>
> * * *
>
> 23. Defendant breached its statutory and contractual obligations to pay RNSB its full indirect costs for the years 1993-2003 in a total amount to be established by proof.

Compl., ¶ 23 ("Claim").

## ARGUMENT

### I. 28 U.S.C. § 1500 Bars RNSB's Pursuit In This Court Of Its FY 1995, 1996, 1997 1998, 1999, 2000, 2001, 2002, and 2003 CDA Contract Claims That RNSB Has Asserted In The District Court

Section 1500, title 28, bars RNSB's pursuit in this court of its FY1995, 1996, 1997 1998, 1999, 2000, 2001, 2002, and 2003 CDA claims for its alleged indirect costs that RNSB has pending in the district court.

Section 1500, title 28, provides as follows:

> §1500. Pendency of claims in other courts
> The United States Court of Federal Claims shall not have jurisdiction of any claim for or in respect to which the plaintiff or his assignee has pending in any other court any suit or process against the United States or any person who, at the time when the cause of action alleged in such suit or process arose, was, in respect thereto, acting or professing to act, directly or indirectly under the authority of the United States.

28 U.S.C. § 1500.

Section 1500 bars the filing of an action in this Court where "there is meaningful overlap both in the underlying facts and in the relief sought in the two actions. A perfect symmetry of demands for relief is not necessary." The Tohono O'odham Nation v. United States, 79 Fed. Cl. 645, 654-56 (2007) (discussing and reconciling Keene Corp. v. United States, 508 U.S. 200 (1993), and Loveladies Harbor, Inc. v. United States, 27 F.3d 1545 (Fed. Cir. 1994)).

RNSB in its August 31, 2001 (FY 1993, 1994, 1995, 1996), December 30, 2003 (FY 1988), and September 21, 2005 (FY 1999, 2000, 2001, 2002, 2003) CDA claims to the contracting officer specifically asserted claims upon the basis that IHS allegedly beached its contractual duty by not paying RNSB its calculated indirect support costs because of congressional limitations on ISDA funding, what RNSB refers to in this action as its "shortfall claims." A77-A93. In its August 31, 2001 CDA claim letter (addressing FY 1993, 1994, 1995, 1996 claims), RNSB raises two claims related to indirect contract support costs, the first of which is described as IHS's failure to add to contract or pay rate-generated amount for indirect contract support costs. RNSB's letter explains that IHS had

lump sum appropriations in these years and, thus, that 25 U.S.C. §450j-1(f) required IHS's payment of the full amount of indirect costs calculated in accordance with section 450j-1(a). RNSB's August 31, 2001 CDA claim is identical to the claim in this case. Compl. ¶ 17 ("Defendant has failed to pay RNSB even the full indirect costs computed by applying the incorrectly-calculated indirect cost rate to RNSB's program base."). RNSB's September 21, 2005 CDA claim specifically sought relief upon the identical basis RNSB asserts in this action. Compare A90 ("IHS fails to pay even the incorrectly determined rate generated amount, claiming unavailability of funds. This justification fails under the force and logic of Cherokee Nation v. Leavitt, 125 S. Ct. 1172 (2005)."), with Compl., ¶¶ 17-18.

RNSB now seeks relief for these claims in both the district court and in this case. In the district court, RNSB alleges that each member of the proposed class experienced shortfalls in ISDA payments due and, accordingly, seeks "money damages be awarded against the Defendant United States for underpayment of Indirect Contract Support Costs in such amount as established by the evidence." RNSB ACompl., at 15. In its complaint in the district court, RNSB alleges that appropriations for Indian health care services for the years prior to FY 1998 were in a lump sum direct and that IHS, by failing to acknowledge the existence of funds or failing to request sufficient appropriations, damaged RNSB. RNSB ACompl., ¶ ¶ 34-37. For the years after FY 1997, RNSB alleges that although annual appropriations for Indian health care contained limitations or "caps" upon appropriations, but that these limitations did not limit the IHS's obligation to pay

the full amount of indirect support costs and that RNSB is entitled to the full amount of its indirect costs. RNSB ACompl., ¶ ¶ 38-41. RNSB referenced its filing of its August 31, 2001 CDA claim. RNSB ACompl., ¶ 7. In the district court, RNSB has identified as common issues:

> (3) whether prior to FY 1998 the defendant Secretary had available appropriations sufficient to pay full contract support costs to the plaintiffs and class;
>
> (4) whether in the years FY 1998 forward the appropriations cap placed by Congress on contract support costs impacted only the Secretary's duty to fund contract support costs or reduced the legal obligation of the United States to pay the full contract amount as well;

RNSB ACompl., ¶ 29. In the district court, RNSB opposed the Government's motion for summary judgment by arguing that, once the IHS contracted with RNSB, the Government is contractually obligated to pay RNSB its full indirect costs despite the absence of specific contract provisions or appropriations, relying extensively upon the holding of Cherokee Nation v. Leavitt, 543 U.S. 631 (2005). Plaintiff's Opposition to Defendant's Motion for Summary Judgment at 22-34, A39-A51.

