# APPENDIX

1. Second Amended Class Action Complaint (March 12, 2003),
Tunica-Biloxi Tribe of Louisiana, et al., v. United States,
No. 02-2413 (RBW) (D. D.C.) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

2. Amended Memorandum Opinion (January 20, 2004) . . . . . . . . . . . . . . . . . . . . . . . . 18

3. Contacting officer decision (December 18, 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . 59

4. Plaintiffs' Response to Defendants' Statement of Material Facts (undated ) . . . . . . . 70

5. August 31, 2001 claim . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 77

6. December 30, 2003 claim . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 83

7. September 21, 2005 claim . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 89

# IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF COLUMBIA

**TUNICA-BILOXI TRIBE OF LOUISIANA,**
a Federally recognized Indian Tribe,
Post Office Box 1589
Marksville, Louisiana 71351
and **RAMAH NAVAJO SCHOOL BOARD, INC.,**
a New Mexico non-profit corporation,
Post Office Drawer 10
Pine Hill, New Mexico 87357
individually and on behalf of a class
of persons similarly situated,

PLAINTIFFS,

vs.

**UNITED STATES OF AMERICA,**
**TOMMY G. THOMPSON,**
200 Independence Avenue, SW
Washington, D.C. 20001
in his official capacity as
Secretary of Health
and Human Services,
**GALE A. NORTON,**
1849 C Street, NW
Washington, D.C. 20240
in her official capacity as
Secretary of the Interior,
**CHARLES W. GRIM,**
801 Thompson Avenue, Suite 400
Rockville, Maryland 20852-1627
in his official capacity as
Interim Director of Indian
Health Services,
**EARL E. DEVANEY,**
1849 C Street, NW
Washington, D.C. 20240
in his official capacity as
Inspector General,
Department of the Interior, and

**Civil Action No. 02-2413 (RBW)**

**SECOND AMENDED CLASS ACTION COMPLAINT**

| | |
|---|---|
| **TIMOTHY G. VIGOTSKY,**<br>1849 C Street, NW<br>Washington, D.C. 20240<br>in his official capacity as<br>Director, National Business Center,<br>Department of the Interior,<br><br>DEFENDANTS | )<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

Plaintiffs, for themselves and on behalf of a class of persons similarly situated, allege and complain as follows:

**NATURE OF THE ACTION**

1. This is a suit for breach of contract under the Contracts Dispute Act, 41 U.S.C. §601 *et seq*., and the special jurisdictional provisions of The Indian Self-Determination and Education Assistance Act, as amended, 25 U.S.C. §§450-450n (hereinafter, "ISDA"). The suit seeks declaratory and injunctive relief and money damages against the United States and the Indian Health Service of the Department of Health and Human Services ("IHS") and the Office of Inspector General and its successor, the National Business Center, of the Department of the Interior ("OIG") for massive violations of the funding provisions of ISDA under which the contracts in question were mandated and issued.

2. The suit concerns the flawed method by which the Indian Health Service has calculated and is calculating a mandatory component of funding of all ISDA contracts called Indirect Contract Support Costs ("CSC"). These are costs needed in addition to base program funds (called the "Secretarial Amount") to enable contractors to operate the programs at the same level they would be operated by the Secretary, i.e., the administrative or overhead expenses of running a program.

3. In 1997, the Tenth Circuit Court of Appeals in a class action against the United States, the OIG, and the Bureau of Indian Affairs ("BIA") of the Department of the Interior held that the Department of Interior's use of the identical method for calculating Indirect Contract Support Costs here challenged is illegal. *Ramah Navajo Chapter v. Lujan*, 112 F.3d 1455 (10th Cir. 1997). For all intents and purposes, the putative class defined in this complaint is the same as in the Ramah case.

4. This suit seeks to apply the Ramah v. Lujan rule to the Indian Health Service with respect to all tribal contractors who use OIG as their cognizant agency for Indirect Contract Support Costs rates. The IHS through the OIG has calculated and employed Indirect Contract Support Costs rates in the same manner as held illegal by the Court in *Ramah v. Lujan*.

5. As to the money damages claim, the suit is divided between the so-called 'lump sum years" and the "capped" years. Lump sum years were years prior to FY1998 in which the appropriation for operation of Indian health programs was unrestricted and funds were therefore legally available to the Secretary to pay the Plaintiffs' Indirect Contract Support Costs. "Capped" years were years in which Congress' appropriations Acts earmarked or limited to specific dollar amounts funds available for Indirect Contract Support Costs.

