**IN THE**
**UNITED STATES COURT OF FEDERAL CLAIMS**

| | |
|---|---|
| **RAMAH NAVAJO SCHOOL BOARD, INC.**<br><br>PLAINTIFF,<br>**vs.**<br><br>**UNITED STATES OF AMERICA,**<br><br>DEFENDANT. | **No. 08-19C**<br>**(Judge Bush)** |

**PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS**

**Table of Contents**


| | | *Page* |
|---|---|---|
| Statement of Questions Presented | | 1 |
| Statement of the Case | | 1 |
| Argument | | 3 |
| I. | THE SHORTFALL CLAIMS IN THIS LITIGATION ARE SEPARATE AND DISTINCT FROM THE MISCALCULATION CLAIMS IN THE *TUNICA* CASE. | 3 |
| II. | UNDER THE RULE OF *AMERICAN PIPE* AND *CROWN CORK & SEAL*, R.N.S.B. TIMELY APPEALED THE CONTRACTING OFFICER'S DECISION TO THIS COURT. | 11 |
| III. | UNDER THE RULE OF *AMERICAN PIPE* AND *CROWN CORK & SEAL*, R.N.S.B. TIMELY PRESENTED ITS CONTRACT CLAIM FOR 1997 TO THE CONTRACTING OFFICER. | 14 |
| Conclusion | | 18 |
| Index to Appendix | | A-1 |

# **Table of Authorities**



| | *Page* |
|---|---|
| **Statutes:** | |
| 5 U.S.C. § 3330a(a)(1)(A)(2) | 16 |
| 28 U.S.C. § 1500 | 1,3,4,8 |
| 28 U.S.C. § 2072(b) | 17 |
| Contract Disputes Act, 41 U.S.C. §§ 601 *et seq*. | 10 |
| § 605 | 10, 11, 14, 16 |
| § 609(a)(3) | 11 |
| Indian Self-Determination and Education Assistance Act, 25 U.S.C. §§ 450 *et seq*. | 1, 10 |
| § 450j-1(a) | 2, 7 |
| § 450j-1(g) | 2, 7 |
| § 450*l*(c), *Model Agreement* § 1(a)(2) | 16 |
| *Model Agreement* § 1(b)(4)(2) | 2 |
| **Cases:** | |
| *American Pipe & Construction Co. v. Utah*, 414 U.S. 538, 94 S.Ct. 756, 38 L.Ed.2d 713 (1974) | 1, 12, 15, 16-17 |
| *Andrews v. Orr*, 851 F.2d 146 (6th Cir.1988) | 14 |
| *Arbaugh v. Y & H Corp.*, 546 U.S. 500, 126 S. Ct. 1235, 163 L.Ed.2d 1097 (2006) | 16 |
| *Armstrong v. Martin Marietta Corp.*, 138 F.3d 1374 (11th Cir. 1998)(*en banc*), *cert. denied*, 525 U.S. 1019, 119 S.Ct. 545, 142 L.Ed.2d 453 (1998) | 13 |
| *Bank of Nova Scotia v. United States*, 487 U.S. 250, 108 S.Ct. 2369, 101 L.Ed.2d 228 (1988) | 17 |
| *Barrett v. U.S. Civil Service Commission*, 439 F.Supp. 216 (D.D.C. 1977) | 15 |
| *Branch v. United States*, 29 Fed.Cl. 606 (1993) | 3, 4 |

| | |
|---|---|
| *Cherokee Nation v. Leavitt*, 543 U.S. 631, 125 S. Ct. 1172, 161 L. Ed. 2d 66 (2005) | 1, 2, 7, 9 |
| *Crown, Cork & Seal Co. v. Parker*, 462 U.S. 345, 103 S.Ct. 2392, 76 L.Ed.2d 628 (1983) | 1, 12, 13, 15 |
| *d'Abrera v. United States*, 78 Fed. Cl. 51 (2007) | 4, 6 |
| *Elmore v. Henderson*, 227 F.3d 1009 (7th Cir. 2000) | 13 |
| *Fire-Trol Holdings, LLC v. United States*, 65 Fed. Cl. 32 (2005) | 3 |
| *Griffin v. Singletary*, 17 F.3d 356 (11th Cir. 1994), *cert. denied sub nom. Florida v. Platt*, 513 U.S. 1077 , 115 S.Ct. 723 , 130 L.Ed.2d 628 (1995) | 14, 15 |
| *Heritage Minerals, Inc. v. United States*, 71 Fed. Cl. 710 (2006) | 3, 4, 8, 9 |
| *Hitt Contracting, Inc.*, ASBCA Nos. 51594 & 51878, 99-2 BCA (CCH) ¶ 30442, 1999 WL 427908 (A.S.B.C.A. 1999) | 10 |
| *Irwin v. Department of Veterans Affairs*, 498 U.S. 89, 111 S.Ct. 453, 112 L.Ed.2d 435 (1990) | 17 |
| *Kanag'Iq Construction Co. v. United States*, 51 Fed. Cl. 38 (2001) | 10 |
| *Kirkendall v. Dep't of the Army*, 479 F.3d 830 (Fed. Cir. 2007) (*en banc*), *cert. denied*, __ U.S. __, 128 S.Ct. 375, 169 L.Ed.2d 260 (2007) | 16 |
| *Loveladies Harbor, Inc. v. United States*, 27 F.3d 1545 (Fed.Cir.1994) | 3, 4, 8 |
| *McCarthy v. Kleindienst*, 562 F.2d 1269 (D.C.Cir.1977) | 13 |
| *McDermott, Inc. v. United States*, 30 Fed. Cl. 332 (1994) | 4, 7 |
| *McDonald v. Sec'y of Health & Human Services*, 834 F.2d 1085 (1st Cir. 1987) | 15 |
| *Menominee Indian Tribe of Wisconsin v. United States*, 2008 WL 680379 (U.S.D.C. D.C. No. 07CV812 (RMC), Mar. 14, 2008) | 2, 15 |
| *NuFarm Am., Inc. v. United States*, 398 F. Supp. 2d 1338 (Ct. Int'l Trade 2005), appeal pending, No. 2007-1220 (Fed. Cir.) | 15 |
| *OSI, Inc. v. United States*, 73 Fed. Cl. 39 (2006) | 8 |
| *Placeway Constr. Corp. v. United States*, 920 F.2d 903 (Fed.Cir.1990) | 10 |
| *Pueblo of Zuni v. United States*, 467 F. Supp. 2d 1099 (N.M. 2006) | 18 |
| *Pueblo of Zuni v. United States*, 243 F.R.D. 436 (May 22, 2007) | 13, 14 |
| *Ramah Navajo Chapter v. Lujan*, 112 F.3d 1455 (10th Cir. 1977) | 5, 18 |

