No. 08-19C
(Judge Bush)

---

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

RAMAH NAVAJO SCHOOL BOARD, INC.,

Plaintiff,

v.

THE UNITED STATES,

Defendant.

---

# DEFENDANT'S REPLY TO PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS

---

GREGORY G. KATSAS
Acting Assistant Attorney General

JEANNE E. DAVIDSON
Director

MARK A. MELNICK
Assistant Director

JOHN S. GROAT
Trial Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
Attn: Classification Unit
1100 L Street, NW, 8th Floor
Washington, D.C. 20530
Telephone: (202) 616-8260
Facsimile: (202) 514-7965
Attorneys for Defendant

OF COUNSEL:

MELISSA A. JAMISON, ESQ.
Senior Attorney
Department of Health and
Human Services

May 9, 2008

# TABLE OF CONTENT

PAGE

TABLE OF AUTHORITIES . . . . . iii

DEFENDANT'S REPLY TO PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS . . . . . 1

SUMMARY OF ARGUMENT . . . . . 1

ARGUMENT . . . . . 4

I. Section 1500 Of Title 18, United States Code, Bars RNSB's Pursuit In This Court Of Its FY 1995, 1996, 1997 1998, 1999, 2000, 2001, 2002, and 2003 CDA Contract Claims That RNSB Has Asserted In The District Court . . . . . 4

A. The Supreme Court's Reading Of 28 U.S.C. §1500 As Barring An Action "Based On Substantially The Same Operative Facts . . . . [Where] There [Is] Some Overlap In The Relief Requested" Controls . . . . . 4

B. RNSB Fails To Identify Any Operative Facts In This Action Distinct From The Operative Facts At Issue In Tunica And No Difference Is Apparent In Those Operative Facts . . . . . 6

C. There Is An "Overlap Of The Relief [RNSB] Requested" In Tunica And The Relief RNSB Seeks In This Action . . . . . 12

II. The Court Lacks Jurisdiction To Entertain RNSB's Claim For FY 1997 CSC . . . . . 13

A. Because RNSB's August 23, 2007 Claim For FY 1997 To The Contacting Officer Was Submitted While RNSB's Claim Was Pending Before The District Court In Tunica, That August 23, 2007 Claim May Not Now Be Deemed Denied . . . . . 13

B. Section 605(a) Of Title 41, United States Code, Bars RNSB's Untimely August 23, 2007 CDA Claim For Additional FY 1997 CSC . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

III. The Statute Of Limitations, 41 U.S.C. § 609(a)(3), Bars RNSB's Appeal Of The Contracting Officer's December 18, 2001 Denial Of Its FY 1993, 1994, 1995, and 1996 CDA Claims . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

# TABLE OF AUTHORITIES

**CASES** **PAGE(S)**

American Pipe & Construction Co. v. Utah,
414 U.S. 538 (1974) . . . . . . . . . . 21, 22, 23

Basch v. Ground Round, Inc.,
139 F.3d 6 (1st Cir. 1998) . . . . . . . . . . 25

Borough of Alpine v. United States,
923 F.2d 170 (Fed . Cir. 1991) . . . . . . . . . . 20

Case, Inc. v. United States,
88 F.3d 1004 (Fed. Cir. 1996) . . . . . . . . . . 14

Cherokee Nation v. Leavitt,
543 U.S. 631 (2005) . . . . . . . . . . 9

Cincinnati Elecs. Corp. v. United States,
32 Fed.Cl. 496 (1994) . . . . . . . . . . 15

Computer Prods. Int'l, Inc. v. United States,
26 Cl. Ct. 518, 528 (1992) . . . . . . . . . . 21

Crown, Cork & Seal Co. v. Parker,
462 U.S. 345 (1983) . . . . . . . . . . 21, 22, 23

England v. The Swanson Group, Inc.,
353 F.3d 1375 (Fed. Cir. 2004) . . . . . . . . . . 20, 24

Federal Electric Corp. v. United States,
202 Ct. Cl. 1028, 486 F.2d 1377 (1973) . . . . . . . . . . 6

Fidelity Constr. Co. v. United States,
700 F.2d 1379 (Fed. Cir. 1983) . . . . . . . . . . 22

Gregory Lumber Co. v. United States,
229 Ct. Cl. 762 (1982) . . . . . . . . . . 21

Hamza v. United States,
36 Fed. Cl. 10 (1996) . . . . . . . . . . 21

Harbuck v. United States,
378 F.3d 1324 (Fed. Cir. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

Heritage Minerals, Inc. v. United States,
71 Fed. Cl. 710 (2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

Irwin v. Department of Veterans Affairs,
498 U.S. 89 (1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18, 19

John R. Sand & Gravel Co. v. United States,
– U.S. –, 128 S. Ct. 750 (2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

Keene and Loveladies Harbor, Inc. v. United States,
27 F.3d 1545 (Fed. Cir. 1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **passim**

Keene. de Quijs v. Shearson/American Express, Inc.,
490 U.S. 477 (1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

Kirkendall v. Dep't of the Army,
479 F.3d 830 (2007), cert. denied, __ U.S. __, 128 S. Ct. 375 (2007) . . . . . . . . . . . . . 19

Library of Congress v. Shaw,
478 U.S. 310 (1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

Menominee Indian Tribe of Wisconsin v. United States,
539 F. Supp.2d 152 (D. D.C., 2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

