# In the United States Court of Federal Claims

No. 08-19C

(Filed September 18, 2008)

| | | |
|---|---|---|
| * * * * * * * * * * * * * * * | * | Contract Underpayment Claim; |
| RAMAH NAVAJO SCHOOL BOARD, INC., | * | Indian Self-Determination and |
| | * | Education Assistance Act, 25 |
| *Plaintiff*, | * | U.S.C. § 450 *et seq*. (2000); 28 |
| | * | U.S.C. § 1500 (2000); 41 U.S.C. |
| v. | * | §§ 605(a), 605(c)(5), 609(a)(3) |
| | * | (2000); RCFC 12(b)(1); Indirect |
| THE UNITED STATES, | * | Contract Support Costs; Tolling |
| | * | CDA Limitations Period |
| | * | Pending Class Certification in |
| *Defendant*. | * | District Court Suit. |
| * * * * * * * * * * * * * * * | * | |

*Daniel H. MacMeekin*, with whom was *Michael P. Gross*, Washington, D.C., for plaintiff.

*John S. Groat*, United States Department of Justice, with whom were *Gregory G. Katsas*, Acting Assistant Attorney General, *Jeanne E. Davidson*, Director, *Mark A. Melnick*, Assistant Director, Washington, D.C., for defendant. *Melissa A. Jamison*, United States Department of Health and Human Services, Washington, D.C., of counsel.

---

## OPINION

---

**Bush**, *Judge*.

Before the court is defendant's motion to dismiss, based on Rule 12(b)(1) of the Rules of the United States Court of Federal Claims (RCFC). The motion has been fully briefed. Oral argument was neither requested by the parties nor required by the court. For the reasons set forth herein, defendant's motion to dismiss is granted.

## BACKGROUND

### I. The Parties

Plaintiff Ramah Navajo School Board, Inc. (RNSB), is a non-profit corporation located on the Ramah Navajo Reservation in western New Mexico. In the 1970s, RNSB entered into a contract with the United States under the Indian Self-Determination and Education Assistance Act of 1975, Pub. L. No. 93-638, 88 Stat. 2203 (1975) (codified as amended at 25 U.S.C. § 450 *et. seq*. (2000)) (ISDA), to operate the public health programs and facilities of the Pine Hill Health Center. Plaintiff filed suit in this court on January 11, 2008, seeking to recover certain indirect contract support costs for the years 1993-2003 that were allegedly mandated by ISDA.

Congress enacted ISDA on January 4, 1975. ISDA was enacted to allow Indian tribes to enter into contracts with the federal government, and continue the operation of programs and services that were previously the responsibility of the federal government, for the benefit of the Indian tribes. The federal government wished to transfer the responsibility for the management of these programs and services to the Indian people under ISDA:

> The Congress declares its commitment to the maintenance of the Federal Government's unique and continuing relationship with and responsibility to the Indian people through the establishment of a meaningful Indian self-determination policy which will permit an orderly transition from Federal domination of programs for and services to Indians to effective and meaningful participation by the Indian people in the planning, conduct, and administration of those programs and services.

Pub. L. No. 93-638, § 3(b), 88 Stat. at 2204. Under ISDA, the Indian tribes would operate the programs and services through a "self-determination contract" with the federal government. Def.'s Mot. at 3.

In order to provide these health service programs in a more efficient manner, the Indian Health Service (IHS), an agency within the Department of Health and

Human Services, "was established to carry out the responsibilities, authorities, and functions of the United States in providing health care services to Indian and Indian tribes, including Alaska Native Villages." Def.'s Mot. at 3; *see also* Indian Health Care Improvement Act, 25 U.S.C. § 1661(a) (2000). The IHS provides health benefits directly to the Indian tribes, or through self-determination contracts under ISDA. Def.'s Mot. at 3; *see also* 25 U.S.C. § 1680(a) (2000). The United States is a contracting party to every ISDA contract.[1] Compl. ¶ 6; *see also* 25 U.S.C. § 450*l*(c). The Secretary of Health and Human Services (Secretary), through IHS, is responsible for implementing ISDA on behalf of the United States government.

## II. ISDA's Statutory Framework

Under ISDA, the Secretary "is directed, upon the request of any Indian tribe by tribal resolution, to enter into a self-determination contract or contracts with a tribal organization to plan, conduct, and administer programs, or portions thereof . . . ." Compl. ¶ 7; *see also* 25 U.S.C. § 450f(a)(1). The Secretary has ninety days from the date of receipt to approve the proposal or award the contract. Def.'s Mot. at 4; *see also* 25 U.S.C. § 450f(a)(2). If the Secretary decides to reject the proposal, he must provide a written notification to the tribal organization. 25 U.S.C. § 450f(a)(2). A Secretary's denial of a self-determination contract must be explicitly based on the limited reasons provided in the Act. Def.'s Mot. at 4; *see also* 25 U.S.C. § 450(f)(a)(2). A tribal organization, upon notice of the Secretary's refusal, has the right to appeal the Secretary's decision through the administrative process or by initiating action in a federal court. Def.'s Mot. at 4; *see also* 25 U.S.C. § 450f(b).

An ISDA self-determination contractor receives two types of funding. The first type of funding is known as the "Secretarial amount." Compl. ¶ 3. The "Secretarial amount" is the amount of money that the Secretary "would have otherwise provided for the operation of the programs or portions thereof for the

---

[1]/ Section 450*l*(c) provides that every ISDA contract must incorporate the provisions of Title I of ISDA. These provisions are contained in the Act in the form of a model agreement. *See* § 450*l*(c). Section 450*l*(a) provides: "Each self-determination contract entered into under this subchapter shall – (1) contain, or incorporate by reference, the provisions of the model agreement described in subsection (c) of this section (with modifications where indicated and the blanks appropriately filled in) . . . ." 25 U.S.C. § 450*l*(a).

period covered by the contract . . . . " Compl. ¶ 3; *see also* 25 U.S.C. § 450j-1(a)(1). The second type of funding made available to the tribal organization is contract support costs, including indirect contract support costs, the subject of this litigation. Compl. ¶ 3; *see also* 25 U.S.C. § 450j-l(a)(2)-(3). "Indirect contract support costs are the administrative costs and overhead that must be paid so that the contractor can operate the program at the same level at which the United States would have run it."[2] Compl. ¶ 3.

## III. Plaintiff's Allegations

In the present litigation, RNSB contends that defendant failed for eleven years (1993-2003) to pay the full amount of indirect contract support costs in accordance with ISDA. RNSB argues that the statutory provisions are clear and that these indirect contract support costs are mandatory and required in every ISDA contract. For example, RNSB asserts that 25 U.S.C. § 450j-l(a)(2), added by the Indian Self-Determination and Education Assistance Act Amendments of 1988, Pub. L. No. 100-472, 102 Stat. 2285 (1988), mandates "that indirect contract support costs be added to the contract price as a function of the Secretarial amount." Compl. ¶ 9. Section 450j-1(a)(2) provides:

> There *shall be added* to the amount required by paragraph (1) contract support costs which shall consist of an amount for the reasonable costs for activities which must be carried on by a tribal organization as a contractor to ensure compliance with the terms of the contract and prudent management, but which–
> (A) normally are not carried on by the respective Secretary in his direct operation of the program; or

---

[2]/ On October 5, 1988, the Indian Self-Determination and Education Assistance Act Amendments of 1988, Pub. L. No. 100-472, 102 Stat. 2285 (1988), made amendments to ISDA. Compl. ¶ 8. The amendments add a new contracting funding and indirect costs section to the Act. *Id.* The amendments provide that indirect contract support costs would be given to the Indian tribal contractors, in addition to the "secretarial amount." Compl. ¶¶ 8-9. The 1988 amendments also provide that Indian tribal contractors are permitted to pursue contractual remedies under the Contract Disputes Act of 1978, 41 U.S.C. §§ 601–613 (2000) (CDA). *Id.*; *see also* 25 U.S.C. § 450m-1(d).