In this action, RNSB's contends that it is entitled to relief upon the basis of what it characterizes a shortfall claim, what RNSB characterizes as IHS's alleged underpayment of the calculated amount of indirect costs.

> Defendant has failed to pay RNSB even the full indirect costs computed by applying the incorrectly-calculated indirect cost rate to RNSB's program base. This is commonly referred to as "the shortfall claim."

> 18. RNSB's shortfall claims are directly supported by the Federal Circuit's ruling in Thompson v. Cherokee Nation, 334 F.3d 1075 (2003), which was affirmed by a unanimous Supreme Court in Cherokee Nation v. Leavitt, 543 U.S.631, 125 S. Ct. 1172 (2005).

Compl., ¶¶ 17-18. In Cherokee Nation v. Leavitt, 543 U.S.631 (2005), the Court held that IHS could not defend against a breach of an ISDA contract claim by arguing that it had insufficient appropriations, where the Government did not contest the breach, but for this defense.

Although RNSB in its complaint does not set forth the specific operative facts upon which it relies for relief, its citation to Thompson v. Cherokee Nation, 334 F.3d 1075 (2003), and Cherokee Nation v. Leavitt, 543 U.S.631 (2005), as establishing its entitlement to relief, sufficiently establishes the relevant operative facts for this Court to decide this motion. As it did in its CDA claims and district court complaint, RNSB seeks to recover in this action what it alleges are IHS's underpayments of its CSC, and, by reference to Thompson v. Cherokee Nation, 334 F.3d 1075 (2003), alleges that the underpayments are due to statutory provisions governing funding for Indian health care. Accordingly, there exists a "meaningful overlap . . . in the underlying facts" in the action pending in the district court and in this action.

Upon examination of the pleadings, there also exists a "meaningful overlap . . . [between] the relief sought in the two actions." RNSB in the district court seeks "Contract Support Costs in such amount as established by the evidence." This action RNSB "money damages" upon the basis of alleged "underpayment of indirect costs in

the amount to be established by the evidence." In both cases, RNSB seeks its additional indirect costs allegedly due upon the basis of 25 U.S.C. § 450j-1(a)(2). RNSB ACompl., ¶ 16-19; Compl., ¶ 9. The relief RNSB seeks in the two actions, payment of additional CSC in accordance with 25 U.S.C. § 450j-1(a)(2), at the very least overlaps and, in fact, appears on its face to be identical.

Because RNSB had pending at the time this action was filed in a district court action its appeal of its FY 1995, 1996, 1997, 1998, 1999, 2000, 2001, 2002, and 2003 contract claims, 28 U.S.C. § 1500 bars RNSB's pursuit in this Court of those claims.

## II. RNSB's Failure To Submit A Claim For Its FY 1997 Indirect Costs To The Contracting Officer As Required By 41 U.S.C. § 605 Deprives This Court Of Jurisdiction To Entertain Any Such Claim For FY 1997

RNSB's apparent failure to submit a claim for its FY 1997 indirect costs to the contracting officer as required by 41 U.S.C. § 605 deprives this court of jurisdiction to entertain any such claim for FY 1997.

Although RNSB now alleges that "[p]ursuant to the Contract Disputes Act, 41 U.S.C. § 605, RNSB has timely exhausted its administrative remedies," Compl., ¶ 20, in the district court proceedings, RNSB has admitted that it did not submit to the contracting officer a claim seeking the payment of its alleged FY 1997 indirect overhead costs. Plaintiffs' Response to Defendants' Statement of Material Facts (undated ), ¶ L ("Defendants state that RNSB did not submit a contract dispute related to its 1997 contract. Dfts' Facts 1. RNSB did not submit a contract dispute for 1997 but did submit a claim for its

1999 and 2001 contracts."), A70, A75. Once the Court's jurisdiction has been challenged, RNSB bears the burden of establishing the facts establishing subject matter jurisdiction by a preponderance of the evidence. See Taylor v. United States, 303 F.3d 1357, 1359 (Fed. Cir. 2002). As we demonstrate, in the absence of RNSB establishing that it submitted a claim for its FY 1997 indirect costs to the contracting officer, the Court should dismiss this claim.