## JURISDICTION AND VENUE

6. This controversy arises under one or more ISDA contracts or compacts by and between the United States and each of the Plaintiffs for operation of Indian health programs. This Court has jurisdiction over the subject matter and the power to order the relief requested pursuant to 25 U.S.C. §450m-1(a) and 41 U.S.C. §609, as well as 5 U.S.C. § 702 and 28 U.S.C. §§1331, 1361, 1362, 1491, 2201, and 2202. Venue is proper in the District of Columbia because the defendants reside and have their offices in this district. 28 U.S.C. §1391(e).

7. Plaintiffs have exhausted their administrative remedies as called for by the Contract Disputes Act. Ramah's administrative claim filed August 31, 2001, and Tunica-Biloxi's administrative claims filed April 2, 2001, and September 27, 2001, have each been rejected.

## PARTIES

8. Plaintiff Tunica-Biloxi Tribe of Louisiana is a federally recognized Indian tribe located in the State of Louisiana. Since 1994, the Tribe has contracted with the United States under ISDA for operation of health programs. It has a mature contract under which annual funding agreements are negotiated pursuant to 25 U.S.C. §450l, the Model Agreement set forth in the ISDA statute. Under the Model Agreement and the governing statute, 25 U.S.C. §§450j-1(a)(2), (3), (5) and 1(g), the full amount of contract support costs including Indirect Contract Support Costs must be added to the Secretarial Amount (25 U.S.C. §450j-1(a)(1)). The Indirect Contract Support Costs component of Plaintiff's annual funding agreement is determined by an Indirect Cost rate determined annually by the Office of the Inspector General of DOI.

9. Plaintiff Ramah Navajo School Board, Inc., ("Ramah") is a New Mexico non-profit corporation established by and for the Ramah Navajo Chapter of the Navajo Nation. Ramah is lo-

cated on the Ramah Navajo Reservation in western New Mexico. Since 1975, Ramah has been contracting with the United States under ISDA for operation of a health clinic. It also has a mature contract and also receives an annual Indirect Cost rate which is determined by OIG to be included and paid by the United States on an annual basis.

10. Defendant United States is the contracting party to every ISDA contract. 25 U.S.C. §450l(c), Model Agreement ¶(a)(1).

11. Defendant Tommy Thompson is the Secretary of the Health and Human Services and is charged by law with overall responsibility for implementing the ISDA with regard to contracting of health programs of the Department. Each individual named defendant is sued in his official capacity only.

12. Defendant Gale A. Norton is the Secretary of the Interior and is charged by law with responsibility for implementing the ISDA, including serving as head of the cognizant agency for determining indirect cost rates for the vast majority of ISDA IHS contractors, including the named Plaintiffs.

13. Defendant Charles W. Grim is the Interim Director of the Indian Health Service of the Department of Health and Human Services and is charged by law with the responsibility for implementing the ISDA and other health laws of benefit to Indians.

13-A. Defendant Earl Devaney is the Inspector General of the Department of the Interior and until November 2002 was charged by the Secretary of the Interior with the duty of negotiating Indirect Contract cost rates with Indian tribes and organizations to implement the indirect contract support costs component of mandatory funding under ISDA. Since November 2002, this function

has been transferred to the Department of the Interior's National Business Center, whose Director is Defendant Timothy G. Vigotsky.

13-B. Defendant Timothy G. Vigotsky is Director of the Department of the Interior's National Business Center, which in November 2002, was charged by the Secretary of the Interior with the duty, formerly exercised by Inspector General of the Department of the Interior, of negotiating Indirect Contract cost rates with Indian tribes and organizations to implement the indirect contract support costs component of mandatory funding under ISDA.

## OPERATIVE FACTS

**The Statutory Scheme**

14. Under ISDA, "the Secretary is directed, upon the request of any Indian tribe, to enter into a self-determination contract or contracts with a tribal organization to plan, conduct, and administer programs, or portions thereof. . ." 25 U.S.C. §450f(a)(1).

15. Under the 1988 amendments to ISDA, Public Law 100-472, a new contract price and funding section was added which created a contract entitlement for Indian tribal contractors to Indirect Contract Support Costs in addition to the existing entitlement to direct program monies. Under the 1988 amendments to ISDA, Public Law 100-472, each ISDA contract and compact is controlled by the Contract Disputes Act.

16. Whenever Congress chooses to fund Indian health programs, Public Law 100-472 requires that Indirect Contract Support Costs be added to the contract price as a function of the Secretarial Amount. 25 U.S.C. §450j-1(a)(2), created by Public Law 100-472, mandates that Indirect Contract Support Costs "shall be added to the contract in the amount required by paragraph (1). . .

which shall consist of an amount for the reasonable costs for activities which must be carried on . . . to ensure compliance with the terms of the contract and prudent management, but which (A) normally are not carried on by the . . . Secretary in his direct operation of the program, or (B) are provided by the Secretary in support of the contracted program from resources other than those under contract."