*Ramah Navajo Chapter v. Norton*, 250 F.Supp. 2d 1303 (D.N.M. 2002) 11, 18

*Sharpe v. American Express Co.*, 689 F. Supp. 294 (S.D.N.Y. 1988) 14

*Shoshone-Bannock Tribes v. Leavitt*, 408 F.Supp.2d 1073 (D. Ore. 2005) 13

*Stone Container Corp.*, 229 F.3d 1345 (Fed. Cir. 2000), *cert. denied sub nom. Smurfit-Stone Container Corp. v. United States*, 532 U.S. 971, 121 S.Ct. 1601, 149 L.Ed.2d 468 (2001) 12, 13, 15, 17

*Thompson v. Cherokee Nation of Oklahoma*, 334 F.3d 1075 (Fed. Cir. 2003), *affirmed Cherokee Nation v. Leavitt*, 543 U.S. 631, 161 L. Ed. 2d 66, 125 S. Ct. 1172 (2005) 2

*Williams v. United States*, 71 Fed.Cl. 194 (2006) 4, 6

*Wood-Ivey Sys. Corp. v. United States*, 4 F.3d 961 (Fed. Cir. 1993) 17

*Zapata v. IBP, Inc.*, 1998 WL 71 7621 (D. Kan. No. Civ.A 93-2366, Sept. 29, 1998) (unpublished) 15

**Rules**:

Rules of the Court of Federal Claims

Rule 18(a), Rules of the Court of Federal Claims 10

Rules of Federal Civil Procedure

Rule 18(a) 10

Rule 23 12, 13, 17

**Other Authorities**:

S. Rpt. 100-274, 1988 USCCAN 2620 2

## Statement of Questions Presented

1. Whether the filing of a claim in this Court is barred by the filing of a separate and distinct claim under the same contract, pursuant to 28 U.S.C. § 1500 or otherwise.

2. Whether, under the tolling doctrine announced by the Supreme Court in *American Pipe & Construction Co. v. Utah*, 414 U.S. 538 (1974), and *Crown, Cork & Seal Co. v. Parker*, 462 U.S. 345 (1983), the time for appealing a contracting officer's decision on a Contract Disputes Act claim is tolled during the pendency of a class action that, if certified, would include that claim.

3. Whether under *American Pipe* and *Crown, Cork & Seal Co.*, the time for filing a Contract Disputes Act claim with the contracting officer is tolled during the pendency of a class action that, if certified, would include that claim.

## Statement of the Case

Relying on the ruling of the Supreme Court in *Cherokee Nation v. Leavitt*, 543 U.S. 631 (2005) (*Cherokee*), interpreting the Indian Self-Determination and Education Assistance Act, as amended, 25 U.S.C. §§ 450 *et seq*. (ISDA), Plaintiff Ramah Navajo School Board, Inc. (RNSB) seeks damages for breach of its ISDA contract with the United States.

ISDA, 25 U.S.C. § 450j-1(a), requires that "the Secretary [of Health and Human Services, in this case] provide funds for the full administrative costs to the tribes." *Thompson v. Cherokee Nation of Oklahoma*, 334 F.3d 1075, 1081 (Fed. Cir. 2003), *affirmed Cherokee Nation v. Leavitt*, 543 U.S. 631 (2005). Section 450j-1(g) creates an entitlement to this funding. *Menominee Indian Tribe of Wisconsin v. United States*, 2008 WL 680379, at *2 (U.S.D.C. D.C. No. 07CV812 (RMC), Mar. 14, 2008). The model agreement, required to be used for every ISDA contract, specifically requires that these costs be included. 25 U.S.C. § 450*l*(c), *Model Agreement* § 1(b)(4)(2). These costs, commonly called contract support costs, are "intended to insure that the Federal government provides an amount of funds to a tribal contractor that will enable the contractor to provide at least the same amount of services as the Secretary would have otherwise provided." S. Rpt. 100-274, at 16, 1988 USCCAN 2620, at 2635.

The Supreme Court agreed that the United States owes a duty to pay full contract support. *Cherokee*, 543 U.S. at 634 (citing section 106(a)(1) and (2) of ISDA, 25 U.S.C. § 450j-1(a)(1) and (2), for the proposition that ISDA "specifies that the Government must pay a tribe's costs, including administrative expenses"). In short, the United States must pay the ISDA contractor's contract support cost requirement, as calculated by procedures established by statute and regulation. The United States by failing even to pay the portion of RNSB's contract support cost requirement that it acknowledged was due breached its contract with RNSB. RNSB by this action seeks damages for that breach.