Milmark Servs., Inc. v. United States,
231 Ct. Cl. 954 (1982) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

Phillips/May Corp. v. United States ,
No. 07-7139 (Fed. Cir. May 23, 2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

Roxco, Ltd. v. United States,
77 Fed. Cl. 138 (2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

Sharman Co. v. United States,
2 F.3d 1564 (Fed. Cir. 1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 14

South Corp. v. United States,
690 F.2d 1368 (Fed. Cir.1982) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

Stone Container Corp. v. United States,
229 F.3d 1345 (Fed. Cir. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21, 23, 24

Thompson v. Cherokee Nation,
334 F.3d 1075 (2003) . . . . . . . . . . 9

Tohono O'odham Nation v. United States,
79 Fed. Cl. 645 (2007) . . . . . . . . . . 4

United States v. King,
395 U.S. 1 (1969) . . . . . . . . . . 22, 23

United States v. Mason,
412 U.S. 391 (1973) . . . . . . . . . . 6

United States v. Mitchell,
445 U.S. 535 (1980) . . . . . . . . . . 22

United States v. Sherwood,
312 U.S. 584 (1941) . . . . . . . . . . 22

United States v. Testan,
424 U.S. at 392 (1976) . . . . . . . . . . 23

In re Vioxx Products Liability Litigation,
478 F. Supp. 2d 897 (E.D. La. 2007) . . . . . . . . . . 25

Yang v. Odom,
392 F.3d 97 (3d Cir. 2004) . . . . . . . . . . 25

## STATUTES, RULES AND REGULATIONS

25 U.S.C. § 450j-1(a) . . . . . . . . . . 3

28 U.S.C. § 1500 . . . . . . . . . . **passim**

28 U.S.C. §1500 . . . . . . . . . . 4, 30

28 U.S.C. § 1581(I) . . . . . . . . . . 24

28 U.S.C. § 2501 . . . . . . . . . . 19

28 U.S.C. 2636(I) . . . . . . . . . . 23, 24

41 U.S.C. § 605 . . . . . . . . . . **passim**

41 U.S.C. § 609(a)(3) . . . . . . . . . . **passim**

41 U.S.C. § 609(a)(3) . . . . . . . . . . 16, 31

Rule 23 . . . . . . . . . . 23

Rule 12(b)(1) . . . . . . . . . . 26

**ADDENDUM**

Defendants' Motion to Dismiss and for Summary Judgment (April 20, 2008) , Tunica-Biloxi Tribe of Louisiana, et al., v. United States, No. 02-2413 (RBW) (D. D.C.) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| RAMAH NAVAJO SCHOOL BOARD, INC., | ) | |
| Plaintiff, | ) | |
| v. | ) | No. 08-19C (Judge Bush) |
| THE UNITED STATES, | ) | |
| Defendant. | ) | |

DEFENDANT'S REPLY TO PLAINTIFF'S OPPOSITION
TO DEFENDANT'S MOTION TO DISMISS

Defendant respectfully replies to Ramah Navajo School Board, Inc.'s (RNSB) April 12, 2008 opposition to defendant's motion to dismiss (RNSB Opp.).

SUMMARY OF ARGUMENT

1. Because RNSB's claims in this action for Fiscal Years (FY) 1995, 1996, 1997, 1998, 1999, 2000, 2001, 2002, and 2003 rest upon operative acts at issue in Tunica-Biloxi Tribe of Louisiana, et al., v. United States, No. 02-2413 (RBW) (D. D.C.) (Tunica), and because the relief RNSB requests in Tunica overlaps with the relief requested here, 28 U.S.C. § 1500 bars RNSB's pursuit of those claims in this Court.

2. For FY 1997, RNSB failed to properly present its claim for contract support costs (CSC) to the contracting officer and, therefore, this court does not have jurisdiction to entertain those claims. In moving to dismiss the complaint, we relied on RNSB's representation to the court in Tunica that it had not presented any claims related to 1997 to conclude that RNSB had not submitted any claim relating to its FY 1997 annual funding agreement (AFA), as required by 41 U.S.C. § 605 of the Contract Dispute Act (CDA). Defendant's Motion to Dismiss (MTD) at 17-18. In its opposition, RNSB relies upon its recently submitted July 31, 2007 claim to the

contracting officer seeking additional FY 1997 CSC, submitted to the contracting officer while Tunica was pending, and contends that this July 31, 2007 claim should be deemed as having been denied, so as to permit RNSB to appeal that denial. RNSB Opp. at 11 n.4. Contrary to RNSB's assumption, the contracting officer lacked authority to act upon RNSB's July 31, 2007 claim because RNSB's claim for additional FY 1997 CSC was pending in the district court; for that reason, RNSB's claim may not now be deemed to have been denied, so as to permit RNSB to appeal that denial; and, therefore, this Court lacks jurisdiction to entertain RNSB's claim for additional FY 1997 CSC. Sharman Co. v. United States, 2 F.3d 1564, 1571-72 (Fed. Cir. 1993) (once a claim is in litigation exclusive authority to act on the claim rests with the Depart-ment of Justice and, for that reason, contracting officer's decision while litigation pending is a "nullity"), overruled in part on other grounds by Reflectone, Inc. v. Dalton, 60 F.3d 1572 (Fed. Cir. 1995) (en banc). Even assuming, solely for the sake of argument, that the RNSB's FY 1997 claim is deemed to have been denied, moreover, 41 U.S.C. § 605 bars that FY 1997 claim, which was first submitted to the contracting officer more than six years after it accrued.