> (B) are provided by the Secretary in support of the contracted program from resources other than those under contract.

25 U.S.C. § 450j-1(a)(2) (emphasis added). Plaintiff also asserts that § 450j-1(g) requires: "Upon the approval of a self-determination contract, the Secretary shall add to the contract the full amount of funds to which the contractor is entitled under subsection (a) of this section . . . ." Compl. ¶ 10; *see also* 25 U.S.C. § 450j-1(g).

Furthermore, plaintiff asserts that each ISDA self-determination contract has a provision inserted in the contract that states that "the total amount of funds to be paid under this Contract pursuant to section 106(a) [25 U.S.C. § 450j-1(a)] shall be determined in an annual funding agreement entered into between the Secretary and the Contractor, which shall be incorporated into this Contract." Compl. ¶ 11; *see also* 25 U.S.C. § 450*l*(c)(2) (Model Agreement)). Based on ISDA's provisions and related caselaw, *e.g.*, *Cherokee Nation v. Levitt*, 543 U.S. 631 (2005) and *Ferris v. United States*, 27 Ct. Cl. 542, 546 (1892), plaintiff argues that defendant has breached its contract with RNSB by underpaying plaintiff's indirect contract support costs from 1993 through 2003. RNSB refers to the government's failure to pay the claimed indirect costs as its "shortfall claim." Compl. ¶ 17. Plaintiff seeks money damages against the government for the full indirect contract support costs for the years 1993-2003 "in a total amount to be established by proof." *Id*. ¶ 23.

## IV. The *Tunica* Action

Pending in the United States District Court for the District of Columbia is a related case, *Tunica-Biloxi Tribe of Louisiana v. United States*, No. 02-cv-02413-RBW (D.D.C. filed Mar. 12, 2003) (*Tunica*), in which RNSB is a named plaintiff. The *Tunica* case was filed in the district court on March 12, 2003, and therein RNSB alleges that the government miscalculated the indirect contract support costs it is owed under ISDA because of the "flawed method" the government utilized to calculate the contract costs. *Tunica* Compl. ¶ 2. In *Tunica*, plaintiff seeks declaratory and injunctive relief, and money damages.

# DISCUSSION

## I. Jurisdiction

### A. Jurisdiction under the Contract Disputes Act

In the present case, plaintiff relies on the Contract Disputes Act of 1978, 41 U.S.C. §§ 601–613 (2000) (CDA) and 25 U.S.C. § 450m-1(d) as the jurisdictional bases for its suit. Section 450m-1(d) provides that the "Contract Disputes Act . . . shall apply to self-determination contracts. " 25 U.S.C. § 450m-1(d). The Tucker Act provides the court with jurisdiction to entertain contract claims brought under the CDA. *See* 28 U.S.C. § 1491(a)(2) (2000).

### B. Jurisdictional Prerequisites of the Contract Disputes Act and the Relevant Limitations' Periods

For this court to take jurisdiction over such a suit, however, the contractor, as a prerequisite, must have presented a written claim to the contracting officer. *See* 41 U.S.C. § 605(a) ("All claims by a contractor against the government relating to a contract shall be in writing and shall be submitted to the contracting officer for a decision."); *England v. Swanson Group, Inc.*, 353 F.3d 1375, 1379 (Fed. Cir. 2004) ("We have held, based on the statutory provisions [of the CDA], that the jurisdiction over an appeal of a contracting officer's decision is lacking unless the contractor's claim is first presented to the contracting officer and that officer renders a final decision on the claim.") (citing *James M. Ellett Constr. Co. v. United States*, 93 F.3d 1537, 1541-42 (Fed. Cir. 1996)). The contractor must submit the claim to the contracting officer within six years after the accrual of the claim. *See* 41 U.S.C. § 605(a) ("Each claim by a contractor against the government relating to a contract and each claim by the government against a contractor relating to a contract shall be submitted within 6 years after the accrual of the claim."). A contracting officer's failure to issue a final decision within sixty days, or failure to inform the contractor when a decision will be issued "will be deemed to be a decision by the contracting officer denying the claim and will authorize the commencement of the appeal or suit on the claim as otherwise provided in this chapter." 41 U.S.C. § 605(c)(5). The contractor must appeal a contracting officer's final decision to this court within twelve months from the date of the receipt of the decision by the contractor. 41 U.S.C. § 609(a)(3).

## II. Standard of Review for a Motion to Dismiss for Lack of Jurisdiction

In rendering a decision on a motion to dismiss for lack of subject matter jurisdiction pursuant to Rule 12(b)(1), this court must presume all undisputed factual allegations to be true and construe all reasonable inferences in favor of the plaintiff. *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974), *abrogated on other grounds by Harlow v. Fitzgerald*, 457 U.S. 800, 814-15 (1982); *Reynolds v. Army & Air Force Exch. Serv.*, 846 F.2d 746, 747 (Fed. Cir. 1988). However, plaintiff bears the burden of establishing subject matter jurisdiction, *Alder Terrace, Inc. v. United States*, 161 F.3d 1372, 1377 (Fed. Cir. 1998) (citing *McNutt v. Gen. Motors Acceptance Corp. of Ind.*, 298 U.S. 178, 189 (1936)), and must do so by a preponderance of the evidence, *Reynolds*, 846 F.2d at 748. If jurisdiction is found to be lacking, this court must dismiss the action. RCFC 12(h)(3).

## III. Plaintiff's Claims for FY 1995, 1996, 1997, 1998, 1999, 2000, 2001, 2002 and 2003 are Barred by 28 U.S.C. § 1500

Defendant argues that RNSB's claims for FY 1995 through 2003 are barred by 28 U.S.C. § 1500 (2000) because RNSB is a plaintiff in *Tunica*, a related class action. Defendant contends that the claims set forth in *Tunica* are "precisely the same claims that RNSB now asserts in this action, which RNSB now refers to as its 'shortfall claims.'" Def.'s Reply at 6. Defendant asserts that § 1500 applies here because the claims in the two suits arise from the same operative facts, and seek overlapping relief. To support its argument that both claims are based on the same operative facts, the government argues that:

> Just as RNSB alleged in its CDA claims and in *Tunica*, RNSB seeks in this action to recover IHS's alleged underpayments of CSC [contract support costs]. By reference to *Thompson v. Cherokee Nation*, 334 F.3d 1075 (2003), *aff'd*, *Cherokee Nation v. Leavitt*, 543 U.S. 631, 639 (2005), RNSB seeks relief upon the basis of what it alleges were underpayments of the CSC it claims it was entitled to but did not receive due to IHS's belief that IHS had insufficient appropriations. . . . These allegations in *Tunica*, which allegations RNSB does not address in its opposition, establish that RNSB's claim in this action rests on the same underlying facts as do claims RNSB

> asserted in *Tunica*.