Section 605 of the CDA "sets forth the process for resolving claims by a contractor against the United States relating to a contract and provides in pertinent part: All claims by a contractor against the government relating to a contract shall be in writing and shall be submitted to the contracting officer for a decision.'" Texas Health Choice, L.C. v. Office of Personnel Management, 400 F.3d 895, 899 (Fed. Cir. 2005) (quoting 41 U.S.C. § 605(a))). The provisions of the CDA constitute '''jurisdictional prerequisites to any appeal.'" England v. The Swanson Group, Inc., 353 F.3d 1375, 1379 (Fed. Cir. 2004) (quoting Sharman v. United States, 2 F.3d 1564, 1568-69 n.6 (Fed. Cir. 1993)). "[J]urisdiction over an appeal of a contracting officer's decision is lacking unless the contractor's claim is first presented to the contracting officer and that officer renders a final decision on the claim." Guernsey & Co. v. United States, 65 Fed. Cl. 582, 594 (2005) (quoting The Swanson Group, Inc., 353 F.3d at 1379); accord James M. Ellett Const. Co., Inc. v. United States, 93 F.3d 1537, 1541-42 (Fed. Cir. 1996) ("Thus for the [Court of Federal Claims] to have jurisdiction under the CDA, there must be both a valid claim, a term the act leaves undefined, and a contracting officer's final decision on that claim.") (citing

Reflectone, Inc. v. Dalton, 60 F.3d 1572, 1575 (Fed. Cir. 1995)).

Because RNSB apparently failed to submit a claim for its FY 1997 indirect costs to the contracting officer as required by 41 U.S.C. § 605, this Court lacks jurisdiction to entertain RNSB's claim for its alleged FY 1997 indirect costs in this action.

III. The Statute Of Limitations, 41 U.S.C. § 609(a)(3), Bars RNSB's Appeal Of The Contracting Officer's December 18, 2001 Denial Of Its FY 1993, 1994, 1995, and 1996 CDA Claims

The statute of limitations, 41 U.S.C. § 609(a)(3), now bars RNSB's appeal of the contracting officer's December 18, 2001 denial of its FY 1993, 1994, 1995, and 1996 CDA claims.

RNSB bases its claim upon jurisdiction under the Contracts Disputes Act of 1978, 41 U.S.C. § 609(a), which allows plaintiff to directly appeal a final decision of the contracting officer to the United States Court of Federal Claims. See 41 U.S.C. § 609(a)(1). Section 609(a)(3) provides: "Any action [brought in the Claims Court or District Court to appeal a contracting officer's decision] shall be filed within twelve months from the date of the receipt by the contractor of the decision of the contracting officer concerning the claim, and shall proceed de novo in accordance with the rules of the appropriate court." Plaintiffs appealing a contracting officer's decision, however, must file suit within twelve months of receiving the contracting officer's final decision, or the court no longer has jurisdiction over the claim. See 41 U.S.C. § 609(a)(3); Seaboard Lumber Co. v. United States, 903 F.2d 1560, 1562 (Fed. Cir. 1990).

A cause of action accrues, and the twelve-month period begins to run, on the date

of receipt of the contracting officer's decision. Borough of Alpine v. United States, 923 F.2d 170, 172 (Fed. Cir. 1991). RNSB actually appealed the contracting officer's December 18, 2001 denial of its CDA claim to the district court on December 19, 2002, and, thus, clearly had received that decision more than one year prior to the filing of its complaint in this Court on January 11, 2008. December 18, 2001 decision, A59; Amended Memorandum Opinion (January 20, 2004) at 9-10, A18.

Because RNSB apparently received the contracting officer's December 18, 2001 denial of its FY 1993, 1994, 1995, and 1996 claims more than one year prior to the filing of this action, the statute of limitations, 41 U.S.C. § 609(a)(3), now bars RNSB's pursuit of its FY 1993, 1994, 1995, and 1996 CDA claims in this action.

## CONCLUSION

For the foregoing reasons, the Court should grant this motion to dismiss for lack of jurisdiction and dismiss RNSB's complaint pursuit to Rule 12(b)(1) for lack of jurisdiction.

Resentfully submitted,


JEFFREY S. BUCHOLTZ
Acting Assistant Attorney General

JEANNE E. DAVIDSON
Director

STEVEN J. GILLINGHAM
Assistant Director

/s/ John. S. Groat
JOHN S. GROAT
Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
Attn: Classification Unit
1100 L Street, N.W.
Washington, D.C. 20530
Tele: (202) 616-8260
Fax: (202) 514-7965
jack.groat@usdoj.gov

Attorneys for Defendant

OF COUNSEL:

Melissa A. Jamison, Esq.
Senior Attorney
Department of Health and
Human Services


March 13, 2008

**CERTIFICATE OF FILING**

I hereby certify that on the 13th day of March, 2008, a copy of the foregoing DEFENDANT'S MOTION TO DISMISS was filed electronically. I understand that notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

s/John S. Groat