17. 25 U.S.C. §450j-1(g) requires: "Upon the approval of a self-determination contract, the Secretary shall add to the contract the full amount of funds to which the contractor is entitled under subsection (a) of this section . . ."

18. In turn, each ISDA contract is signed by the Secretary "for and on behalf of the United States." 25 U.S.C. §450l(c), Model Agreement section (a)(1). Under paragraph (c)(2) of the Model Agreement, "the total amount of funds to be paid under this Contract pursuant to section 106(a) [25 U.S.C. §450j-1(a)] shall be determined in an annual funding agreement entered into between the Secretary and the Contractor, which shall be incorporated into this Contract."

19. The purpose of these provisions was to ensure that contractors would have the resources necessary to operate contracted programs at the same level as the Secretary would have operated or did operate them. 25 U.S.C. §§ 450f(a)(1), 450j-1(a) and 450j-1(g) provide contract authority under which the Secretary is obliged on behalf of the United States as the contracting party to enter into a binding contractual agreement on an annual basis for the full amount of the contract support costs, including indirect costs, reasonably necessary to operate the contracted program or programs. Under the statutory and contractual scheme of ISDA, the Secretary, as contrasted with the absolute obligation of the United States, is only under the obligation to "provide" (i.e., pay) the contract price if appropriations for that purpose have been enacted. 25 U.S.C. §450j-1(b).

**<u>The Calculation of Rates</u>**

20. For the Plaintiffs and most ISDA contractors and compactors, Indirect Cost Rates are processed through the Inspector General, usually on an annual basis. The procedure produces a ratio between the so-called indirect cost pool, the amount considered necessary to run the contractor's entire program, and the direct program revenues of the contractor. For ISDA funding purposes, once set, the ratio or percentage is then applied by the Secretary to the IHS portion of the direct cost base, the denominator, and the resulting figure is then recognized by IHS as the Indian tribal contractor's Indirect Contract Support Costs need for the current year.

21. Since the inception of ISDA, the Secretary, through OIG, has employed government manuals known as OMB Circular A-87, as modified, and OASC-10 to determine the Indirect Contract Support Costs rate. The method set forth in these manuals requires that all programs run by the contractor be included in the base, including those from other (non-ISDA) federal agencies. For the most part, these other federal agencies do not reimburse Indirect Contract Support Costs as a separate budget supplement and heavily restrict or forbid the use of program dollars for Indirect Contract Support Costs, i.e., administration. Meanwhile, for most contractors, the Indirect Contract Support Costs pool, or numerator, remains generally fixed. This method systematically undercalculates the Indirect Contract Support Costs needed to operate IHS ISDA contracts.

22. The method set forth in Circular A-87 and OASC-10 does not accurately determine the true costs of operating the IHS's contracted programs either for the named Plaintiffs or members of the putative class. Under the decision in *Ramah v. Lujan*, the BIA and OIG (and now NBC) have now been obligated to alter their method in order to correctly determine Indirect Cost rates for BIA ISDA contracts, and they have consented to entry of an order instituting a pilot program called

"benchmarking" which is to be in operation for two years.

23. In addition to miscalculation of Indirect Cost rates for the base year, OIG has incorrectly computed carry forward adjustments under Circular A-87. Carry forwards are computations of over- and under-recoveries of Indirect Contract Support Costs for the base year which lead to adjustments to a future year's rate through positive or negative carry forwards at the conclusion of the base year. At all material times, contractors including Plaintiffs have not been reimbursed their full need of indirect CSC, which means they have incurred under-recoveries from IHS necessary to operate their IHS programs. In this circumstance, contractors are supposed to be compensated for Indirect Contract Support Costs through carry forward adjustments from at least two separate appropriations, the base year's (current year's) appropriation and a future year's appropriation. In other words, funding for the base year's indirect costs is, for almost all contractors, not completed until after services are performed.

24. For Tunica-Biloxi and Ramah Navajo School Board, the miscalculations of base year rates and carry forwards have produced severe underpayment of Indirect Contract Support Costs whose consequence have been fiscal crisis, diminution of direct program services, and depletion of tribal financial resources, in direct contravention of the purposes and policy of ISDA.

25. Defendants' use of incorrect and illegal Indirect Contract Support Costs rates and incorrect carry forward computations violates the mandate of the ISDA amendments of 1988 and 1994, in particular 25 U.S.C. §§450j-1(d)(1) and (2); §§450j-1(a)(2) and 1(g), and the Model Contract, 25 U.S.C. §450l(c), section 1(c)(2).