## Argument

**I. THE SHORTFALL CLAIMS IN THIS LITIGATION ARE SEPARATE AND DISTINCT FROM THE MISCALCULATION CLAIMS IN THE *TUNICA* CASE.**

In its complaint, RNSB presents claims separate and distinct from the claims it presents as a co-plaintiff in *Tunica-Biloxi Tribe of Louisiana, et al., v. United States, et al.*, No. 1:02CV02413 (RBW) (*Tunica*). Defendant strives mightily to conflate those claims, but they are not the same.

"To come within the proscription of 28 U.S.C. § 1500, there must be a showing *both* that the claims arise from the same operative facts *and* that they seek the same relief." *Heritage Minerals, Inc. v. United States*, 71 Fed. Cl. 710, 716 (2006) (citing *Loveladies Harbor, Inc. v. United States*, 27 F.3d 1545, 1551-1552 (Fed.Cir.1994); emphasis by Court). Here the instant claim arises from different operative facts from those in *Tunica* and seeks different relief.

There is no doubt that the Shortfall Claim and the Miscalculation Claim arise out of a single contract. In neither case is the existence of that contract contested. Moreover, each alleges that the Government is obligated by statute to pay full contract support costs. But there the resemblance between the claims ends. Claims involving the same general factual circumstances, but distinct material facts do not trigger § 1500. *Branch v. United States*, 29 Fed.Cl. 606, 609 (1993). Two breach of contract claims may be supported by some common operative facts but when, as here, the material facts supporting each claim are dissimilar, § 1500 does not apply. *Id*. *See also Fire-Trol Holdings, LLC v. United States*, 65 Fed. Cl. 32, 34-35 (2005) (that both claims arose out of Forest Service requirement that all fire retardant materials contain gum thickener and not contain YP soda did not mean claims arose from same operative facts).

Close analysis of the respective complaints is necessary to determine whether the same operative facts are alleged, thereby invoking the bar of § 1500. *See, e.g.*, *Loveladies*, above, 27 F.3d at 1553-1554; *d'Abrera v. United States*, 78 Fed. Cl. 51, 57-59 (2007); *Williams v. United States*, 71 Fed.Cl. 194, 199-200 (2006); *Heritage Minerals*, above, 71 Fed. Cl. at 715-716; *McDermott, Inc. v. United States*, 30 Fed. Cl. 332, 334-337 (1994). Selective quotations from one or the other complaint do not constitute the required close analysis. In determining whether the same operative facts are involved in the two cases, the Court necessarily must look at the conduct of the government officials involved in each case. *Branch*, above, 29 Fed. Cl. at 608.

A fair reading of the complaint here setting forth the Shortfall Claim and the complaint in *Tunica* setting forth the Miscalculation Claim establishes that the operative facts necessary to establish each claim are entirely different, requiring different parties and different proofs.

Paragraphs 16 and 17 of RNSB's complaint explain the separate claims:

> 16. Defendant has breached its contract with RNSB by underpaying indirect costs in two distinct ways. First, the methods used by the Office of the Inspector General and its successor, the National Business Center, have systematically undercalculated indirect cost rates, thereby denying contractors the funds necessary to pay for administrative and overhead expenses so that they can operate programs at the same level the Secretary would have done. The claim that indirect cost rates are systematically miscalculated is commonly referred to as "the miscalculation claim." RNSB is a plaintiff in a separate putative class action, *Tunica-Biloxi Tribe of Louisiana, et al., v. United States, et al.*, No. 1:02CV02413 (RBW) in the United States District Court for the District of Columbia, that presents the miscalculation claim. **Miscalculation claims are not at issue in the instant lawsuit.**
>
> 17. This lawsuit concerns only the second way in which Defendant has underpaid indirect costs to RNSB: Defendant has failed to pay RNSB even the full indirect costs computed by applying the incorrectly-calculated indirect cost rate to RNSB's program base. This is commonly referred to as "the shortfall claim."

(Emphasis added.) The Miscalculation Claim in *Tunica* focuses solely on flawed methods the Department of the Interior and its Office of the Inspector General (OIG)(now its National Business Center (NBC)) uses to determine the rates that establish the indirect cost component of the contract price. *See Ramah Navajo Chapter v. Lujan*, 112 F.3d 1455 (10th Cir. 1977). Unlike the instant case, the Secretary of the Interior and the heads of OIG and NBC are defendants in *Tunica*, and injunctive as well as monetary relief is sought in that case. Appendix to Defendant's Motion to Dismiss (*US Appx*), at A-5 to A-6. This alone dramatically illustrates the difference between the claims presented in each case.