3. This Court lacks jurisdiction to entertain RNSB's appeal of the contracting officer's December 18, 2001 denial of its FY 1993, 1994, 1995, and 1996 CDA claims, because RNSB failed to meet the jurisdictional requirements of 41 U.S.C. §§ 605(b) & 609(a)(3), which set forth a specific and limited period for appealing the denials of claims under the CDA. RNSB's contention that the running of the statute of limitations, 41 U.S.C. § 609(a)(3), for its appeal of the contracting officer's December 18, 2001 denial of its claims was tolled during the pendency of class action litigation in the district court raising similar issues has no merit. RNSB seeks to invoke this Court's jurisdiction pursuant to 25 U.S.C. § 450j-1(a) and 41 U.S.C. § 609, which

together provide this Court limited jurisdiction to entertain an appeal of a contracting of officer's denial of Indian Self-Determination and Education Assistance Act (ISDA) contract claims; subsections 605(b) & 609(a)(3) of title 41 set forth a specific limitation upon the period within which an ISDA contractor may file such appeals and require that the RNSB have filed an appeal in this Court within 12 months of its receipt of the contracting officer's December 18, 2001 denial of its claim. The fact that another ISDA contractor seeking additional CSC sought to certify a class of ISDA contractors in a district court proceeding does not constitute a basis upon which to toll the time limitation of subsection 609(a)(3) applicable to RNSB and has no bearing upon the effect of the plain language of subsections 605(b) and 609(a)(3).

## ARGUMENT

### I. Section 1500 Of Title 18, United States Code, Bars RNSB's Pursuit In This Court Of Its FY 1995, 1996, 1997 1998, 1999, 2000, 2001, 2002, and 2003 CDA Contract Claims That RNSB Had Asserted In The District Court.

#### A. The Supreme Court's Reading Of 28 U.S.C. §1500 As Barring An Action "Based On Substantially The Same Operative Facts . . . . [Where] There [Is] Some Overlap In The Relief Requested" Controls.

As we demonstrated in our moving brief, the Supreme Court has interpreted 28 U.S.C. § 1500 as barring the filing of an action in this Court where "there is meaningful overlap both in the underlying facts and in the relief sought in the two actions. A perfect symmetry of demands for relief is not necessary." Tohono O'odham Nation v. United States, 79 Fed. Cl. 645, 654-56 (2007) (discussing and following Keene). RNSB's argument in its opposition that 28 U.S.C. § 1500 should be read narrowly so as to require that the underlying facts and relief be

identical fails to distinguish or even to discuss the principal authority for the proper reading of section 1500 upon which we rely.

In Keene, the Supreme Court adopted the Court of Claims' judicial interpre-tation of the provisions that preceded section 1500 as the proper reading of section 1500 . The Court read those precedents as holding "possible dismissal [pursuant to 28 U.S.C. § 1500] would turn on whether the plaintiff's other suit was based on substantially the same operative facts as the Court of Claims action, at least if there was some overlap in the relief requested." 508 U.S. at 213.

In its opposition, RNSB ignores the analysis and holding of Keene and apparently contends that, for section 1500 to apply, the operative facts alleged and relief sought must be identical. RNSB argues that, "[t]o come within the proscription of 28 U.S.C. § 1500, there must be a showing both that the claims arise from the same operative facts *and* that they seek the same relief." RNSB Opp. at 3 (citing Heritage Minerals, Inc. v. United States, 71 Fed. Cl. 710, 716 (2006) (other citations omitted) (emphasis in original)). RNSB's reading of section 1500, based upon its reliance upon selective citations to portions of decisions of this Court that may be read to be inconsistent with Keene, clearly conflicts directly with the Supreme Court's reading of section 1500 in Keene, which reading this Court must follow.[1] See Harbuck v. United States,

[1] All courts, of course, are bound by the holding in Keene. de Quijs v. Shearson/American Express, Inc., 490 U.S. 477, 483 (1989) ("If a precedent of this Court has direct application in a case, yet appears to rest on reasons rejected in some other line of decisions, the Court of Appeals should follow the case which directly controls, leaving to this Court the prerogative of overruling its own decisions"). See also Federal Electric Corp. v. United States, 202 Ct. Cl. 1028, 1037-38, 486 F.2d 1377, 1382 (1973) (citing United States v. Mason, 412 U.S. 391 (1973)).

378 F.3d 1324, 1338-39 (Fed. Cir. 2004) (interpreting Keene and Loveladies Harbor, Inc. v. United States, 27 F.3d 1545, 1548 (Fed. Cir. 1994) (en banc), in concert).

B. RNSB Fails To Identify Any Operative Facts In This Action Distinct From The Operative Facts At Issue In Tunica And No Difference Is Apparent In Those Operative Facts.

As we demonstrated in our moving brief, the operative facts at issue in this action appear identical to operative facts at issue in Tunica, so as to warrant dismissal pursuant to section 1500, consistent with the Supreme Court's reading in Keene.