Def.'s Reply at 7. The government also asserts that there is an overlap in the relief requested in *Tunica* and the relief in the present case that further warrants dismissal under 25 U.S.C. § 1500:

> Upon examination of the pleadings, there also exists a "meaningful overlap . . . [between] the relief sought in the two actions." RNSB in the district court seeks "Contract Support Costs in such amount as established by the evidence." [In] [t]his action RNSB [seeks] "money damages" upon the basis of alleged "underpayment of indirect costs in the amount to be established by the evidence." In both cases, RNSB seeks additional indirect costs allegedly due upon the basis of 25 U.S.C. § 450j-1(a)(2). The relief RNSB seeks in the two actions, payment of additional CSC in accordance with 25 U.S.C. § 450j-1(a)(2), at the very least overlaps and, in fact, appears on its face to be identical.

Def.'s Mot. at 16-17 (citations omitted). Thus, defendant concludes that there is an overlap both in the underlying facts and in the relief sought in the two actions.

Plaintiff, on the other hand, argues that the "shortfall claim" in this court is separate and distinct from the "miscalculation claim" in the *Tunica* case. RNSB contends that the two actions are not based on the same operative facts and thus, § 1500 is not triggered:

> There is no doubt that the Shortfall Claim and Miscalculation Claim arise out of a single contract. In neither case is the existence of that contract contested. Moreover, each alleges that the Government is obligated by statute to pay full contract support costs. But there the resemblance between the claims ends. Claims involving the same general factual circumstances, but distinct

> material facts do not trigger § 1500.

Pl.'s Opp. at 3. Likewise, RNSB argues that the two actions do not seek the same relief:

> The damages sought by the Shortfall Claim are not the same damages sought by the Miscalculation Claim. They have different causes, are ascertained by different calculations, and do not overlap; they are cumulative. There is no risk of subjecting the Government to double liability. These are not "essentially the same losses."

*Id*. at 8 (footnote and citations omitted). In sum, RNSB concludes that although both actions may arise from the same contract, both actions are based on different facts, and seek different relief. Thus, plaintiff asserts that § 1500 is inapplicable.

The relevant statute provides that:

> The United States Court of Federal Claims shall not have jurisdiction of any claim for or in respect to which the plaintiff or his assignee has pending in any other court any suit or process against the United States . . . .

28 U.S.C. § 1500. The purpose behind § 1500 is to "bar jurisdiction over the claim of a plaintiff who, upon filing, has an action pending in any other court 'for or in respect to' the same claim." *Keene Corp. v. United States*, 508 U.S. 200, 209 (1993). "Thus, section 1500 divests this Court of subject matter jurisdiction when a plaintiff has elected to file the same claim in another court prior to filing suit in this Court." *Cooke v. United States*, 77 Fed. Cl. 173, 176 (2007); *see also Loveladies Harbor, Inc. v. United States*, 27 F.3d 1545, 1550 (Fed. Cir. 1994) (*en banc*) ("'[T]he legislative history and the cases indicate section 1500 was enacted for the benefit of the government and was intended to force an election where both forums could grant the same relief, arising from the same operative facts.'" (quoting *Johns-Manville Corp. v. United States*, 855 F.2d 1556, 1564 (Fed. Cir. 1988))).

In order to determine whether the Court of Federal Claims is precluded by § 1500 from hearing a claim, the court must ascertain whether the claim pending in another court is the "same" as the claim before this court. To make that determination, the court must decide whether the claims in both courts rely on substantially the same operative facts, and whether there is some overlap in the requests for relief. *See Keene*, 508 U.S. at 212 ("[T]he comparison of the two cases for purposes of possible dismissal would turn on whether the plaintiff's other suit was based on substantially the same operative facts as the Court of Claims action, at least if there was some overlap in the relief requested."). This is a broad two-prong test, and the Supreme Court in *Keene* explained that Congress did not intend to narrowly construe § 1500 to solely preclude claims based on identical operative facts, or seeking exactly the same relief:

> That the two actions were based on different legal theories did not matter. *See British American Tobacco, supra*. . . . The decision in *British American Tobacco* strikes us, moreover, as a sensible reading of the statute, for it honors Congress's decision to limit Court of Federal Claims jurisdiction not only as to claims "for . . . which" the plaintiff has sued in another court, but as to those "in respect to which" he has sued elsewhere as well. *While the latter language does not set the limits of claim identity with any precision, it does make it clear that Congress did not intend the statute to be rendered useless by a narrow concept of identity providing a correspondingly liberal opportunity to maintain two suits arising from the same factual foundation.*

*Keene*, 508 U.S. at 212-13 (citing *British Am. Tobacco Co. v. United States*, 89 Ct. Cl. 438 (1939)) (emphasis added). Following *Keene*, this court in *Tohono O'odham Nation v. United States*, 79 Fed. Cl. 645, 656 (2007), *appeal docketed*, No. 2008-5043 (Fed. Cir. Feb. 20, 2008), provided this description of the two-prong test: "In sum, we believe that the inquiry is whether there is meaningful overlap both in the underlying facts and in the relief sought in the two actions. A perfect symmetry of demands for relief is not necessary."

### A. The Supreme Court's Interpretation of 28 U.S.C. § 1500 in *Keene* is Controlling Law

Both parties agree that a comparison between the *Tunica* complaint and the Court of Federal Claims complaint (CFC complaint) is necessary to determine whether plaintiff has alleged the same operative facts and same relief, thus triggering § 1500. *See Keene*, 508 U.S. at 210 (stating that a comparison is required "between the claims raised in the Court of Federal Claims and in the other lawsuit."). Both parties also agree that the comparisons of operative facts and requested relief constitute two separate prongs of the analysis, and that each must be satisfied for § 1500 to bar a suit in this court. The parties disagree, however, as to the degree of overlap required to trigger the jurisdictional bar in § 1500.

Defendant argues that § 1500 bars RNSB's contract claims for the years 1995 through 2003 because the contract claims are based on substantially the same operative facts and seek the same relief as in the *Tunica* case. Defendant relies on the interpretation of section 1500 in *Keene* which provides, as discussed above, that dismissal under § 1500 turns "on whether the plaintiff's other suit was based on *substantially the same* operative facts as the Court of Claims action, at least if there was *some overlap* in the relief requested." *Keene*, 508 U.S. at 212 (emphasis added). Thus, defendant contends that, for § 1500 to apply, the operative facts alleged and the relief sought are not required to be identical.

Plaintiff contends that § 1500 does not apply in the instant action because the RNSB complaint has separate and distinct claims from those alleged in the *Tunica* complaint. Plaintiff, relying on *Loveladies*, asserts that § 1500 would apply if there is a showing that both claims are based on "the *same operative facts*, and that they seek *the same relief*." Pl.'s Opp. at 3 (relying on *Heritage Minerals, Inc. v. United States*, 71 Fed. Cl. 710, 716 (2006), which cites *Loveladies*, 27 F.3d at 1551) (emphasis added). In adopting the *Loveladies* standard, RNSB appears to argue that, for § 1500 to apply, the operative facts and relief sought must be exactly the same, or identical. Plaintiff also asserts that while both claims– the Shortfall claim (CFC complaint) and the Miscalculation claim (*Tunica* complaint) arise from the same contract, the claims involve "distinct material facts" that "do not trigger § 1500." Pl.'s Opp. at 3. (citing *Branch v. United States*, 29 Fed. Cl. 606, 609 (1993) for plaintiff's proposition that "[c]laims involving the same general factual

circumstances, but distinct material facts can fail to trigger section 1500").