## CLASS ACTION ALLEGATIONS

26. Each plaintiff and each member of the class has been similarly damaged by the mis-

calculation of and the resultant failure to pay the annual Indirect Contract Support Costs required by the statute and by the errors committed by OIG in determining annual carry forward adjustments.

27. Plaintiffs bring this action individually and on behalf of all other members of the class defined as follows:

> The class consists of all entities contracting with the director of the Indian Health Service (IHS) as agent for the United States pursuant to Public Law 93-638, 25 U.S.C. §§ 450 et seq. and comparable sub-titles for compacting tribes, whose contracts contain an indirect cost rate determined in negotiation with the Office of the Inspector General (OIG) or its successor of the United States Department of the Interior.

Approximately 350 to 400 Indian tribes and tribal organizations are members of this class. The class is virtually identical to the class certified by the District Court for the District of New Mexico on remand following the decision of the U.S. Court of Appeals in *Ramah Navajo Chapter v.* Lujan, 112 F.3d 1455 (1997). Class members reside in virtually every State.

28. This action is brought pursuant to and meets the requisites for proceeding as a class action under Rule 23(a) and Rule 23(b)(2) and 23(b)(3) of the Federal Rules of Civil Procedure.

29. Common questions of law and fact predominate as to all members of the class. The question of law at the heart of this action is whether the OIG's methodology for the calculation of indirect cost rates comports with the ISDA, as amended by Public Laws 100-472 and 103-413. More specifically, the questions are:

(1) whether the inclusion of other federal agencies in the indirect cost base de-

presses the indirect cost rates of class members, resulting in recoveries of indirect contract support costs in amounts less than are mandated by the ISDA, as amended, 25 U.S.C. § 450j-1(a)(2)-(5);

(2) whether the defendants' methods for computing carry forward adjustments comport with the requirements for full funding of indirect contract support costs under ISDA;

(3) whether prior to FY 1998 the defendant Secretary had available appropriations sufficient to pay full contract support costs to the plaintiffs and class;

(4) whether in the years FY 1998 forward the appropriations cap placed by Congress on contract support costs impacted only the Secretary's duty to fund contract support costs or reduced the legal obligation of the United States to pay the full contract amount as well; and

(5) whether the defendants requested sufficient appropriations from Congress to pay full contract support costs during all material years.

Each member of this class is experiencing shortfalls in reimbursement of Indirect Contract Support Costs in the same manner as Plaintiffs. The defense or defenses of the defendants to the method of calculating Indirect Contract Support Costs will apply to the class as a whole.

30. The claims of Plaintiffs are of the same or similar nature as the claims of the members of the class, who are located all over the United States. In particular, the representative Plaintiffs have been damaged in the same way or manner as the other members of the class, although the exact amounts of unreimbursed Indirect Contract Support Costs to which each member of the class is entitled vary. The defendant United States' obligation to each member of the class regarding calculation of indirect cost rates are identical, as they must conform to the Model Contract required by the ISDA, as amended, 25 U.S.C. §450l(c).

31. The members of the class are too numerous to be joined easily in a single action and

some are unknown at this time. A class action is the most efficient and judicially economical way to adjudicate the claims presented here and a class action will minimize the risk of inconsistent or conflicting decisions.

32. The wholesale underfunding of Indirect Contract Support Costs to authorized tribal self-determination contractors threatens to destroy the entire self-determination program, which has been the bedrock of Congressional Indian policy since 1975. The representative parties' struggle to obtain full entitlement and payment each year for both program and indirect costs has drained administrative resources and undermined the quality of programs, just as it has for the members of the class. The class members have been forced to use direct program monies to pay Indirect Contract Support Costs in direct contravention of the central aim of ISDA to protect program levels. The fact that many if not most members of the class do not have readily available funds to pay lawyers to litigate separate claims for each of them suggests that unless a class action is approved, many otherwise worthy self-determination claims will not be vindicated. Conversely, not certifying a class as requested may lead to adverse and conflicting rulings in many jurisdictions. At present, the two responsible agencies, HHS and DOI, are employing different methodologies for calculating Indirect Contract Support Costs producing disparities and anomalies which, under ISDA, are not permitted.

33. Plaintiffs are adequate representatives of the class because their interests do not conflict with the interests of the class members they seek to represent. Plaintiffs have retained counsel who are competent and experienced in conducting class action litigation and who are especially knowledgeable concerning litigation relating to the ISDA. The interests of the class will be adequately represented and protected by the plaintiffs and their counsel.

**FIRST CLAIM FOR RELIEF**

**Breach of Contract – Lump Sum Years**

34. All prior allegations are adopted by reference.

35. For years prior to FY 1998, appropriations for operation of Indian health programs were in a lump sum form which did not distinguish between, or restrict, contract support costs from direct program operations. The entire appropriation for each of those years was thus legally available to reimburse contract costs entered pursuant to the mandate of ISDA by the Secretary on behalf of the United States.