The factual basis of the Miscalculation Claim is set out in paragraphs 20-23 of the second amended complaint in *Tunica*:

> 20. For the Plaintiffs and most ISDA contractors and compactors, Indirect Cost Rates are processed through the Inspector General, usually on an annual basis. The procedure produces a ratio between the so-called indirect cost pool, the amount considered necessary to run the contractor's entire program, and the direct program revenues of the contractor. For ISDA funding purposes, once set, the ratio or percentage is then applied by the Secretary to the IHS portion of the direct cost base, the denominator, and the resulting figure is then recognized by IHS as the Indian tribal contractor's Indirect Contract Support Costs need for the current year.
>
> 21. Since the inception of ISDA, the Secretary, through OIG, has employed government manuals known as OMB Circular A-87, as modified, and OASC-10 to determine the Indirect Contract Support Costs rate. The method set forth in these manuals requires that all programs run by the contractor be included in the base, including those from other (non-ISDA) federal agencies. For the most part, these other federal agencies do not reimburse Indirect Contract Support Costs as a separate budget supplement and heavily restrict or forbid the use of program dollars for Indirect Contract Support Costs, i.e., administration. Meanwhile, for most contractors, the Indirect Contract Support Costs pool, or numerator, remains generally fixed. This method systematically undercalculates the Indirect Contract Support Costs needed to operate IHS ISDA contracts.
>
> 22. The method set forth in Circular A-87 and OASC-10 does not accurately determine the true costs of operating the IHS's contracted programs

> either for the named Plaintiffs or members of the putative class. Under the decision in *Ramah v. Lujan*, the BIA and OIG (and now NBC) have now been obligated to alter their method in order to correctly determine Indirect Cost rates for BIA ISDA contracts, and they have consented to entry of an order instituting a pilot program called "benchmarking" which is to be in operation for two years.
>
> 23. In addition to miscalculation of Indirect Cost rates for the base year, OIG has incorrectly computed carry forward adjustments under Circular A-87. Carry forwards are computations of over- and under-recoveries of Indirect Contract Support Costs for the base year which lead to adjustments to a future year's rate through positive or negative carry forwards at the conclusion of the base year. At all material times, contractors including Plaintiffs have not been reimbursed their full need of indirect CSC, which means they have incurred under-recoveries from IHS necessary to operate their IHS programs. In this circumstance, contractors are supposed to be compensated for Indirect Contract Support Costs through carry forward adjustments from at least two separate appropriations, the base year's (current year's) appropriation and a future year's appropriation. In other words, funding for the base year's indirect costs is, for almost all contractors, not completed until after services are performed.

*U.S. Appx*, A-8 to A-9. In this Court, Plaintiff does not refer to, or make a claim for, damages based on these miscalculations, although they are central in *Tunica*. *See Williams*, above, 71 Fed.Cl. at 200 (where "complaint in the district court did not refer to, or make a claim" asserted in the Court of Federal Claims, "the operative facts in each case are demonstrably different").

If the *Tunica* plaintiffs establish that the described miscalculations by Department of the Interior officials exist and operate to their detriment, they establish their case (subject to whatever defenses the Government might successfully assert). If those plaintiffs do not establish that the described miscalculations exist and operate to their detriment, they lose that case. None of those facts needs to be established to prevail in the instant case. The operative facts in the two cases are entirely different. *See d'Abrera*, above, 78 Fed. Cl. at 52, 57-59 (§ 1500 did not bar Court of Federal Claims action when facts necessary to establish claim were different from those required to establish claim in district court, even though both claims were based on

Smithsonian's use of 1,375 butterfly photos without permission of the copyright owner); *McDermott*, above, 30 Fed. Cl. at 338 (operative facts supporting constitutional and statutory claims asserted in district court were entirely different from those supporting breach of contract claims in Federal Claims Court, even though all claims pertained to same Navy shipbuilding contract).

The Shortfall Claim[1] here at issue focuses solely on whether the Department of Health and Human Services has paid the ostensible contract price, calculated according to 25 U.S.C. §§ 450j-1(a)(1), (2), and (g), and accepts without question the indirect cost rates made applicable by the Department's policies. *See Cherokee Nation v. Leavitt*, 543 U.S. 631 (2005). The Shortfall Claim does not question the conduct of Office of the Inspector General officials in calculating indirect cost rates, and in determining which programs may be included in the direct cost base or how over- and under-recoveries are carried forward into future rate calculations, the facts upon which the *Tunica* case rests.

It is not necessary to litigate the Shortfall Claim to resolve the Miscalculation Claim, nor is it necessary to litigate the Miscalculation Claim to resolve the Shortfall Claim. Resolution of

---

[1] References in *Tunica* to shortfalls caused by incorrect calculation of indirect cost rates should not be confused with the Shortfall Claim here asserted, as Defendant attempts to do in its motion to dismiss. *See* Defendant's Motion to Dismiss, Doc. 6, at 7, 14. The class allegations of the *Tunica* complaint state that common issues of law and fact in that case include "(1) whether the inclusion of other federal agencies in the indirect cost base depresses the indirect cost rates of class members, resulting in recoveries of indirect contract support costs in amounts less than are mandated by the ISDA, as amended, 25 U.S.C. § 450j-1(a)(2)-(5); [and] (2) whether the defendants' methods for computing carry forward adjustments comport with the requirements for full funding of indirect contract support costs under ISDA." *US Appx*, at 1, 10-11. The remaining common issues listed have to with defenses, not claims. A fair reading of the class allegations plainly demonstrates that the "same shortfalls" suffered by the class refers to the shortfalls caused by the miscalculations enumerated in the preceding paragraph, not to the entirely distinct Shortfall Claim, which is not pled in *Tunica*.

the Shortfall Claim does not resolve the Miscalculation Claim, and is neither necessary nor essential to resolving that claim. Likewise, resolution of the Miscalculation Claim does not resolve the Shortfall Claim, and is not necessary or essential to its resolution.

The damages sought by the Shortfall Claim are not the same damages sought by the Miscalculation Claim.[2] They have different causes, are ascertained by different calculations, and do not overlap; they are cumulative. There is no risk of subjecting the Government to double liability. These are not "essentially the same losses." *Loveladies Harbor, Inc. v. United States*, 27 F.3d 1545, 1550 (Fed.Cir.1994). *See OSI, Inc. v. United States*, 73 Fed. Cl. 39, 45 (2006) ("[B]ecause these claims for monetary relief represent different measures and amounts of damages, the relief claimed is not the same").