In its opposition, RNSB contends that "[c]lose analysis of the respective complaints is necessary to determine whether the same operative facts are alleged, thereby invoking the bar of § 1500." RNSB Opp. at 4. While we disagree that the same operative facts must be alleged, for the reason discussed above, we do agree that close analysis of the complaints in Tunica and in this case are proper. A close analysis here, however, is frustrated by the fact that RNSB has not set forth the operative facts upon which it relies in this action and instead merely citing cases upon which RNSB relies, and has failed to respond to our discussion of the key operative facts alleged by RNSB and at issue in Tunica. MTD at 6-7 & 14-15. As we demonstrated in our moving brief, RNSB's specific allegations in its complaint in Tunica directly contradicts RNSB's conclusory assertion that "[p]laintiffs' complaint in Tunica did not assert the Shortfall Claim." RNSB Opp. at 9.

For the fiscal years prior to FY 1998, RNSB alleges in Tunica that the appli-cable appropriations acts did not limit the amount of appropriations that IHS could utilize to pay CSC.

> 35. For years prior to FY 1998, appropriations for operation of Indian health programs were in a lump sum form which did not distinguish between, or restrict, contract support costs from direct program operations. The entire appropriation for each of those

> years was thus legally available to reimburse contract costs entered pursuant to the mandate of ISDA by the Secretary on behalf of the United States.

RNSB ACompl., ¶ 35.

For the fiscal years starting with FY 1998 and forward, RNSB alleges in <u>Tunica</u> that the limitations or "caps" in the applicable appropriations acts did not limit the obligation of the United States to pay CSC.

> Breach of Contract – Capped Years
>
> 39. In years after fiscal year 1997, the annual appropriation Acts for Indian health programs contained limitations or caps under which "not to exceed" a stated amount of the appropriation could be used to pay Indirect Contract Support Costs of ISDA contracts.
>
> 40. The effect of these caps was to limit the amount the Secretary has paid to each contractor based on a pro rata apportionment of the appropriated "not to exceed" amount. But these limitations did not limit or reduce the United States' obligation to pay the full contracted and legally required amount of Indirect Contract Support Costs after services were performed. Nor did it fulfill or extinguish the Defendants' duty to request Congress for sufficient appropriations to meet the United States' contractual obligations.
>
> 41. The defendants have breached their statutory and contractual duties and the unpaid amounts are due and owing in an amount to be established by the proof.

RNSB ACompl., ¶¶ 39-41.

RNSB's claims in <u>Tunica</u> are precisely the same claims that RNSB now asserts in this action, which RNSB now refers to as its "shortfall claims."

> 17. This lawsuit concerns only the second way in which Defendant has Underpaid indirect costs to RNSB: Defendant has failed to pay RNSB even the full indirect costs computed by applying the incorrectly-calculated indirect cost rate to RNSB's program base. This is commonly referred to as "the shortfall claim."

> 18. RNSB's shortfall claims are directly supported by the Federal Circuit's ruling in *Thompson v. Cherokee Nation*, 334 F.3d 1075 (2003), which was affirmed by a unanimous Supreme Court in *Cherokee Nation v. Leavitt*, 543 U.S. 631, 125 S. Ct. 1172 (2005).
>
> Defendant's Breaches
>
> 19. For the period 1997 through 2003, Defendant underpaid RNSB's indirect contract support costs, as determined by multiplying its indirect cost rate by its program base, by at least $400,000.

Compl., ¶¶ 17-19. Just as RNSB alleged in its CDA claims and in Tunica, RNSB seeks in this action to recover IHS's alleged underpayments of CSC. By reference to Thompson v. Cherokee Nation, 334 F.3d 1075 (2003), aff'd, Cherokee Nation v. Leavitt, 543 U.S. 631, 639 (2005), RNSB seeks relief upon the basis of what it alleges were underpayments of the CSC it claims it was entitled to but did not receive due to IHS's belief that IHS had insufficient appropriations. Although RNSB makes conclusory assertions contesting our demonstration that its claim in this action rests upon facts identical to those upon which its Tunica claims rest, RNSB does not, and cannot, deny its own allegations in Tunica. These allegations in Tunica, which allegations RNSB does not address in its opposition, establish that RNSB's claim in this action rests on the same underlying facts as do claims RNSB asserted in Tunica.

In our Motion to Dismiss, the Government further demonstrated that, in Tunica, RNSB had in fact identified its "shortfall" claim as a claim common to other contractors such that a class should be certified. MTD at 15. RNSB does not contest this fact but argues in response that its identification of this issue has no relevance to a proper analysis of section 1500 because these issues constitute possible defenses that the Government might raise. RNSB Opp. at 6-7 & 14-15. RNSB's attempt to distinguish between alleged facts and potential defenses has no logical

significance to the proper application of section 1500, which properly turns on what actually constitute the operative facts of a claim and not how a litigant chooses to plead its claim. See Keene, 508 U.S. at 213. Section 1500 may apply assuming that RNSB's claims in Tunica and in his action "arise from the same operative facts." Id. Thus, even assuming for the sake of argument that RNSB had not specifically alleged the identical operative facts in Tunica, upon which facts it relies in this action, this action would still be barred under Keene, because the claims in both cases do arise under the same operative facts.