The court agrees with defendant that the Supreme Court's interpretation of § 1500 in *Keene* is the controlling precedent. Plaintiff's reliance on *Loveladies* suggests that RNSB believes that *Loveladies* sets forth a different standard from *Keene*, and that is not the case. *See* Pl.'s Opp. at 3 (citing to the *Loveladies* two-prong test without reference to *Keene*). The Federal Circuit in *Loveladies* never endeavored to overrule the Supreme Court decision in *Keene,* but rather established that the Federal Circuit is governed by the two-prong test enunciated in *Keene*. *See Fire-Trol Holdings, LLC v. United States*, 65 Fed. Cl. 32, 34 (2005) (referring to *Loveladies* as "the Federal Circuit's explication of *Keene* which developed it into a two prong test"); *see also Ak-Chin Indian Cmty. v. United States*, 80 Fed. Cl. 305, 315-16 (2008) (reconciling statements of the law in *Keene* and *Loveladies* by incorporating the phrasing and principles announced in each decision); *Tohono O'odham*, 79 Fed. Cl. at 656 (reconciling *Keene* and *Loveladies* in a similar fashion, because "[t]hat reading of *Loveladies* is, in any event, compelled by the controlling language of *Keene*").

Recently, this court in *Passamaquoddy Tribe v. United States*, 82 Fed. Cl. 256 (2008), *appeal docketed*, No. 2008-5110 (Fed. Cir. Aug. 15, 2008), discussed at length how *Loveladies* did not change or modify the two-prong test established in *Keene*. The *Passamaquoddy* court "conclude[d] that the descriptive term, 'the same operative facts,' used in *Loveladies*, encompasses the less narrow descriptive term, 'substantially the same operative facts,' that was given in *Keene*." 82 Fed. Cl. at 282. The *Passamaquoddy* court also concluded that when the Federal Circuit in *Loveladies* utilized the term "same relief," the court of appeals "instruct[ed] that § 1500 may apply when the requests for relief are not distinctly different in their nature, and there is some overlap in the requests for relief." 82 Fed. Cl. at 283 (citing *Ak-Chin*, 80 Fed. Cl. at 316; *Tohono O'odham*, 79 Fed. Cl. at 656). Based on the foregoing, the Supreme Court's interpretation of § 1500 in *Keene*, as further explicated by *Loveladies*, provides the controlling law in this action. Section 1500 applies when the pending claim in another court is based on substantially the same operative facts, and the requests for relief contain some overlap and are not distinctly different. *See Keene*, 508 U.S. at 212; *Loveladies*, 27 F.3d at 1554.

**B. Claims Based on Substantially the Same Operative Facts**

To determine whether the claims in the two cases are based upon substantially the same operative facts, the court must engage in a "comparison between the claims raised in the Court of Federal Claims and in the other lawsuit." *Keene*, 508 U.S. at 210. "Claims are the same where they arise from the same operative facts even if the operative facts support different legal theories which cannot all be brought in one court." *Johns-Mansville Corp.*, 855 F.2d at 1567; *see also British American Tobacco*, 89 Ct. Cl. at 440 ("We think it is clear that the word 'claim,' as used in [the predecessor of § 1500], has no reference to the legal theory upon which a claimant seeks to enforce his demand . . . . "). Accordingly, the court will review the complaints in both lawsuits to determine whether RNSB's claims are based on substantially the same operative facts, as opposed to the same legal theories.

In the instant case, defendant asserts that RNSB is ultimately suing the government in the district court action and in the CFC action for the same claim: the government's failure to pay plaintiff the full indirect contract support costs required to be paid under 25 U.S.C. § 450 *et. seq*. (ISDA) and the ISDA contract. Defendant contends that even though RNSB in this action has not specifically alleged the operative facts that support its shortfall claim, plaintiff's citation to *Thompson v. Cherokee Nation*, 334 F.3d 1075 (2003), and *Cherokee Nation v. Leavitt*, 543 U.S. 631 (2005), is sufficient to establish the "relevant operative facts for this Court to decide this motion." Def.'s Mot. at 16. Defendant concludes that "[t]his suit and *Tunica* thus both turn upon the specific terms of IHS's obligation to pay RNSB additional CSC [contract support costs], and thus arise under the same operative facts." Def.'s Reply at 8.

In rebuttal, plaintiff argues that the *Tunica* action and the present action are not based on the same operative facts. Pl.'s Opp. at 3. Plaintiff argues that both suits are based on the same contract, but they involve different material facts. Plaintiff asserts that the miscalculation claim in the *Tunica* case relies on different operative facts and requires "different parties and different proofs." *Id*. at 4. Plaintiff explains that the miscalculation claim focuses solely on flawed methods that the Department of Interior and its Office of the Inspector General (OIG) use to determine the rates that establish the indirect cost component of the contract price. *Id*. at 5. The shortfall claim, on the other hand, "focuses solely on whether the Department of Health and Human Services has paid the ostensible contract price,

calculated according to 25 U.S.C. §[] 450j-1(a)(1),(2), and (g), and accepts without question the indirect cost rates made applicable by the Department's policies." *Id.* at 7 (citation omitted). Plaintiff further asserts that the shortfall claim does not "question the conduct of Office of the Inspector General officials in calculating indirect cost rates, and in determining which programs may be included in the direct cost base or how over– and under– recoveries are carried forward into future rate calculations, the facts upon which the *Tunica* case rests." *Id.* Thus, plaintiff contends that both claims are based on different material facts, and resolution of the shortfall claim would not necessarily resolve the miscalculation claim.

The court's reading of the *Tunica* complaint and the CFC complaint, however, results in its determination that both suits are based on substantially the same operative facts. The court has identified two bases that support defendant's contention that both claims are based on the same operative facts. First, a comparison of the complaints reveals that both lawsuits arise from the same contract and are subject to the same statutory framework. Compl. ¶¶ 7-12; *Tunica* Compl. ¶¶ 14-19. The contract is governed by the Indian Self-Determination and Education Assistance Act, in particular, 25 U.S.C. §§ 450f(a)(1), 450j-1(a)(2), 450j-1(b), 450j-1(g), and 450*l*(c). RNSB describes the statutory scheme in paragraphs 7–12 of the CFC complaint, which are identical to paragraphs 14–19 of the *Tunica* complaint. Second, RNSB alleges in both complaints that the government has miscalculated and underpaid the indirect contract support costs. Compl. ¶¶ 14-18; *Tunica* Compl. ¶¶ 20-25. The *Tunica* complaint gives a more detailed description of the alleged miscalculation of indirect costs and styles that suit as the "miscalculation claim." The CFC complaint, on the other hand, briefly refers to the miscalculation claim in passing, ostensibly so as to not distract attention from the shortfall claim. *See* Compl. ¶ 17 (stating that "[t]his lawsuit concerns *only* the second way in which Defendant has underpaid indirect costs to RNSB: . . . 'the shortfall claim'") (emphasis added). However, notwithstanding plaintiff's efforts to distinguish between the two, the court finds that the miscalculation claim and the shortfall claim describe the same overall underpinning of plaintiff's assertion that the government incorrectly underpaid indirect costs claimed by RNSB under the disputed contract.