36. IN THE ALTERNATIVE, the Defendants were required under established federal contract law to seek reprogramming of internal budgets to meet ISDA contract obligations and, if unsuccessful, to request Congress for sufficient appropriations to meet those obligations, but failed to do so. Failure to request sufficient funds is a breach of the implied covenant of good faith and fair dealing.

37. By neither acknowledging the existence of available funds with which to pay Plaintiffs the full contract price for indirect costs or requesting Congress for sufficient funds to do so or reprogramming sufficient funds from sources within the Secretary's budget to pay the full contract price for indirect costs to Plaintiffs, Defendants have damaged Plaintiffs in an amount to be established by the proof.

**SECOND CLAIM FOR RELIEF**

**Breach of Contract – Capped Years**

38. All prior allegations are adopted by reference.

39. In years after fiscal year 1997, the annual appropriation Acts for Indian health programs contained limitations or caps under which "not to exceed" a stated amount of the appropria-

tion could be used to pay Indirect Contract Support Costs of ISDA contracts.

40. The effect of these caps was to limit the amount the Secretary has paid to each contractor based on a pro rata apportionment of the appropriated "not to exceed" amount. But these limitations did not limit or reduce the United States' obligation to pay the full contracted and legally required amount of Indirect Contract Support Costs after services were performed. Nor did it fulfill or extinguish the Defendants' duty to request Congress for sufficient appropriations to meet the United States' contractual obligations.

41. The defendants have breached their statutory and contractual duties and the unpaid amounts are due and owing in an amount to be established by the proof.

## THIRD CLAIM FOR RELIEF

### For Breach of Trust

42. All prior allegations are adopted by reference.

43. ISDA recognizes and expands the trust responsibility of the United States to Indian Tribes and people by creating a fixed contract price for ISDA contracts including Indirect Contract Support.

44. By not requesting sufficient funds from Congress to pay Indirect Contract Support Costs, Defendants have breached their fiduciary duty to Plaintiffs and to the Class.

45. The breach of trust arises from and is related to the contracts at issue and thus falls within the jurisdiction of this Court under 25 U.S.C. §450m-1(a) and under the Contract Disputes Act incorporated into ISDA by 25 U.S.C. §450m-1(d).

46. The breach of trust has damaged each contractor in amounts to be established by the proof.

WHEREFORE Plaintiffs pray the orders and judgment of the court as follows:

A. That this action be certified as a class action and that Plaintiffs and their counsel be approved to represent the class.

B. That money damages be awarded against the Defendant United States for underpayment of Indirect Contract Support Costs in such amount as established by the evidence.

C. That the Court adjudge the methods employed by the Defendants for computing and paying each class members' entitlement to Indirect Contract Support Costs to be in violation of the governing statutes and in breach of contract and issue an injunction accordingly.

D. That pre and post-judgment interest on the award and reasonable attorney fees and costs be awarded to the extent provided by law.

E. That such further relief as may be proper be awarded to Plaintiffs and the class.

Respectfully submitted,

M.P. GROSS & ASSOCIATES, P.C.

/s/ Michael P .Gross
MICHAEL P. GROSS
Counsel for Plaintiffs
460 St. Michael's Drive, Bldg. 300
Santa Fe, New Mexico 87505
Telephone: (505) 983-6686
Fax: (505) 989-1096
New Mexico Bar No. 1027

GALLEGOS LAW FIRM, P.C.

/s/ J. E. Gallegos
J.E. GALLEGOS
Co-Counsel for Plaintiffs
460 St. Michael's Drive, Bldg. 300
Santa Fe, New Mexico 87505
Telephone: (505) 983-6686

Fax: (505) 986-1367
New Mexico Bar No. 897

/s/ Daniel H. MacMeekin
DANIEL H. MACMEEKIN
1776 Massachusetts Avenue, NW, Suite 801
Washington, DC 20036
Telephone: (202) 223-1717
Fax: (202) 223-1459
D.C. Bar No. 393035

ERIC TREISMAN
Co-Counsel for Plaintiffs
Post Office Box 2897
Santa Fe, New Mexico 87505
Telephone: (505) 988-9750
Fax: (505) 986-8305
New Mexico Bar No. 2744

DONALD JUNEAU
Co-Counsel for Plaintiffs
Post Office Box 1857
Hammond, Louisiana 70404
Telephone: (985) 429-0830
Fax: (985) 542-0046
Louisiana Bar No. 7593

Dated: February 26, 2003.