That the Government may assert the same defense to either claim does not make the claims the same.

In short, the claims are analytically distinct and do not overlap at all. These are not different manifestations of the same claim.

RNSB presented the Shortfall Claim and the Miscalculation Claim to the contracting officer as separate claims. *See US Appx*, at 77-79, 79-80 (in which Claim I is the Shortfall Claim and Claim II the Miscalculation Claim); *id.*, at 83-84, 85-86 (same); *id.*, at 89-90 (in which claims (1) and (2) relate to the miscalculation of rates while claim (3) is the Shortfall Claim). *Compare also* B. Cohoe, Executive Director, Ramah Navajo School Board, Inc., letter to

---

[2] In *Heritage Minerals*, above, the damages sought in one case were a subset of the damages sought in the other. This was not sufficient to bring the claims within the bar of 28 U.S.C. § 1500. 71 Fed. Cl. at 716 n. 6 & acc. text. The damages RNSB seeks in this case are not a subset of those sought in *Tunica* nor do they encompass the damages sought in that case. They are entirely distinct.

V. Zuni, Contracting Officer, Indian Health Service (August 22, 2007), *Appendix*, at A-18 (requesting decision on 1997 Shortfall Claim) *with* B. Cohoe, Executive Director, Ramah Navajo School Board, Inc., letter to V. Zuni, Contracting Officer, Indian Health Service (July 31, 2007), *Appendix*, at A-20 (requesting decision on 1997 Miscalculation Claim).

The contracting officer addressed the Shortfall Claims and the Miscalculation Claims as separate and distinct claims. *US Appx*, at 59, 63-64.

Plaintiffs' complaint in *Tunica* did not assert the Shortfall Claim. *See US Appx*, Doc. 6-2, at 2 ¶ 2 ("The suit concerns the flawed method by which the Indian Health Service has calculated and is calculating a mandatory component of funding of all ISDA contracts called Indirect Contract Support Costs. . . .").[3] *See also* the Court's Amended Memorandum Opinion, *US Appx*, Doc. 6-2, at 21 ("At issue in this lawsuit is 'whether the OIG's methodology for the calculation of indirect cost rates comports with the ISDA . . . ."); *Tunica* Doc. 21 (motion for class certification), *Appendix*, at A-25, A-26, A-28 to A-35.

Defendants in *Tunica* have consistently recognized that action to present the Miscalculation Claims, not the Shortfall Claims. *See*, *e.g.*, *Tunica* Doc. 82, at 2 (recognizing Plaintiffs' claims here as distinct from the Shortfall Claims at issue in *Cherokee*), *Appendix*, at A-36, A-37; *Tunica* Doc. 95-1, at 1 ("The crux of plaintiffs' argument is that OMB Circular A-87, a method elected [sic] by Plaintiffs for calculating indirect contract support costs (CSC) in their IHS contracts, violates the ISDA."), *Appendix*, at A-38, A-39. Contrary to Defendant's

[3] That RNSB's administrative claim appealed in *Tunica* also addressed the Shortfall Claim is immaterial. "Allegations in an . . . administrative claim which are not raised in the ensuing District Court action have no bearing on the § 1500 inquiry." *Heritage Minerals*, above, 71 Fed. Cl. at 716.

suggestion, the Shortfall Claims are not addressed in either plaintiffs' motion for partial summary judgment in *Tunica* (Doc. 110) or in defendants' motion to dismiss or in the alternative for summary judgment (Doc. 111). *See Appendix*, at A-40, A-43 (tables of contents to memoranda supporting those motions.)

Nothing in the Indian Self-Determination Act, 25 U.S.C. §§ 450 *et seq*. (ISDA) or the Contract Disputes Act (CDA), 41 U.S.C. §§ 601 *et seq*. requires a contractor to seek judicial review of all claims on a single contract in a single forum or at the same time.

> The CDA recognizes that a single government contract may give rise to more than one claim and that a contractor may pursue its rights by filing "two or more suits" in either one or more fora. 41 U.S.C. § 609; *accord Placeway Constr. Corp. v. United States*, 920 F.2d 903, 907 (Fed.Cir.1990). The only limitation that the courts have placed on the contractor's ability to split its claims is that a single, unified claim based on a common and related set of facts cannot be fragmented for the purpose of eluding the CDA's certification requirement. *Placeway*, 920 F.2d at 907. Although defendant suggests that a decision that becomes final and unreviewable under [41 U.S.C.] section 605 precludes a contractor from asserting any additional claims arising out of the same circumstances, defendant cites no authority to this effect, nor does it offer any reason why this court should subscribe to such a theory.

*Kanag'Iq Construction Co. v. United States*, 51 Fed. Cl. 38, 46 (2001). *Accord, Hitt Contracting, Inc.*, ASBCA Nos. 51594 & 51878, 99-2 BCA (CCH) ¶ 30442, 1999 WL 427908 (1999).

Rule 18(a), RCFC, on its face allows joinder of such claims, but certainly does not require it. (*Accord*, Rule 18(a), Federal Rules of Civil Procedure.)