The basis for the claims in both cases is RNSB's contention that it is entitled to additional CSC. In Tunica, IHS has asserted numerous statutory and contractual defenses to the payment of additional CSC, regardless of which theory for relief RNSB asserts. For example, one of IHS's defenses in Tunica is that it paid RNSB the full and exact amount of CSC that it promised to pay RNSB in RNSB's contracts and AFAs, which payment now bars any claim for additional CSC. Defendants' Motion to Dismiss and for Summary Judgment (April 20, 2008) at 22-24 (excerpt appended). Potential factual, contractual, and statutory restrictions upon RNSB's ability to recover additional CSC necessarily constitute the "operative facts." This suit and Tunica thus both turn upon the specific terms of IHS's obligation to pay RNSB additional CSC, and thus arise under the same operative facts.

Because the claims RNSB asserts in Tucina and in this action are based upon the same operative facts, it follows that a judgment in one case will bar a judgment in the other case under the doctrine of res judicata. Phillips/May Corp. v. United States , No. 07-7139 (Fed. Cir. May 23, 2008) (rejecting argument that the option under the CDA to pursue claims either before this Court or before the contract appeal boards gave a contractor the right to split a claim and, thereby, avoid

res judicata). Thus, while RNSB is correct that "[n]othing in the [ISDA or CDA] requires a contractor to seek judicial review of all claims on a single contract in a single forum or at the same time," RNSB Opp. at 10, RNSB's splitting of its claim based upon the same operative facts will result in the second action being barred by the doctrine of res judicata.

C. There Is An "Overlap Of The Relief [RNSB] Requested" In Tunica And The Relief RNSB Seeks In This Action.

Consistent with the Supreme Court reading in Keene of section 1500, there is an "overlap of the relief [RNSB] requested" in Tunica and of the relief RNSB seeks in this action, so as to warrant dismissal pursuant to 28 U.S.C. § 1500.

In Tunica, RNSB alleges that IHS did not properly calculate the full amount of CSC to which RNSB is entitled under its ISDA contracts and did not pay the full amount RNSB alleges that it is entitled to be paid. In this case, RNSB omits the allegation that IHS improperly calculated the amount RNSB is entitled under its ISDA contracts, but contends that IHS did not pay RNSB the amount IHS calculated RNSB was due under its ISDA contracts.

Although RNSB raises an additional claim in Tunica, RNSB's contention that IHS was required to pay RNSB a particular amount of additional CSC estab-lishes an overlap in the relief RNSB requests in Tunica and in this action. If RNSB were to prevail in Tunica and to recover the full amount of CSC it seeks, RNSB would not be entitled to the additional CSC claimed in this action. RNSB sets forth no theory which would permit it the recovery it seeks in both cases and there is no such theory. Conversely, if RNSB recovers the amount of CSC it seeks in this action, RNSB in Tunica would only be entitled to recover of some lesser amount than it claims.

As the relief RNSB seeks in Tunica and in this action overlap and, as demonstrated above, the operative facts at issue in this action appear identical to operative facts at issue in Tunica, this action is barred in accordance with section 1500, as interpreted in Keene.

## II. The Court Lacks Jurisdiction To Entertain RNSB's Claim For FY 1997 CSC.

### A. Because RNSB's August 23, 2007 Claim For FY 1997 To The Contacting Officer Was Submitted While RNSB's Claim Was Pending Before The District Court In Tunica, That August 23, 2007 Claim May Not Now Be Deemed Denied.

For FY 1997, RNSB failed to properly present its claim for contract support costs (CSC) to the contracting officer and, therefore, this court does not have jurisdiction to entertain those claims.

In our moving brief, we argued that RNSB's apparent failure to submit a claim for its FY 1997 CSC to the contracting officer as required by 41 U.S.C. § 605 deprives this court of jurisdiction to entertain any such claim for FY 1997 CSC. In response, RNSB now contends that it submitted claim to the contracting officer on August 23, 2007 and that, because the contracting officer has not acted upon RNSB's claim, and RNSB is entitled to maintain a action in this Court upon the basis that its claim should be deemed to have been denied. RNSB Opp. at 11 n.4. RNSB may not rely upon its submission of a FY 1997 claim on its August 23, 2007 and the contracting officer's failure to act on that claim, while RNSB had asserted that claim before the district court in Tunica.

Because "[o]nce a claim is in litigation, the Department of Justice gains exclusive authority to act in the pending litigation," Sharman Co. v. United States, 2 F.3d 1564, 1571 (Fed. Cir. 1993); see Case, Inc. v. United States, 88 F.3d 1004, 1009 (Fed. Cir. 1996), the contracting

officer's failure to act upon RNSB's sub-mission of a claim for its FY 1997 CSC dated August 23, 2007, could not constitute a deemed denial of RNSB's claim entitling RNSB to file suit under the CDA. Section 516 of title 28 grants exclusive authority to the Department of Justice to act on matters in litigation, which exclusive authority "divests the contracting officer of his authority to issue a final decision on the claim." Sharman, 2 F.3d at 1571 (citation omitted); see Case, 88 F.3d at 1009. RNSB's assertion in Tunica of entitlement to additional FY 1997 CSC divested the contracting officer of the authority to issue a decision on RNSB's August 23, 2007 claim for additional FY 1997 CSC and, for that reason, RNSB's claim cannot be deemed as having been denied, so as to permit RNSB to appeal that deemed denial to this Court. See, e.g., Roxco, Ltd. v. United States, 77 Fed. Cl. 138, 148-49 (2007) ("the CO was divested of authority to rule on plaintiff's supplemental claim because the claim was pending before this court.") (citing Sharman, 2 F.3d at 1571); Cincinnati Elecs. Corp. v. United States, 32 Fed.Cl. 496, 500 (1994).