As previously stated, RNSB does not allege specific operative facts to support its shortfall claim before this court. Instead plaintiff avoids the discussion

of these operative facts by relying on the *Thompson* decision as the basis for its shortfall claim. In *Thompson*, the issue presented was "whether the Secretary breached his funding agreements with the appellee for the fiscal years 1994, 1995, and 1996, by failing to pay full indirect contract support costs." *Thompson*, 334 F.3d at 1084. Because the claim asserted in *Thompson* was based on unpaid indirect contract costs, the facts surrounding both claims are necessarily those proffered to attempt to prove the government's failure to pay full indirect contract support costs.

Likewise, in the district court, RNSB is also seeking the unpaid indirect contract support costs from the government for the years prior to 1998, and the years after 1998. In the *Tunica* action, RNSB alleges that "[e]ach member of this class is experiencing shortfalls in reimbursement of Indirect Contract Support Costs in the same manner as Plaintiffs." *Tunica* Compl. ¶ 29; *compare* Compl. ¶¶ 1, 3, 16-18. RNSB also alleges each member of the class is owed indirect contract support costs as required by 25 U.S.C. § 450*l*(c):

> In particular, the representative Plaintiffs have been damaged in the same way or manner as the other members of the class, although the exact amounts of unreimbursed Indirect Contract Support Costs to which each member of the class is entitled vary. The defendant United States' obligation to each member of the class regarding calculation of indirect cost rates are identical, as they must conform to the Model Contract required by the ISDA, as amended, 25 U.S.C. § 450*l*(c).

*Tunica* Compl. ¶ 30.

> Plaintiff may have characterized the *Tunica* claim as a miscalculation claim, and the CFC claim as a shortfall claim, but they both arise under substantially the same operative facts. The facts necessary to determine plaintiff's breach of contract claim in the CFC action are the same facts needed in the district court action. A

> review of the key allegations of fact related to breaches of contract in both suits reveals that each suit must examine the same evidence. *See, e.g.*, *Tohono O'odham*, 79 Fed. Cl. at 656 (summarily rejecting plaintiff's arguments that the two suits depended on different operative facts and holding, after a thorough review of both complaints, that "there can be no meaningful dispute . . . [because] [t]he underlying facts are the same").

Plaintiff employs different legal theories (miscalculation claim versus shortfall claim) to pursue the same monetary goal for the same time period. However, as the Court of Claims held in *British American Tobacco*, a court must focus not on the legal theories underlying the claim in each court, but on the "sameness" of the claim:

> A recital of the operative facts relied upon by a claimant does not state two separate and distinct causes of action merely because such facts may set up a liability both in tort and contract. The terms "conversion" used in the suit in the District Court and "taking of property without just compensation" in the suit in this court were obviously used by plaintiff for the purpose of attempting to adapt the single claim to the jurisdiction of the different courts in which the claim was being urged, but the use of these terms does not obscure the unity or sameness of the claim. We think it is clear that the word "claim," as used in [the predecessor of § 1500], has no reference to the legal theory upon which a claimant seeks to enforce his demand . . . .

89 Ct. Cl. at 440. Here, it is of no consequence that plaintiff styles its suits to focus on different legal theories, when the proof of each claim (miscalculation claim or shortfall claim) will necessarily require review of substantially the same facts. Thus, substantially the same operative facts govern both the *Tunica* action and the CFC action.

### C. Some Overlap in the Relief Requested from Each Court that is Not Distinctly Different

The second prong under *Keene* focuses on whether RNSB's complaints contain "some overlap" in the relief requested, *see Keene*, 508 U.S. at 212, or whether the relief in each complaint is "distinctly different," *see Loveladies*, 27 F.3d at 1549. Defendant argues that the relief requested in the *Tunica* complaint overlaps with the relief requested in this action so as to warrant dismissal of the CFC action pursuant to 28 U.S.C. § 1500. In its reply brief, defendant asserts that:

> In *Tunica*, RNSB alleges that IHS did not properly calculate the full amount of CSC to which RNSB is entitled under its ISDA contracts and did not pay the full amount RNSB alleges that it is entitled to be paid. In this case, RNSB omits the allegation that IHS improperly calculated the amount RNSB is entitled [to] under its ISDA contracts, but contends that IHS did not pay RNSB the amount IHS calculated RNSB was due under its ISDA contracts. Although RNSB raises an additional claim in *Tunica*, RNSB's contention that IHS was required to pay RNSB a particular amount of additional CSC establishes an overlap in the relief RNSB requests in *Tunica* and in this action.

Def.'s Reply at 9. Plaintiff continues to insist that both complaints involve wholly different claims, and that the damages sought in the *Tunica* action are not the same as the damages sought in this action. In the present action, RNSB's requested relief is referenced by this summary paragraph in the complaint: "Defendant breached its statutory and contractual obligations to pay RNSB its full indirect costs for the years 1993-2003 in a total amount to be established by proof." Compl. ¶ 23. The prayer for relief asks that "money damages be awarded against Defendant United States for underpayment of indirect costs in the amount to be established by the evidence . . . ." *Id.* at 7.

In the district court, RNSB seeks the same money damages as in the CFC action, as well as declaratory and injunctive relief, requesting:

> B. That money damages be awarded against the Defendant United States for underpayment of Indirect Contract Support Costs in such amount as established by the evidence [and]
>
> C. That the Court adjudge the methods employed by the Defendants for computing and paying each class member['s] entitlement to Indirect Contract Support Costs to be in violation of the governing statutes and in breach of contract and issue an injunction accordingly.

*Tunica* Compl. at 15. Although RNSB requests declaratory and injunctive relief in the *Tunica* complaint, § 1500 remains applicable because plaintiff requested money damages for substantially the same claims in both actions. As the Federal Circuit has stated:

> The inclusion of other and different requested relief in the two complaints does not avoid the application of [§ 1500]. As long as the same relief is sought in both cases-here money damages-the second prong of the § 1500 requirement that the 'same relief' be involved in both cases is satisfied.

*Harbuck v. United States*, 378 F.3d 1324, 1329 (Fed. Cir. 2004) (citing *Keene*, 508 U.S. at 212; *Loveladies*, 27 F.3d at 1551, 1556; *Johns-Manville*, 855 F.2d at 1566).

In the present action, RNSB seeks money damages "against Defendant United States for underpayment of indirect costs in the amount to be established by the evidence." Compl. at 7. This is, in all pertinent respects, the same money, for overlapping periods of time, for breaches of contract by the United States, as was requested in the suit in the district court. The court finds that the *Tunica* complaint

and the CFC complaint seek overlapping relief which is not distinctly different, and that the "same relief" prong of the § 1500 analysis is satisfied. Accordingly, § 1500 bars plaintiff's contract claims for FY 1995, 1996, 1997, 1998, 1999, 2000, 2001, 2002, and 2003 because these contract claims are pending in the district court.