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| TUNICA-BILOXI TRIBE OF LOUISIANA, et al., Plaintiffs, v. UNITED STATES OF AMERICA, Defendants. | Civil Action No. 02-2413 (RBW) |

**AMENDED MEMORANDUM OPINION**

Plaintiffs seek to recover in this lawsuit various costs incurred under self-determination contracts that were entered into by the parties for the provision of health services to Indian tribes pursuant to the Indian Self-Determination and Education Assistance Act ("ISDA"), 25 U.S.C. § 450 et seq. (2000). Currently before the Court is the defendants' motion to dismiss the plaintiffs' claims. For the reasons set forth below, the Court concludes that this motion must be granted in part and denied in part.

**I. Factual Background**

The plaintiffs in this matter are the Tunica-Biloxi Tribe of Louisiana ("Tunica-Biloxi"), a federally recognized Indian tribe, and the Ramah Navajo School Board, Incorporated ("Ramah"), a New-Mexico non-profit corporation that was established by the Ramah Navajo Chapter of the Navajo Nation. Compl. ¶ 9.[1] Plaintiffs brought this

[1]References to "Compl." are to the Second Amended Class Action Complaint that was filed on March 12, 2003.

lawsuit against several federal defendants[2] for breach of contract and breach of trust regarding contracts for the provision of health services to the tribes' members that were entered into pursuant to the ISDA.

The ISDA was enacted to relinquish federal control of service programs benefitting Indian tribes and to acknowledge "the strong expression of the Indian people for self-determination by assuring maximum Indian participation in the direction of educational as well as other Federal services to Indian communities . . . ." 25 U.S.C. § 450a(a). Pursuant to the ISDA, "[t]he Secretary[[3]] is directed, upon the request of any Indian tribe by tribal resolution, to enter into a self-determination contract or contracts with a tribal organization to plan, conduct and administer programs or portions thereof . . . ." Id. § 450(f)(a)(1). Self-determination contracts are contracts "entered into . . . between a tribal organization and the appropriate Secretary for the planning, conduct, and administration of programs or services which are otherwise provided to Indian tribes and their members pursuant to Federal law[.]" Id. § 450b(j). A tribe is entitled to receive the same amount of money the Secretary would have received to administer the programs covered under the contract, as the programs at issue are those that traditionally had been administered by the federal government for the benefit of the tribes. Id. § 450j-1(a)(1). These funds are characterized as the "Secretarial amount."

---

[2]The defendants include the United States, the Secretary of Health and Human Services, Tommy Thompson, the Secretary of the Interior, Gale Norton, the Interim Director of the Indian Health Service of the Department of Health and Human Services, Charles W. Grim, the Inspector General of the Department of the Interior, Earl Devaney, and the Director of the Department of the Interior's National Business Center, Timothy G. Vigotsky. Compl. ¶¶ 10-13(B).

[3]"'Secretary', unless otherwise designated, means either the Secretary of Health and Human Services or the Secretary of the Interior or both[.]" 25 U.S.C. § 450b(i).

See id. § 450j-1(a)(1); Ramah Navajo Sch. Bd., Inc. v. Babbitt, 87 F.3d 1338, 1341 (D.C. Cir. 1996).

As related to this case, there are two types of contract support costs ("CSC") incurred in self-determination contracts: direct program costs and indirect costs.[4] Simply stated, direct CSC are the "direct program expenses for the operation of the Federal program that is the subject of the contract[,]" whereas indirect CSC are "administrative or other expense[s] related to the overhead incurred by the tribal contractor in connection with the operation of the Federal program, function, service or activity pursuant to the contract [.]" Id. § 450-j-1(3)(A)(i) & (ii).

Because indirect CSC are shared by several different programs or services, to calculate the amount of indirect CSC a tribe is responsible for paying, an "indirect cost rate" is "arrived at through negotiation between an Indian tribe or tribal organization and the appropriate Federal agency[.]" Id. § 450b(f). The Secretary, through the Office of the Inspector General ("OIG"), has utilized a government manual, OMB Circular A-87, to calculate tribes' indirect CSC rates. Compl. ¶ 21. At issue in this lawsuit is "whether the OIG's methodology for the calculation of indirect cost rates comports with the ISDA . . . ." Id. ¶ 29.