*Ramah Navajo Chapter v. Lujan*, U.S.D.C. New Mexico No. 90CV0957 (LH/WWD), indisputably demonstrates that the Miscalculation Claim and the Shortfall Claim are distinct. *Ramah* challenged the miscalculation of indirect cost rates used in setting the contract price for ISDA contracts awarded by the Bureau of Indian Affairs. When Shortfall Claims were added to

that case, it was necessary to do so by complaint amendment as they were not part of the Miscalculation Claims originally pled. *See Stipulated Order Allowing Intervention and Amendment of the Amended Complaint*, filed therein, Doc. 347 (Sept. 30, 1999), *Appendix*, at A-46. *See also Ramah Navajo Chapter v. Norton*, 250 F.Supp. 2d 1303, 1305-1306 (D.N.M. 2002) (later opinion in same case, distinguishing between and explaining the "calculation claim", the "Shortfall claim" and the "direct contract support costs claim").

RNSB's participation in the *Tunica* case is of no legal significance in the current case.

## II. UNDER THE RULE OF *AMERICAN PIPE* AND *CROWN CORK & SEAL*, R.N.S.B. TIMELY APPEALED THE CONTRACTING OFFICER'S DECISION TO THIS COURT.

The contracting officer denied RNSB's claims for 1993 through 1996 on December 18, 2001. The contracting officer has not yet acted on RNSB's claim for 1997.[4] Section 609(a)(3) of title 41, U.S.C., provides that appeals from contracting officer decisions "shall be filed within twelve months from the date of the receipt by the contractor of the decision of the contracting officer concerning the claim."

On December 18, 2001, when the contracting officer denied RNSB's claims for 1993 through 1996, a lawsuit had already been filed asserting on behalf of a putative class the same claims that RNSB had asserted on its own behalf. That lawsuit, *Pueblo of Zuni v. United States*, U.S.D.C. N.M. No. 01CV1046 (WJ/WPL), was filed on September 11, 2001. RNSB was a member of the class, as defined in the complaint, of "all tribes and tribal organizations

[4] This claim, for less than $100,000, was filed on August 23, 2007. RNSB has not received a decision on that claim or notification of the time within which a decision will be issued. Accordingly, the claim should be deemed denied. 41 U.S.C. § 605(c)(5).

contracting with the ISDA between the years 1993 to the present." Complaint, *Appendix*, at A-48, A-70 ¶ 53. The complaint alleged that

> [t]he plaintiff class provided the defendants with IHS-funded services under ISDA contracts. These agreements and the law under which they were executed required the defendants to pay the plaintiff class members their full statutory entitlements to contract support costs associated with all health programs transferred to tribal operation under those contracts.
>
> . . . The defendants have failed and refused to meet their contractual obligations by refusing to pay all contract support costs required to be paid under the plaintiff class members' contracts with IHS.

*Id*. at A-76 to A-77 ¶¶ 73-74. RNSB asserts those same claims in the instant action.

Under the rule of *American Pipe & Construction Co. v. Utah*, 414 U.S. 538 (1974), the *Pueblo of Zuni* class action under Rule 23 stopped the statute of limitations from running for all claims covered by the representative action. In *Crown, Cork & Seal Co. v. Parker*, 462 U.S. 345 (1983), the Supreme Court extended the tolling rule of *American Pipe* to all members of an asserted class, including those who, like RNSB, subsequently file their own suits. 462 U.S. at 353-54. In *Stone Container Corp. v. United States*, 229 F.3d 1345 (2000), *cert. denied sub nom. Smurfit-Stone Container Corp. v. United States*, 532 U.S. 971 (2001), the Federal Circuit held that the *American Pipe* rule applies in lawsuits against the United States. "Having determined that Rule 23 tolling is statutory rather than equitable, it follows that the rule of *American Pipe* applies to the government just as it does to private parties, both generally and in this particular case." 229 F.3d at 1354.

Without this sensible rule, "[o]nly by intervening or taking other action prior to the running of the statute of limitations would [putative class members] be able to ensure that their rights would not be lost in the event that class certification was denied." *Crown Cork & Seal*,

462 U.S. at 350. Encouraging a multiplicity of suits[5] is not in the interest of judicial economy or consistent with the goals of Rule 23.

> "[The class action] is a device centrally concerned with the economies of aggregating small claims, and it would thus be seriously impaired by a rule that required all the class members to file separate, protective suits, against the eventuality that the statute of limitations would run during the period when the class status of the putative class action remained undetermined. We want the class members to rely on the filing of the class action rather than to clutter the courts with a multitude of separate suits."

*Elmore v. Henderson*, 227 F.3d 1009, 1012 (7th Cir. 2000). *See also McCarthy v. Kleindienst*, 562 F.2d 1269, 1273 (D.C.Cir.1977) ("[t]he policy considerations outlined in *American Pipe* call for a broad reading of that decision").

While class certification was pending in *Pueblo of Zuni*, Defendant was on notice of adverse claims relating to unpaid contract support costs. Defendant was "aware of the need to preserve evidence and witnesses respecting the claims of all the members of the class." *Crown, Cork & Seal*, 462 U.S. at 353.

Tolling of the statute of limitations for unnamed members of a putative class ends when the trial court denies certification of the class. *Stone Container Corp.*, above, 229 F.3d at 1355-56; *Armstrong v. Martin Marietta Corp.*, 138 F.3d 1374, 1380-1391 (11th Cir. 1998)(*en banc*), *cert. denied*, 525 U.S. 1019 (1998).

On May 22, 2007, class certification was denied in the *Pueblo of Zuni* case. 243 F.R.D. 436. The one-year statute of limitations then began running on RNSB's appeal of the contracting

---

5 "Hundreds of other Tribal contractors were experiencing problems similar to those the Shoshone-Bannock Tribes were experiencing with CSC shortfalls." *Shoshone-Bannock Tribes v. Leavitt*, 408 F.Supp.2d 1073, 1078 (D. Ore. 2005).

officer's decision on its claims for 1993 through 1996. This lawsuit was filed on January 11, 2008, well within the one-year statute.