Because RNSB may not rely upon the contracting officer's failure to act upon its August 23, 2007 claim for additional FY 1997 CSC as a deemed denial of its claim, this Court lacks jurisdiction to entertain RNSB's appeal of a denial of its claim for additional FY 1997 CSC.

### B. Section 605(a) Of Title 41, United States Code, Bars RNSB's Untimely August 23, 2007 CDA Claim For Additional FY 1997 CSC.

Assuming, solely for the sake of argument, that the Court has jurisdiction to consider the question, subsection 605(a) would bar RNSB's August 23, 2007 claim seeking additional FY 1997 CSC. Subsection 605(a) provides in pertinent part that "[e]ach claim by a contractor against the government relating to a contract and each claim by the government against a contractor relating to a contract shall be submitted within 6 years after the accrual of the claim." RNSB's

claim accrued not later than the end of FY 1997 and RNSB submitted its claim more than six years later. This Court lacks jurisdiction to entertain claims such as this that are submitted to the contracting officer more than six years after the claim accrued. E.g., Menominee Indian Tribe of Wisconsin v. United States, 539 F. Supp.2d 152, 154 (D. D.C., 2008) (CDA claim for additional CSC based upon IHS contract untimely; citing cases) (copy appended).

## III. The Statute Of Limitations, 41 U.S.C. § 609(a)(3), Bars RNSB's Appeal Of The Contracting Officer's December 18, 2001 Denial Of Its FY 1993, 1994, 1995, and 1996 CDA Claims

The statute of limitations, 41 U.S.C. § 609(a)(3), now bars RNSB's appeal of the contracting officer's December 18, 2001 denial of its FY 1993, 1994, 1995, and 1996 CDA claims. In its opposition, RNSB does not contest the Government's demonstration in our moving brief that RNSB filed this action more than one year after its receipt of the contracting officer's December 18, 2001 denial of its FY 1993, 1994, 1995, and 1996 claims, so as to make this appeal of those denials untimely an accordance with subsection 609(a)(3). Nor does RNSB rely on equitable tolling. RNSB instead relies the judicial recognition of tolling of the limitations period in certain cases upon the basis of pending motions for certification of class actions and argues that the pendency of a class certification motion in Pueblo of Zuni v. United States, No. 01CV1046 WJ/WPL (D. N.M.), filed on September 11, 2001, constitutes a proper basis upon which to stay the running of the limitations period of subsection 609(a)(3). Upon examination, tolling for the basis of pending motion for class action certification has no bearing on the application of 41 U.S.C. § 609(a)(3).[2]

[2] RNSB states that "The Secretary argued, as Defendant does here, Motion to Dismiss, Doc. 6, at 18-19, that failure to comply with that statutory deadline for initiating an

In the enacting the CDA, Congress specifically has provided both for the finality of contracting officers' decisions, in the absence of the filing of a timely appeal, and for the time within which for filing of any such appeal.

> § 605. Decision by contracting officer
>
> * * *
>
> (b) Review; performance of contract pending appeal
>
> The contracting officer's decision on the claim shall be final and conclusive and not subject to review by any forum, tribunal, or Government agency, unless an appeal or suit is timely commenced as authorized by this chapter. . . .

41 U.S.C. § 605.

> § 609. Judicial review of board decisions
>
> (a) Actions in United States Court of Federal Claims; district court actions; time for filing
>
> (1) Except as provided in paragraph (2), and in lieu of appealing the decision of the contracting officer under section 605 of this title to an agency board, a contractor may bring an action directly on the claim in the United States Court of Federal Claims, notwithstanding any contract provision, regulation, or rule of law to the contrary.
>
> (2) In the case of an action against the Tennessee Valley Authority, . . . .
>
> (3) Any action under paragraph (1) or (2) shall be filed within twelve months from the date of the receipt by the contractor of the decision of the contracting officer concerning the claim, and shall proceed de novo in accordance with the rules of the appropriate court.

---

administrative complaint deprived the court of jurisdiction." Our argument is not that RNSB failed to submit a CDA claim to the contracting officer for additional CSC for FY 1993, 1994, 1995, and 1996, but that RNSB failed to file an action appealing the denial of those claims as the CDA provides.

41 U.S.C. § 609(a)(3). Because IHS's contracting officer's decision shall be final "unless an appeal or suit is timely commenced as authorized by" the CDA, RNSB uncontested failure to commence this suit "as authorized by" the CDA now deprives this Court's jurisdiction to entertain RNSB's appeal of IHS's contracting officer's December 18, 2001 denial of its claim for FY 1997 CSC.