## IV. This Court Lacks Jurisdiction Pursuant to 41 U.S.C. § 605(a) to Entertain Plaintiff's Contract Claim for FY 1997

Defendant argues that the court also lacks jurisdiction to entertain plaintiff's 1997 claim because RNSB failed to properly submit its 1997 claim for indirect contract support costs to the contracting officer as required under 41 U.S.C. § 605(a). Defendant asserts that a contractor's proper and timely submission of a claim to the contracting officer pursuant to § 605(a) is a jurisdictional prerequisite for a suit in the Court of Federal Claims. Defendant is correct that the CDA bars plaintiff's 1997 claim before this court.

Plaintiff concedes that it did not submit its 1997 claim to the contracting officer for a final decision within six years of its accrual. Plaintiff acknowledges that the 1997 claim "would have been required to be" submitted to the contracting officer by December 31, 2003, pursuant to § 605(a), six years after the end of 1997, when this claim accrued. Pl.'s Opp. at 14. However, RNSB argues that it purposely did not file the 1997 claim by December 31, 2003 because "on September 11, 2001, the putative class action in *Pueblo of Zuni v. United States* was pending. The claims asserted on behalf of the class in that case included RNSB's 1997 claim for unpaid contract support costs."[3] *Id*. RNSB argues that § 605(a) was thus tolled pending the class action determination of *Pueblo of Zuni v. United States*, No. 01-cv-01046-WJ-WPL (D.N.M. filed on Sep. 11, 2001), under the rule of *American Pipe & Constr. Co. v. Utah*, 414 U.S. 538 (1974) (*American Pipe*) and *Crown, Cork*

---

[3]/ RNSB asserts that it is a member of the class in the *Pueblo of Zuni v. United States*, No. 01-cv-01046-WJ-WPL (D. N. M. filed on Sep. 11, 2001), class action. According to plaintiff, the *Pueblo of Zuni* complaint defines members of the class as "'all tribes and tribal organizations contracting with the ISDA between the years 1993 to the present.'" Pl.'s Opp. at 11–12 (quoting Pl.'s App. at A-48, A-70 ¶ 53).

*& Seal Co. v. Parker*, 462 U.S. 345 (1983) (*Crown, Cork & Seal*).[4] RNSB, relying on *American Pipe*, asserts that its 1997 claim was not untimely because the 1997 claim was submitted to the contracting officer on "August 22, 2007, three months into the 28 months remaining in the statutory period after the denial of class certification in *Pueblo of Zuni*." Pl.'s Opp. at 18.

Defendant agrees that the 1997 claim "accrued not later than the end of FY 1997" and that RNSB submitted the claim to the contracting officer much more than six years later – on August 23, 2007. Def.'s Reply at 12. Defendant contends, however, that this violation of the six-year claim submission requirement of § 605(a) deprives this court of jurisdiction to consider plaintiff's 1997 claim. The court agrees with defendant, and disagrees with plaintiff that *American Pipe* is applicable to these facts.

Section 605(a) provides, in pertinent part:

> All claims by a contractor against the government relating to a contract shall be in writing and shall be submitted to the contracting officer for a decision. All claims by the government against a contractor relating to a contract shall be the subject of a decision by the contracting officer. Each claim by a contractor against the government relating to a contract and each claim by the government against a contractor relating to a contract shall be submitted within 6 years after the accrual of the claim.

---

[4]/ The rule in *American Pipe & Constr. Co. v. Utah*, 414 U.S. 538 (1974), provides: "We are convinced that the rule most consistent with federal class action procedure must be that the commencement of a class action suspends the applicable statute of limitations as to all asserted members of the class who would have been parties had the suit been permitted to continue as a class action." 414 U.S. at 554. In *Crown, Cork & Seal Co. v. Parker*, 462 U.S. 345 (1983), the Supreme Court extended *American Pipe* as follows: "Once the statute of limitations has been tolled, it remains tolled for all members of the putative class until class certification is denied. At that point, class members may choose to file their own suits or to intervene as plaintiffs in the pending action." 462 U.S. at 354.

41 U.S.C. § 605(a). Section 605(a) is strictly construed, and is a jurisdictional prerequisite to any appeal in this court. *See Sharman Co. v. United States*, 2 F.3d 1564, 1568 (Fed. Cir. 1993) ("Under the CDA, a final decision by the contracting officer on a claim, whether asserted by the contractor or the government, is a 'jurisdictional prerequisite' to further legal action thereon.") (footnotes omitted), *overruled on other grounds by Reflectone, Inc. v. Dalton*, 60 F.3d 1572 (Fed. Cir. 1995). "[J]urisdiction over an appeal of a contracting officer's decision is lacking unless the contractor's claim is first presented to the contracting officer and that officer renders a final decision on the claim." *England v. Swanson Group*, 353 F.3d 1375, 1379 (Fed. Cir. 2004) (citing *James M. Ellett Constr. Co.*, 93 F.3d at 1541-42)); *see also Mendenhall v. United States*, 20 Cl. Ct. 78, 82 (1990) (stating that the contractor's submission of a written claim to the contracting officer pursuant to § 605(a) is one of the jurisdictional prerequisites for suit in the Court of Federal Claims).

In addition to the presentment requirement, § 605(a) now requires that a CDA claim be timely submitted to the contracting officer within six years after the accrual of the claim.[5] Here, RNSB did not submit the 1997 claim to the contracting

---

[5]/ On October 13, 1994, § 605(a) was amended by the Federal Acquisition Streamlining Act of 1994, Pub. L. No. 103-355, § 2351(a), 108 Stat. 3243, 3322 (1994), which mandated that all claims to the contracting officer must be submitted within six years after accrual of the claim. On September 18, 1995, the Office of Federal Procurement Policy issued a regulation, 48 C.F.R. § 33.206(b), which provided that the six-year limitations period "shall not apply to contracts awarded prior to October 1, 1995 . . . . " *See* 60 Fed. Reg. 48,224, 48,230 (Sep. 18, 1995); *see also Motorola, Inc. v. West*, 125 F.3d 1470, 1473 (Fed. Cir. 1997). Neither party alleges that this contract is not subject to revised § 605(a), and plaintiff consistently argues that the six-year period is applicable to its 1997 claim.

Paragraph 12 of the complaint states that the parties have to enter into an annual funding agreement for the "full amount of the contract support costs, including indirect costs, reasonably necessary to operate the contracted program or programs." Compl. ¶ 12. Paragraph 12 of the complaint reads in relevant part as follows:

> The purpose of these provisions is to ensure that contractors have resources necessary to operate contracted programs at the same level as the United States, through the Secretary, would have operated or did operate them. 25 U.S.C. §§ 450f(a)(1), 450j-1(a), and 450j-1(g) provide contract authority under which the Secretary

(continued...)

officer within the six-year window set forth in § 605(a). RNSB's claim accrued no later than the end of 1997. RNSB had until December 2003 to submit the 1997 claim to the contracting officer. Instead, plaintiff submitted the 1997 claim on August 23, 2007.