Plaintiffs argue that the precise methodology utilized by the OIG to calculate their indirect cost rates has already been declared illegal by the Tenth Circuit in Ramah Navajo Chapter v. Lujan, 112 F.3d 1455 (10th Cir. 1997). Id. ¶ 3. Plaintiffs seek to

[4]In the initial year of a contract, CSC also include "startup costs consisting of the reasonable costs that have been incurred or will be incurred on a one-time basis pursuant to the contract . . . ." 25 U.S.C. § 450-j-1(a)(5). These costs are not at issue in this lawsuit.

certify a class, which would be "virtually identical to the class certified by the District Court for the District of New Mexico on remand following the decision of the U.S. Court of Appeals in Ramah." Id. ¶ 27. The proposed class would consist of approximately 350 to 400 Indian tribes and tribal organizations, who have contracts with the director of the Indian Health Service (IHS), "whose contracts contain an indirect cost rate determined in negotiation with the . . . OIG[ ] or its successor of the . . . Department of the Interior." Id.[5] In the first two counts of a three-count complaint, plaintiffs allege that the defendants have breached their contract with the plaintiffs by failing to "reimburse contract costs" or, alternatively, by failing "to request . . . sufficient appropriations [from Congress] to meet those obligations," which plaintiffs posit is "a breach of the implied covenant of good faith and fair dealing." Id. ¶ 36.[6] Count three of the complaint asserts that the defendants have breached the duty of trust "[b]y not requesting sufficient funds from Congress to pay Indirect Contractual Support Costs . . . ." Id. ¶ 44.

The defendants have filed a motion seeking dismissal of plaintiffs' complaint on two principal grounds: (1) the Court's lack of subject matter jurisdiction and (2) plaintiffs' failure to state a claim upon which relief can be granted. Regarding the subject matter

---

[5]In an Order dated May 6, 2003, the Court granted the defendants' motion to stay a ruling on the plaintiffs' motion for class certification pending resolution of the defendants' motion to dismiss.

[6]Plaintiffs' breach of contract claims are separated into two counts: one for the years prior to fiscal year 1998, which were "lump sum years," meaning the monies for health programs were distributed in lump sums and there was no designation regarding the funds to be used for direct versus indirect CSC. First Claim for Relief, Compl. ¶ 35. For these years, plaintiffs claim that there were appropriations "legally available to reimburse contract costs . . . ." and thus the Secretary breached the contracts by failing to pay these costs. Id. In the years after fiscal year 1997, which plaintiffs term "capped years," appropriations for health programs "contained limitations or caps" that limited the amount of funds that could be used to pay indirect CSC. Second Claim for Relief, id. ¶ 39. However, plaintiffs argue that these limitations "did not limit or reduce the United States' obligation to pay the full contracted and legally required amount of Indirect Contract Support Costs after services were performed." Id. ¶ 40.

jurisdiction challenge, defendants seek dismissal on several grounds. First, defendants argue that this Court lacks subject matter jurisdiction over some of the claims raised in plaintiffs' complaint because plaintiffs have failed to exhaust their administrative remedies regarding these claims. Defendants' Memorandum of Law in Support of Defendants' Motion to Dismiss ("Defs.' Mem.") at 20. Second, defendants argue that the Court is without subject matter jurisdiction over plaintiffs' claims "for retrospective relief" as these claims "are moot because IHS's authority to obligate the relevant appropriation has lapsed." Id. at 19, 23. Third, defendants posit that some of the claims are barred by the applicable statute of limitations. Id. at 29. Fourth, defendants argue that certain claims are not ripe "because [p]laintiffs have failed to obtain current rates for the last seven years" and, therefore plaintiffs "lack standing to challenge the indirect cost formula . . . ." Id. at 19. Finally, defendants assert that the United States, Charles Grim, Earl Devaney and Timothy Vigotsky should be dismissed because sovereign immunity as to these defendants has not been waived and therefore the Court cannot exercise subject matter jurisdiction over them. Id. at 44. As to plaintiffs' allegation that they are entitled to receive funding for indirect CSC, regardless of the amount of Congressional appropriations the Secretary receives, defendants argue that this claim should be dismissed for failure to state a claim upon which relief can be granted because, "[a]s a matter of law[,] . . . [p]laintiffs (and all other tribes with self-determination contracts) are, and always were, entitled to only a share of the limited amount of CSC funding that Congress appropriated and apportioned to IHS in any given year." Id. at 34. The Court will address each of the defendants' arguments in turn.