The contracting officer has not yet acted on RNSB's claim for 1997. Consequently, the statute of limitations has not yet begun to run on the appeal of her decision.

## III. UNDER THE RULE OF *AMERICAN PIPE* AND *CROWN CORK & SEAL*, R.N.S.B. TIMELY PRESENTED ITS CONTRACT CLAIM FOR 1997 TO THE CONTRACTING OFFICER.

RNSB's claim for 1997, *Appendix*, at A-18, would have been required to be filed by December 31, 2003, six years after the end of 1997. 41 U.S.C. § 605(a). But on September 11, 2001, the putative class action in *Pueblo of Zuni v. United States*, above, was pending. The claims asserted on behalf of the class on that case included RNSB's 1997 claim for unpaid contract support costs.

As noted above, class certification was denied in *Pueblo of Zuni* on May 22, 2007. 243 F.R.D. 436.

For sound reasons, courts have applied the *American Pipe* rule to toll statutory limitations periods for filing administrative appeals. *Griffin v. Singletary*, 17 F.3d 356, 360-61 (11th Cir. 1994), *cert. denied sub nom. Florida v. Platt*, 513 U.S. 1077 (1995) ("'[a]pplying the tolling rule to the filing of administrative claims will have the same salutary effect as exists for the filing of lawsuits. In both cases, tolling the statute during the pendency of a class action will avoid encouraging all putative class members to file separate claims . . . '") (quoting *Sharpe v. American Express Co.*, 689 F. Supp. 294, 300 (S.D.N.Y. 1988)); *see also Andrews v. Orr*, 851 F.2d 146, 150 (6th Cir.1988) (while class action is pending, defendant has notice of claims of all putative class members; when class action ends, putative class member must bring individual

claim to attention of defendant by filing administrative complaint); *McDonald v. Secretary of Health & Human Services*, 834 F.2d 1085, 1092 (1st Cir. 1987) (after class action decertified on appeal, class members could "go forward from the point where they had left off during pendency of the class action" and exhaust administrative remedies); *Barrett v. U.S. Civil Service Commission*, 439 F.Supp. 216, 218 (D.D.C. 1977) (*American Pipe* tolling held applicable at the administrative level). *See also Zapata v. IBP, Inc.*, 1998 WL 717621, at *6 (D. Kan. No. Civ.A 93-2366, Sept. 29, 1998) (unpublished) ("We find that plaintiff had a right to rely on the general rule that he did not have to file an administrative claim until after the class action certification motion was denied").

"Tolling the administrative limitations period [discourages] putative class members from needlessly multiplying actions without prejudicing defendants. *Griffin*, above, 17 F.3d at 361.

Plaintiff is aware that the March 14, 2008, memorandum opinion in *Menominee*, above, 2008 WL 680379 at *1, n. 2, *motion for reconsideration pending*, held that a plaintiff's administrative filing time limit is not tolled under *American Pipe*. That court relied in turn on *NuFarm Am., Inc. v. United States*, 398 F. Supp. 2d 1338, 1353-54 (Ct. Int'l Trade 2005), appeal pending, No. 2007-1220 (Fed. Cir.), in which class certification was denied because unnamed members of the class had not exhausted administrative remedies. The Court of International Trade's decision did not address whether a *named* plaintiff could rely on a prior class action to toll its own administrative filing deadline under *American Pipe* and *Crown, Cork & Seal*. To the extent *NuFarm* is read to deny jurisdiction over the claim of a named plaintiff that has filed within the statutory period as tolled under *American Pipe*, it is inconsistent with *Stone Container*,

*Griffin,* and the other authorities cited above and should not be relied upon to deny this Court jurisdiction over RNSB's 1997 claim.

The *en banc* decision of the Federal Circuit in *Kirkendall v. Dep't of the Army*, 479 F.3d 830 (2007), *cert. denied*, __ U.S. __, 128 S.Ct. 375 (2007), is instructive. There, the applicable statute commanded that a complaint to the Secretary of Labor "must be filed within 60 days after the date of the alleged violation." 5 U.S.C. § 3330a(a)(1)(A)(2).[6] The Secretary argued, as Defendant does here, *Motion to Dismiss*, Doc. 6, at 18-19, that failure to comply with that statutory deadline for initiating an administrative complaint deprived the court of jurisdiction. The Secretary further argued that, because the statutory deadline was jurisdictional, it was not subject to tolling. 479 F.3d at 842. The *en banc* court rejected that argument as "without merit", explaining that "time prescriptions, however emphatic, are not properly typed jurisdictional." *Id.*, *quoting Arbaugh v. Y & H Corp.*, 546 U.S. 500, 126 S. Ct. 1235, 1242 (2006) (citations and internal quotation marks omitted). The Federal Circuit, expert in these matters, thus rejected the Government's effort to establish a category of "mandatory" or "jurisdictional" limitations periods exempt from tolling.[7]

In *American Pipe* itself, the Supreme Court addressed the argument that statutory filing deadlines restricted the ability of the courts to toll those deadlines:

---

[6] Like the time limitations on filing contractor claims with the contracting officer in 41 U.S.C. § 605(a), the time limitation in § 3330a(a)(1)(A)(2) by its plain language did not address, let alone restrict, the jurisdiction of the courts.