The Supreme Court recently addressed the question of whether specific statutory limitations upon the time to file suits again the Government, such as subsection 609(a)(3), constitute jurisdictional limitations upon the ability of courts to grant relief. John R. Sand & Gravel Co. v. United States, 128 S. Ct. 750 (2008). The primary question the Court addressed in John R. Sand was whether, as the petitioner argued, intervening decisions of the Court, including Irwin v. Depart-ment of Veterans Affairs, 498 U.S. 89 (1990), had undermined prior decisions of the Court that previously had held 28 U.S.C. § 2501 to be jurisdic-tional and, for that reason, not subject to waiver by the Government's failure to raise that bar. Id. at 755. The Supreme Court specifically rejected the argument that section 2501 was not a jurisdictional bar. Id. ("We cannot agree with petitioner that the Court already has overturned the earlier precedent."). [3]

The Supreme Court reasoned that statutes of limitations such as section 2501 are jurisdictional and are not subject to waiver upon the basis that "[s]ome statutes of limitations . . . seek not so much to protect a defendant's case-specific interest in timeliness as to achieve a broader system-related goal, such as facilitating the administration of claims, . . . [or] limiting the

[3] The Court thus squarely rejected RNSB's contention that Kirkendall v. Dep't of the Army, 479 F.3d 830 (2007), cert. denied, 128 S. Ct. 375 (2007), and Irwin v. Department of Veterans Affairs, 498 U.S. 89 (1990), establish that all statute of limitations waiving the Government's sovereign immunity are not jurisdictional. See RNSB Opp. at 16 & 17 n.8.

scope of a government waiver of sovereign immunity." Id. at 753 (emphasis added). Such statutes of limitation, the Supreme Court observed, "sometimes referred to . . . as “jurisdictional,’" are "more absolute" and may "forbid . . . a court to consider whether certain equitable considerations warrant extending a limitations period." Id. While recognizing that in Irwin the Court had adopted "‘a more general rule” to replace our prior ad hoc approach for determining whether a Government-related statute of limitations is subject to equitable tolling-namely, “that the same rebuttable presumption of equitable tolling applicable to suits against private defendants should also apply to suits against the United States,’” the Court relied upon its prior interpretation of section 2501 as being jurisdictional as one basis upon which to reject equitable tolling of section 2501.

Under the precedent controlling in this Court, see South Corp. v. United States, 690 F.2d 1368, 1370 (Fed. Cir.1982) (en banc), the provision of the CDA, including sections 605(b) and 609(a)(3), constitute jurisdictional limitations upon RNSB’s right to bring an action in this Court. England v. The Swanson Group, Inc., 353 F.3d 1375, 380 (Fed. Cir. 2004) (“strict limits of the CDA” constitute "‘jurisdictional prerequisites to any appeal.’” ) (citation omitted); Milmark Servs., Inc. v. United States, 231 Ct. Cl. 954, 956 (1982) ("It is well established that without such a formal claim and final decision by the contracting officer, there can be no appeal to this court under the CDA. It is a jurisdictional requirement."). Consistent with this general principle that the provisions of the CDA are jurisdic-tional, moreover, section 609(a)(3) specifically has been held to constitute a jurisdictional bar to bringing a untimely appeal of a contracting officer’s decision. Borough of Alpine v. United States, 923 F.2d 170, 172 (Fed . Cir. 1991) (affirming dismissal for lack of jurisdiction upon the basis of 41 U.S.C. § 609(a)(3)); Gregory Lumber Co. v.

United States, 229 Ct. Cl. 762, 763 (1982) ("Congress has set the twelve-months limit [41 U.S.C. § 609(a)(3)], and this court cannot and should not read into it exceptions and tolling provisions Congress did not contemplate or authorize.") ; Hamza v. United States, 36 Fed. Cl. 10, 15 (1996) ("With respect to actions filed under the CDA, Congress has limited th[e government's] waiver [of sovereign immunity] by virtue of the twelve month statute of limitations and only Congress can expand the extent to which consent has been given. Since the statute of limita-tions is a jurisdic-tional requirement, 'the court cannot waive it on grounds of policy or equity.' Accordingly, this court lacks the power to extend the statute of limita-tions beyond the twelve month period authorized by Congress." (quoting Computer Prods. Int'l, Inc. v. United States, 26 Cl. Ct. 518, 528 (1992))).

Given the controlling interpretation of the CDA's limitations provisions as being jurisdic-tional, RNSB's reliance upon the holdings in American Pipe & Construction Co. v. Utah, 414 U.S. 538 (1974), and Crown, Cork & Seal Co. v. Parker, 462 U.S. 345(1983), as suspending the running of 41 U.S.C. § 609(a)(3), is misplaced. Both decision rest upon the Court's reading of Federal Rule of Civil procedure as impliedly waiving application of the statute of limitations as to private parties. See Stone Container Corp. v. United States, 229 F.3d 1345, 1354 (Fed. Cir. 2000) (discussing the basis for the holdings in American Pipe & Construction Co. and Crown, Cork & Seal Co. ). American Pipe & Construction Co. and Crown, Cork & Seal Co. address an implied waiver of the statute of limitations as to private parties and do not address the proper reading of express limitations upon waivers of sovereign immunity, such as subsections 605(b) and 609(a)(3), addressed by the Court in John R. Sand & Gravel Co.