The submission of a claim to the contracting officer is a jurisdictional prerequisite under the CDA, under longstanding precedent in this circuit. *See supra*. Plaintiff's argument for tolling the CDA's six-year claims submission period, relying on *American Pipe*, has been rejected in at least five ISDA cases. *See, e.g.*, *Menominee Indian Tribe of Wis. v. United States*, 539 F. Supp. 2d 152, 154 (D.D.C. 2008) ("Because federal court jurisdiction cannot attach until there has been administrative presentment, tolling does not apply.") (citing *NuFarm America's, Inc. v. United States*, 398 F. Supp. 2d 1338, 1353-54 (CIT 2005)); *Metlakata Indian Cmty. v. Dep't of Health and Human Servs.*, CBCA No. 280-ISDA (July 28, 2008) ("We cannot suspend the running of the six-year time limit any more than we could suspend the requirements, also found in section 605, that a claim must be submitted to the contracting officer, that a claim must be submitted in

---

[5](...continued)

> is obliged on behalf of the United States as the contracting party to enter into a binding contractual agreement on an annual basis for the full amount of the contract support costs, including indirect costs, reasonably necessary to operate the contracted program or programs.

Compl. ¶ 12; *see also id.* ¶ 15 ("RNSB has a mature contract under which annual funding agreements are negotiated pursuant to the Model Agreement set forth in ISDA, 25 U.S.C. § 450*l* (c). Under the Model Agreement and the governing statute, 25 U.S.C. §[] 450j-1(a)(2),(3),(5) and 1(g), the contract price in each annual funding agreement must include contract support costs, including indirect contract support costs."). From the above facts alleged by plaintiff, the 1997 claim arises from the annual agreement that was entered into sometime in 1997. Plaintiff bears the burden of establishing jurisdiction, and has not alleged or shown that this contract is not subject to revised § 605(a).

Plaintiff bears the burden of establishing subject matter jurisdiction by a preponderance of the evidence. *Reynolds*, 846 F.2d at 748. Based on the facts alleged by plaintiff, the annual funding agreement was entered into after October 1, 1995 and the 1997 claim is subject to the six-year window for claims submissions found in revised § 605(a). If some other operative date could be argued for this contract, plaintiff bore the burden of alleging facts to support such an argument, and failed to meet this burden.

writing, and that a claim in excess of $100,000 must be certified."). Plaintiff cites to several decisions in support of its contention that *American Pipe* may toll the statutory period for the submission of an administrative appeal. Pl.'s Opp. at 14-15. However, none of these authorities are based on the CDA, but depend rather on different statutory schemes. The court is not persuaded that the tolling sometimes provided by the rule in *American Pipe* should and may be extended to the strict jurisdictional prerequisite found in § 605(a), a provision which directs a contractor to submit a CDA claim to the contracting officer within six years of its accrual.[6] Based on the foregoing, the court lacks jurisdiction to entertain a claim that was submitted to the contracting officer beyond the six-year time limit. Accordingly, RNSB's 1997 claim is time-barred under 41 U.S.C. § 605(a).

Defendant contends that plaintiff's claim for FY 1997, submitted to the contracting officer on August 23, 2007, fails to provide this court with jurisdiction for another reason, in addition to the timeliness problem.[7] According to defendant,

---

[6]/ Tolling of the CDA's six year claims submission period, under *American Pipe*, is even less conceivable when the filing of the class action suit argued to trigger the tolling is in a United States district court, a court which very specifically does not have CDA jurisdiction. *See* 28 U.S.C. § 1346(a)(2) (2000). The court believes that the rule in *American Pipe* is designed to preserve the rights of individual plaintiffs while a court is considering the certification of a class in a suit presenting claims within that court's jurisdiction. At least two federal courts of appeal have refused *American Pipe* tolling where the second suit is for claims which could not have been or were not brought in the initial class action suit. *See Raie v. Cheminova, Inc.*, 336 F.3d 1278, 1283 (11th Cir. 2003) (denying *American Pipe* tolling for a wrongful death suit because wrongful death claims were not included in a prior product liability class action suit); *Weston v. AmeriBank*, 265 F.3d 366, 368 (6th Cir. 2001) ("Under *American Pipe*, the statute of limitations for putative class members of the original class is tolled only for substantive claims that were raised, or could have been raised, in the initial complaint."). Other courts have similarly declined to extend *American Pipe*. *See Lindner Dividend Fund, Inc. v. Ernst & Young*, 880 F. Supp. 49, 54 (D. Mass. 1995) (noting that "class action tolling applies only to complaints that assert the same causes of action as the original claim") (citations omitted); *Cunningham v. Ins. Co. of N. Am.*, 515 Pa. 486, 495 (1987) (holding that a statute of limitations was not tolled because the class action filing was "patently non-justiciable"). These authorities provide additional support for the court's decision not to extend *American Pipe* tolling in the circumstances of this case.

[7]/ Plaintiff relies on the fact that the contracting officer never issued a decision on its 1997 claim, and that this "deemed denial," under 41 U.S.C. § 605(c)(5), gives this court (continued...)

the court lacks jurisdiction to entertain plaintiff's 1997 claim because that claim is already pending before the district court in the *Tunica* action. To support its contention, the government relies on *Sharman* for the proposition that "[o]nce a claim is in litigation, the Department of Justice gains exclusive authority to act in the pending litigation. That exclusive authority divests the contracting officer of his authority to issue a final decision on the claim." 2 F.3d at 1571 (citations omitted). Thus, defendant concludes that since the contracting officer did not have authority to issue a decision on RNSB's August 23, 2007 claim for additional 1997 contract support costs, plaintiff's 1997 claim "cannnot be deemed as having been denied, so as to permit RNSB to appeal that deemed denial to this Court." Def.'s Reply at 11 (citations omitted).

Although defendant's argument is superficially attractive, the court is reluctant to apply the *Sharman* rule to these facts. *Sharman* has typically been applied in situations where the filing of a CDA suit in this court (a forum possessing CDA jurisdiction) has presented a question of whether a contracting officer continues to have decision-making authority over a particular CDA claim, one that may or may not have been included in the initial litigation in this court. *See, e.g., Case, Inc. v. United States*, 88 F.3d 1004, 1010 (Fed. Cir. 1996) (distinguishing *Sharman* because the claim submitted to the contracting officer after litigation in

---

[7](...continued)
jurisdiction. 41 U.S.C. § 605(c)(5) provides:

> Any failure by the contracting officer to issue a decision on a contract claim within the period required will be deemed to be a decision by the contracting officer denying the claim and will authorize the commencement of the appeal or suit on the claim as otherwise provided in this chapter.

41 U.S.C. § 605(c)(5); s*ee Case, Inc. v. United States*, 88 F.3d 1004, 1008-09 (Fed. Cir. 1996) ("A CDA action may be brought in the Court of Federal Claims or before a board of contract appeals only if . . . the contracting officer has failed to issue a final decision on the contractor's claim or to notify the contractor of the time within which a decision will be issued, and at least 60 days have passed since the date the claim was submitted for a decision. In [this] case, the claim is 'deemed denied.'") (citations omitted); *see also Metric Constr. Co. v. United States*, 81 Fed. Cl. 804, 817 (2008) (holding that because "the contracting officer did not issue a final decision on Metric's claim within the time required by the CDA," the claim was deemed denied under 41 U.S.C. § 605(c)(5)).

this court had commenced was "separate and distinct" from the claim initially filed in this court); *Roxco, Ltd. v. United States*, 77 Fed. Cl. 138, 149 (Fed. Cl. 2007) (ruling that *Sharman* barred this court's jurisdiction over a particular claim, because the claim was filed here before it was presented to the contracting officer and the contracting officer thus had no authority to issue a "deemed denial" of the claim). In the instant case, plaintiff brought a non-CDA claim in a class action suit in a district court, where no CDA jurisdiction exists,[8] then submitted a CDA claim to the contracting officer, and now brings a CDA suit in this court based on the deemed denial of its CDA claim. The court is unwilling to extend the rule in *Sharman* to these circumstances, and relies instead on defendant's stronger arguments, discussed *supra*.