## II. Analysis

### A. Defendants' Lack of Subject Matter Jurisdiction Challenges

#### (1) Standard of Review

Defendants seek to dismiss several of plaintiffs' claims pursuant to Federal Rule of Civil Procedure 12(b)(1). A motion for dismissal under "Rule 12(b)(1) presents a threshold challenge to the court's jurisdiction . . . ." Haase v. Sessions, 835 F.2d 902, 906 (D.C. Cir. 1987) (citations omitted). Specifically, Rule 12(b)(1) permits dismissal of a complaint if the Court "lack[s] jurisdiction over the subject matter . . . ." Under this rule, "the plaintiff bears the burden of establishing that the court has jurisdiction." Fowler v. District of Columbia, 122 F. Supp. 2d 37, 39-40 (D.D.C. 2000) (citation omitted). The rule also imposes "an affirmative obligation [on the court] to ensure that it is acting within the scope of its jurisdictional authority . . . [and for that] reason, the '[p]laintiff's factual allegations in the complaint . . . will bear closer scrutiny in resolving a 12(b)(1) motion' than on a 12(b)(6) motion for failure to state a claim." Id. at 40 (citations omitted). When reviewing a challenge pursuant to Rule 12(b)(1), the Court may consider documents outside the pleadings to assure itself that it has jurisdiction. See Land v. Dollar, 330 U.S. 731, 735 n.4 (1947); see also Haase, 835 F.2d at 906 ("In 12(b)(1) proceedings, it has been long accepted that the judiciary may make 'appropriate inquiry' beyond the pleadings to 'satisfy itself on authority to entertain the case.'") (citations omitted); Artis v. Greenspan, 223 F. Supp. 2d 149, 152 (D.D.C. 2002) ("A court may consider material outside of the pleadings in ruling on a motion to dismiss for lack of venue, personal jurisdiction, or subject-matter jurisdiction.") (citation omitted).

By considering documents outside the pleadings on a motion to dismiss pursuant to Rule 12(b)(1), the Court does not convert the motion into one for summary judgment; "the plain language of Rule 12(b) permits only a 12(b)(6) motion to be converted into a motion for summary judgment." Haase, 835 F.2d at 905.

As a preliminary matter, plaintiffs argue that the Rule 12(b)(1) and 12(b)(6) issues are "interrelated" and thus, it "will be difficult if not impossible" for the Court to avoid considering the numerous exhibits submitted by the defendants on the 12(b)(1) issues and not the 12(b)(6) issues. Plaintiffs' Opposition to Motion to Dismiss ("Pls.' Opp'n") at 3. Plaintiffs contend that it would not be proper for the Court to grant the motion to dismiss without converting it to a motion for summary judgment pursuant to Federal Rule of Civil Procedure 56 and providing the parties with time to conduct discovery. Id. at 4. In the alternative, plaintiffs submit that "[e]ven if conversion . . . is not warranted," the Court should defer ruling on the 12(b)(1) issues until plaintiffs have "had adequate time to discover facts supporting the court's jurisdiction." Id. at 4.

"A plaintiff has no right to discovery in opposing a motion under 12(b)(1)." Haase, 835 F.2d at 908.[7] It is well established that when reviewing a motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1), the Court "'may consider the complaint supplemented by undisputed facts evidenced in the record, or the complaint supplemented by undisputed facts plus the court's resolution of disputed facts.'" Coalition for Underground Expansion v. Mineta, 333 F.3d 193, 198 (D.C. Cir. 2003)

[7]Specifically, on the issue of standing, the District of Columbia Circuit has held that "[a] motion to dismiss for lack of standing . . . involves an examination of the face of the complaint, which does not depend on discovery." Haase, 835 F.2d at 908.

(citations omitted). While jurisdictional discovery is warranted in some cases, such "discovery should be carefully controlled and limited." Phoenix Consulting, Inc. v. Republic of Angola, 216 F.3d 36, 40 (D.C. Cir. 2000) (citation omitted).

In their motion, plaintiffs identify several broad areas in which they believe discovery "may" be required but they fail to specifically identify the precise facts that have been placed in dispute by defendants' motion to dismiss and which they therefore honestly believe need to be the subject of discovery. If factual disputes exist, the Court may authorize limited discovery into those areas before resolving a Rule 12(b)(1) motion. See, e.g., Ignatiev v. United States, 238 F.3d 464, 467 (D.C. Cir. 2001) (holding that district court should have granted limited jurisdictional discovery where plaintiffs sought to discover mandatory policies that may have been binding on the defendant and which would have supported their claims); Artis, 223 F. Supp. 2d at 155 (court granted limited jurisdictional discovery because it was "troubled by the factual disputes" concerning the defendant's argument that the plaintiffs had failed to exhaust their administrative remedies). Accordingly, the Court will address each of the defendants' challenges to the complaint and if discovery on a particular challenge is needed, appropriate relief will be granted.

**(2) Exhaustion of Administrative Remedies**

Pursuant to section 450m-1(d) of the ISDA, the Contract Disputes Act ("CDA"), 41 U.S.C. § 602, is applicable to self-determination contracts "except that all administrative appeals relating to such contracts shall be heard by the Interior Board of Contract Appeals . . . ." 25 U.S.C. § 450m-1(d). The CDA requires that "[a]ll claims by a contractor against the government relating to a contract shall be in writing and shall