[7] The Federal Circuit also noted that "Even if this were a close case, which it is not, the canon that veterans' benefits statutes should be construed in the veteran's favor would compel us to find that section 3330a is subject to equitable tolling." 479 F.3d at 843-844. ISDA's Model Agreement contains a similar rule of construction: "Each provision of the [ISDA] and each provision of this Contract shall be liberally construed for the benefit of the contractor. . . ." 25 U.S.C. § 450*l*(c), *Model Agreement* § 1(a)(2).

> The petitioners contend, however, that irrespective of the policies inherent in Rule 23 and in statutes of limitations, the federal courts are powerless to extend the limitation period beyond the period set by Congress because that period is a 'substantive'element of the right conferred on antitrust plaintiffs and cannot be extended or restricted by judicial decision or by court rule. . . .
>
> . . .
>
> [T]he mere fact that a federal statute providing for substantive liability also sets a time limitation upon the institution of suit does not restrict the power of the federal courts to hold that the statute of limitations is tolled under certain circumstances not inconsistent with the legislative purpose.

414 U.S. at 556, 559.

"*American Pipe* and *Crown, Cork & Seal* were not based on judge-made equitable tolling, but rather on the Court's interpretation of Rule 23." *Stone Container Corp.*, above, 229 F.3d at 1354. Further,

> This court has already held in *Wood-Ivey Sys. Corp. v. United States*, 4 F.3d 961 (Fed. Cir. 1993), that the Federal Rules of Civil Procedure govern tolling against the government. Because "[a]ll laws in conflict with [the Federal Rules of Civil Procedure] shall be of no further force or effect after such rules have taken effect," 28 U.S.C. 2072(b), the Federal Rules of Civil Procedure, like the Federal Rules of Criminal procedure, are "as binding as any federal statute." *Bank of Nova Scotia v. United States*, 487 U.S. 250, 255 (1988).
>
> . . . Having determined that Rule 23 tolling is statutory rather than equitable, it follows that the rule of *American Pipe* applies to the government just as it does to private parties, both generally and in this particular case.

*Id.* [8]

Moreover, RNSB knew that its sister organization, the Ramah Navajo Chapter, had been lead plaintiff in a class action against the Bureau of Indian Affairs in the U.S. District Court for New Mexico for unpaid contract support costs, *Ramah Navajo Chapter v. Lujan*, No. 90CV0957.

---

8 *See also Irwin v. Department of Veterans Affairs*, 498 U.S. 89 (1990) (rejecting Government argument that statute of limitations was jurisdictional and, therefore, could not be *equitably* tolled).

The District Court in that case certified the class and specifically had held that an ISDA contractor need not have filed a CDA claim to be covered by the class action. *Id*. Doc. No. 96 (Order dated Oct. 1, 1993), *Appendix*, at A-81, A-84. Two multi-million dollar settlements were subsequently distributed to tribal contractors (including RNSB) in that case, even though, to our knowledge,[9] only the named plaintiffs had filed CDA claims. *See* 50 Supp. 2d 1091 (D.N.M. 1999); 250 F.Supp. 2d 1303 (D.N.M. 2002). See also *Pueblo of Zuni v. United States*, 467 F. Supp. 2d 1099, 1112-13 (D.N.M. 2006) ("the practical effect of the [*Ramah Navajo Chapter*] decision was that each member of the proposed class need not have exhausted its administrative remedies under the CDA").

RNSB and the other tribal contractors thus had no reason to believe that they were required to file their own claims under the CDA while the *Pueblo of Zuni* putative class action was pending. Once class certification was denied in that case, on May 22, 2007, the statute of limitations began running on RNSB's 1997 claim. RNSB filed that claim with its contracting officer on August 22, 2007, three months into the 28 months[10] remaining in the statutory period after the denial of class certification in *Pueblo of Zuni*. The claim is timely.

**<u>Conclusion</u>**

For the foregoing reasons, this Court should deny Defendant's motion to dismiss.

---

9 Mr. Gross, one of Plaintiff's counsel in this case, was and is Class Counsel in the *Ramah Navajo Chapter* litigation.

10 The six-year statute allows 2,190 days within which to file a contract dispute. Between December 31, 1997, the earliest date in which RNSB's 1997 claim would have accrued, and the September 11, 2001, filing of *Zuni*, 1,350 days had elapsed. Consequently, when class certification in *Zuni* was denied on May 22, 2007, RNSB still had 840 days or approximately 28 months within which to file its 1997 contract dispute. RNSB filed this suit within four months of the denial of class certification in *Zuni*.

Respectfully submitted this 12th day of April, 2008.

s/ Daniel H. MacMeekin
Daniel H. MacMeekin
(Counsel of record)
1776 Massachusetts Avenue, NW, Suite 801
Washington, DC 20036

Telephone: (202) 223-1717
Fax: (202) 223-1459
E-mail: dan@macmeekin.com
D.C. Bar No. 393035

Michael P. Gross
(Of counsel)
M.P. Gross Law Firm, P.C.
460 St. Michael's Drive, Suite 401
Santa Fe, New Mexico 87505
Telephone: (505) 995-8066
Fax: (505) 989-1096
E-mail: mpgross@cnsp.com
New Mexico Bar No. 1027

CERTIFICATE OF SERVICE

I hereby certify that on April 12, 2008, I filed the foregoing Opposition electronically through the CM/ECF system, which caused the following parties or counsel to be served by electronic means, as more fully reflected on the Notice of Electronic Filing:

John S. Groat, Esq.
Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
Attn: Classification Unit
1100 L Street, N.W.
Washington, D.C. 20530

jack.groat@usdoj.gov

s/ Daniel H. MacMeekin