In contrast to private parties found subject to the tolling of the running of the limitations periods in American Pipe & Construction Co. and Crown, Cork & Seal Co. , "[t]he United States, as sovereign, is immune from suit save as it consents to be sued, and the terms of its consent to be sued in any court define that court's jurisdiction to entertain the suit." United States v. Sherwood, 312 U.S. 584, 586 (1941) (citations omitted). A waiver of sovereign immunity "cannot be implied but must be unequivocally expressed" by Congress. United States v. King, 395 U.S. 1, 4 (1969). Congressional consent to suit in this Court, thereby waiving the Government's traditional immunity, must be explicit and strictly construed. Library of Congress v. Shaw, 478 U.S. 310, 318-19 (1986); United States v. Mitchell, 445 U.S. 535, 538 (1980); Fidelity Constr. Co. v. United States, 700 F.2d 1379, 1383 (Fed. Cir. 1983). A waiver of sovereign immunity, therefore, cannot be implied waived as the Court did in American Pipe & Construction Co. and Crown, Cork & Seal Co. for private parties, but must be expressed unequivocally by Congress. See United States v. Testan, 424 U.S. at 399; United States v. King, 395 U.S. 1, 4 (1969). Rule 23, Federal Rule of Civil Procedure, governing class actions in the district court, does not explicitly waive or toll the running of the limitations period of section 609(a)(3) , and, for that reason cannot expanded the CDA’s defined and limited waiver of sovereign immunity.

Upon examination, the decision in Stone Container Corp. v. United States, 229 F.3d 1345, 1354 (Fed. Cir. 2000), upon which RNSB relies, does not support RNSB’s argument for tolling of subsection 609(a)(3). Stone Container Corp. addressed a specific question: whether a plaintiff in the United States Court of International Trade could rely upon tolling of the statute of limitations in that court while the question of certification of a class action in which the plaintiff was a putative class member was pending in that same court. The court held that the running of

the specific applicable statute of limitations, 28 U.S.C. 2636(i), was tolled pending that court's decision on class certification. Notably, the court did not rely upon application of a general principle of tolling in the case of pending class actions certification, following American Pipe & Construction Co. and Crown, Cork & Seal Co. The court rather held that the statute providing for the filing of a complaint in the Court of International Trade in accordance with the rules of that court, 28 U.S.C. 2636(i), explicitly provided for tolling of the limitations period pending a decision upon certification of a class. 229 F.3d at 1354 ("But here the statute of limitations itself incorporates the rules of the Court of International Trade: an action under 28 U.S.C. § 1581(i) "is barred unless commenced *in accordance with the rules of the court* within two years after the cause of action first accrues. 28 U.S.C. 2636(i)").

The holding in Stone Container, based upon 28 U.S.C. 2636(i), thus, has no bearing upon the question of the tolling of the running of subsection 609(a)(3), an express limitation upon the CDA's limited waiver of sovereign immunity. The provisions of the CDA, including subsections 605(b) and 609(a)(3), constitute a limited waiver of sovereign and are accordingly jurisdictional. E.g., England v. The Swanson Group, Inc., 353 F.3d at 1380. RNSB does not contest that it failed to fie an action suit within the time provided by the CDA for the filing of such an action and that section 609(a)(3) read literally bars its claim; RNSB's concession is properly dispositive because any waiver of sovereign immunity must be express. Subsections 605(b) and 609(a)(3) now bar RNSB's appeal of IHS's contracting officer's December 18, 2001 denial of RNSB's FY 1993, 1994, 1995, and 1996 CDA claims.

But even assuming, solely for the sake of argument, that subsection 609(a)(3) was subject to tolling pending the filing of Pueblo of Zuni v. United States, No. 01CV1046 WJ/WPL

(D. N.M.), filed on September 11, 2001, would not have tolled RNSB's right to appeal the December 18, 2001 denial of its claim. Tolling has been recognized solely during the pendency of the question of class certification in the first action addressing a particular substantive claim; courts have rejected tolling upon the basis of pending actions in which new plaintiffs seek to reargue the question of class certification. See In re Vioxx Products Liability Litigation, 478 F. Supp. 2d 897, 907 (E.D. La. 2007) ("Federal courts have uniformly held that the American Pipe rule operates only with respect to the first class action filed for a specific controversy.") (citing cases). See also Yang v. Odom, 392 F.3d 97, 104 (3d Cir. 2004); Basch v. Ground Round, Inc., 139 F.3d 6, 11 (1st Cir. 1998). In Cherokee Nation, filed on March 5, 1999, the Cherokee Tribe sought additional funding for CSC under ISDA contracts and class certification, which certification was denied on February 9, 2001. Cherokee Nation of Oklahoma v. United States, Civil Docket, Case No. 6:99-cv-00092-FHS (E.D. Okla); 199 F.R.D. 357, 366 (E.D. Okla. 2001) (denying class certification). Pueblo of Zuni, thus, was not the first class action to raise the issue of underpayment of CSC. Even a private party would not be entitled to tolling of a limitations period pending a second ruling as to class certification, as occurred here .

## CONCLUSION

For the foregoing reasons, the Court should grant the Government's motion pursuant to Rule 12(b)(1) and dismiss RNSB's complaint for lack of jurisdiction.

Respectfully submitted,

GREGORY G. KATSAS
Acting Assistant Attorney General

OF COUNSEL:

Melissa A. Jamison, Esq.
Senior Attorney
Department of Health and
Human Services

JEANNE E. DAVIDSON
Director

MARK A. MELNICK
Assistant Director

/s/ John. S. Groat
JOHN S. GROAT
Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
Attn: Classification Unit
1100 L Street, N.W.
Washington, D.C. 20530
Tele: (202) 616-8260
Fax: (202) 514-7965
jack.groat@usdoj.gov

Attorneys for Defendant

May 9, 2008

**CERTIFICATE OF FILING**

I hereby certify that on May 9, 2008, a copy of the foregoing DEFENDANT'S REPLY TO PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS was filed electronically. I understand that notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

/s/ John S. Groat