## V. Plaintiff's Appeal of the Contracting Officer's December 18, 2001 Denial of its FY 1993, 1994, 1995, and 1996 CDA Claims are Barred by 41 U.S.C. § 609(a)(3)

Finally, the government argues that 41 U.S.C. § 609(a)(3) bars plaintiff's appeal of the contracting officer's December 18, 2001 denial of its FY 1993, 1994, 1995, and 1996 CDA claims. Section 609(a)(3) provides, in relevant part: "Any action [in the Court of Federal Claims] shall be filed within twelve months from the date of the receipt by the contractor of the decision of the contracting officer concerning the claim . . . ." 41 U.S.C. § 609(a)(3). Defendant argues that RNSB received the contracting officer's final decision on the 1993, 1994, 1995, and 1996 claims on December 18, 2001, and filed this action on January 11, 2008 – much more than one year after receipt of the contracting officer's final decision. Def.'s Mot. at 20.

Plaintiff does not contest the government's argument that this action was filed more than one year after receipt of the contracting officer's final decision on December 18, 2001. Pl.'s Opp. at 11. However, plaintiff again asserts that under the rule of *American Pipe* and *Crown, Cork & Seal*, the limitation period in § 609(a)(3) was tolled pending the class certification motion in the *Pueblo of Zuni* class action:

---

[8]/ *See supra* note 6.

> On December 18, 2001, when the contracting officer denied RNSB' s claims for 1993 through 1996, a lawsuit had already been filed asserting on behalf of a putative class the same claims that RNSB had asserted on its own behalf. That lawsuit, *Pueblo of Zuni v. United States* . . . was filed on September 11, 2001. . . . Under the rule of *American Pipe & Construction Co. v. Utah*, 414 U.S. 538 (1974), the *Pueblo of Zuni* class action under Rule 23 stopped the statute of limitations from running for all claims covered by the representative action. In *Crown, Cork & Seal Co. v. Parker*, 462 U.S. 345 (1983), the Supreme Court extended the tolling rule of *American Pipe* to all members of an asserted class, including those who, like RNSB, subsequently file their own suits. 462 U.S. at 353-54.

Pl.'s Opp. at 11-12. Section 609(a)(3) provides that an action filed in the Court of Federal Claims "shall be filed within twelve months from the date of the receipt by the contractor of the decision of the contracting officer concerning the claim . . . ." 41 U.S.C. § 609(a)(3); *Seaboard Lumber Co. v. United States*, 903 F.2d 1560, 1562 (Fed. Cir. 1990). A contractor's failure to file its appeal within the requisite twelve month period renders the contracting officer's decision "final and conclusive and not subject to review by any forum . . . . " 41 U.S.C. § 605(b). None of the precedents cited by plaintiff suggest that § 609(a)(3) has ever been tolled by the *American Pipe* rule.

To rebut plaintiff's arguments, defendant asserts that RNSB's reliance on *American Pipe* and *Crown, Cork & Seal* to toll the limitations period of § 609(a)(3) is "misplaced." Def.'s Reply at 16. Defendant asserts that § 609(a)(3) is a jurisdictional requirement, and that this court lacks the authority to extend the limitations period beyond twelve months. In addition, defendant argues that *American Pipe* tolling is not available when multiple class actions have been filed for the same claims. Because two class action suits for underpayment of indirect contract support costs under ISDA have been filed, defendant contends that the *Pueblo of Zuni* case, the second class action filed, cannot be used under the precedents interpreting *American Pipe* to toll any statutes of limitations for ISDA

claims such as those presented in the subject matter. The court has considered defendant's arguments and relies more on an additional barrier to jurisdiction in this court.

The CDA has two limitations periods relevant here. One limitations period states that all claims must be filed within twelve months of the contracting officer's final decision. *See* 41 U.S.C. § 609(a)(3). The other limitations period states that the contracting officer has sixty days within which to respond to a claim. *See* 41 U.S.C. § 605(c); *see also Case, Inc.*, 88 F.3d at 1009 (noting that unless the contractor has received a final decision from the contracting officer, jurisdiction does not attach for a CDA claim until "at least 60 days have passed since the date the claim was submitted for a decision") (citations omitted); *Mendenhall*, 20 Cl. Ct. at 84 (stating that a contracting officer has a "minimum of 60 days within which to respond to a claim, and, therefore, there can be no 'deemed' decision prior to 60 days from the date of the claim"). Therefore, a CDA suit cannot be commenced until at least sixty days after submission of a CDA claim to the contracting officer.

RNSB's 1993-1996 CDA claims were submitted on August 31, 2001 to the contracting officer. *Pueblo of Zuni*, the class action suit which plaintiff argues should toll § 609(a)(3), was filed on September 11, 2001 – within the sixty day period that the CDA provides the contracting officer for the consideration of RNSB's claim. Because the class action filing in *Pueblo of Zuni* was not timely under the CDA as to RNSB's claims, it cannot act to preserve plaintiff's right to appeal the contracting officer's denial of plaintiff's claims filed on August 31, 2001.[9] Thus, even if, *arguendo*, *American Pipe* tolling, as sanctioned by *Stone Container Corp. v. United States*, 229 F.3d 1345 (Fed. Cir. 2000), *cert. denied sub nom. Smurfit-Stone Container Corp. v. United States*, 532 U.S. 971 (2001), were to apply to § 609(a)(3) in an appropriate case, here the September 11, 2001 class action filing was not timely under the CDA. An untimely class action suit cannot be used to toll a statute of limitations. *See Weston v. AmeriBank*, 265 F.3d 366, 369 (6th Cir. 2001) (holding that an individual plaintiff could not benefit from *American Pipe* tolling because her claims were time-barred even as of the date of the initial

---

[9]/ As discussed previously, the court also doubts that the rule in *American Pipe* could apply where the class action suit being urged as a justification for tolling a time limit for a CDA claim was filed in a court lacking CDA jurisdiction. *See supra* note 6.

class action litigation). Accordingly, the court finds that § 609(a)(3) bars the appeal of plaintiff's FY 1993, 1994, 1995, and 1996 CDA claims in this action.

## CONCLUSION

For the foregoing reasons, it is hereby **ORDERED** that

(1) Defendant's Motion to Dismiss and Memorandum in Support Thereof, filed on March 13, 2008, is **GRANTED**;

(2) The Clerk's Office is directed to **ENTER** final judgment in favor of defendant **DISMISSING** plaintiff's complaint, without prejudice; and

(3) Each party shall bear its own costs.

/s/ Lynn J. Bush
LYNN J. BUSH
Judge